UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Steven L. Tiscione
Honorable U.S. Magistrate Judge
100 Federal Plaza
Courtroom 910, Chambers 914
Central Islip, NY 11722

March 6, 2026



**Via ECF**

> Re:    **Jenkins v. Portfolio Recovery Associates, L.L.C.**
>        **2:25-cv-06081-NCM-ST**

**LETTER MOTION TO COMPEL SUPPLEMENTARY RESPONSES TO FIRST SET OF DISCOVERY**

Dear Judge Tiscione:

Plaintiff respectfully submits this letter motion pursuant to Fed. R. Civ. P. 37(a) and Local Civil Rule 37.3 to compel Defendant Portfolio Recovery Associates, L.L.C. ("PRA") to provide supplemental responses and documents regarding seventy-eight (78) itemized deficiencies in Defendant's responses to Plaintiff's First Set of Discovery.  Despite a meaningful meet-and-confer and a subsequent "grace period," Defendant continues to withhold core evidence—including the **Master Account Sale Agreement (MASA)** and the **Chain of Title**—under the legally untenable theory that ownership of the debt is "not relevant".

## I. PRELIMINARY STATEMENT & RULE 37(a)(1) CERTIFICATION

I certify that I have in good faith conferred with Counsel in an effort to resolve these disputes without court action, pursuant to **Local Civil Rule 26.4** and **FRCP 37(a)(1)**.  Despite these efforts, the parties reached a formal impasse during a telephonic meet-and-confer on **February 26, 2026**, regarding seventy-eight (78) itemized deficiencies in Defendant's discovery responses.

This motion is necessitated by Defendant's documented pattern of obstruction, beginning with a **55-day blockade** of the Stipulated Protective Order and a **48-day default** on Initial Disclosures.  While Plaintiff has acted with transparency and granted voluntary "grace periods" for compliance, Defendant has engaged in a strategy of "lulling" Plaintiff into inaction while simultaneously withholding two of the most critical pieces of evidence in this case: the records of ownership and the communications between PRA and Transunion regarding the inquiry on April 7, 2024.

Most significantly, the motive for this obstruction was revealed in a supplemental production on February 27, 2026, which contains an internal entry stating **"Putback Date: 9/8/2024"**.

Defendant's refusal to produce the **Master Account Sale Agreement (MASA)**, **General Ledger** accounting and a complete and unbroken **Chain of Title** is a transparent attempt to shield a documented standing defect from judicial scrutiny.

## II. The February 26th Impasse and Counsel's Admissions

During the February 26, 2026, meet-and-confer, Counsel made several admissions necessitating Court intervention:

- **Relevance Objection**: Counsel asserted multiple times that documents regarding the **ownership of the alleged account** and a **complete and unbroken chain of title** are "not relevant" to this action.

- **Broad Refusal**: Counsel explicitly stated they would not be responding to **entire categories of deficiencies** itemized in the Notice of Deficiency. This included critical requests for the Master Account Sale Agreement with all Attachments and Schedules.

- **Broken Promises**: Counsel affirmatively stated PRA would produce the communications with TransUnion regarding the April 7, 2024, credit inquiry. To date, these have not been produced.

## III. The "Putback" Smoking Gun (Exhibit 14)

On February 27, 2026, Defendant produced five (5) pages of internal screenshots, designated as "Confidential". This production omitted the MASA, General Ledger accounting, and a complete and unbroken Chain of Title. However, Page 2 of this production (**Exhibit 14, PRA_JENKINS_000077**) contains a startling entry: **"Putback Date: 9/8/2024"**. This entry directly contradicts Defendant's claim of ownership and explains their refusal to produce the documentation itemized in Plaintiff's 78 deficiencies.

## IV. Conclusion & Relief Requested

Plaintiff has demonstrated patience, granting a "grace period" and consenting to a calendar extension to allow for compliance. However, Defendant's refusal to address the **78 itemized deficiencies** while reporting a "Putback" defect is an act of bad faith.

**Plaintiff respectfully requests that the Court:**

1. **Compel Supplemental Responses**: Order Defendant to serve verified supplemental responses that fully cure all **78 deficiencies** identified in the Notice of Deficiency;

2. **Order Specific Production**: Specifically order the production of unredacted copies of:

   - The **Master Account Sale Agreement (MASA) with all Schedules and Attachments**;

   - A **complete and unbroken Chain-of-Title**;

- The **General Ledger** accounting records; and

- All communications between PRA and **TransUnion** regarding the April 7, 2024, inquiry;

3. **Conduct In-Camera Inspection**: Review **Exhibit 14** to verify the "Putback Date" entry.

Respectfully,

/s/Jarrett R. Jenkins_____
Jarrett R. Jenkins
334 Locust Street, Apt.1
West Hempstead, NY 11552
516-688-0078
jrobertjenkins@gmail.com


cc: Stephen J. Steinlight, Esq. (email @ stephen.steinlight@troutmansanders.com and USPS First Class Mail)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
Jarrett R. Jenkins,

                    Plaintiff,

                                   Case No. 2:25-cv-06081-NCM-ST

       -against-

Portfolio Recovery Associates, L.L.C.,

                    Defendant,
--------------------------------------------------------X

**DECLARATION OF JARRETT R. JENKINS IN SUPPORT OF MOTION TO COMPEL
SUPPLEMENTAL RESPONSES TO FIRST SET OF DISCOVERY**

I, **Jarrett R. Jenkins**, declare under penalty of perjury, pursuant to **28 U.S.C. § 1746**, that the
following is true and correct:

1. I am the Plaintiff in the above-captioned matter.

2. I possess personal knowledge of the facts set forth in this Declaration.

**I. Chronology of Protective Order Obstruction**

3. On December 19, 2025, I initiated the process to establish a Stipulated Protective Order
via email to Counsel for Defendant.  (See Exhibit – 1).

4. I subsequently sent two separate follow-up emails requesting a meet-and-confer to
finalize the Protective Order.  (See Exhibit – 1).

5. Defendant did not respond to these requests for a period of approximately two months.

6. On January 29, 2026, counsel stated via email that revisions to the Protective Order
would be provided "shortly".  (See Exhibit – 2).

7. On February 16, 2026, Defendant delivered revisions to the Protective Order.  (See
Exhibit – 3).

8. This delivery occurred 18 days after the statement of January 29, 2026.

9. This delivery occurred 55 days after my initial request of December 19, 2025.

**II. The Initial Disclosure Default**

10. Defendant's Initial Disclosures were due on January 2, 2026.

11. Defendant did not serve Initial Disclosures on January 2, 2026.

12. On February 12, 2026, at 4:14 PM, I sent an email attaching the "Notice of Discovery Deficiencies and Demand to Cure" to Counsel for Defendant. (See Exhibit – 4).

13. This notice identified the Defendant's 41-day default regarding Initial Disclosures.

14. On February 19, 2026, at 8:06 PM, Defendant attempted service of Initial Disclosures via email. (See Exhibit – 5).

15. This attempted service occurred 48 days after the mandatory deadline.

16. Plaintiff has not consented to service via email.

17. No court order has been issued authorizing service by email.

## III. Chronology of the 1st Set Deficiency Dispute

18. On February 12, 2026, I served a Notice of Deficiency identifying 78 defects in Defendant's responses to the First Set of Discovery. (See Exhibit – 6).

19. This notice established a cure deadline of February 19, 2026.

20. On February 19, 2026, Defendant's counsel (Stephen J. Steinlight) characterized this 136-page notice as "vexatious, unduly burdensome, and not proportional". (See Exhibit – 7).

21. The email was sent at 8:06PM.

22. The email was sent after the close of the business day at 5:00PM.

23. The email was sent on the last day the Supplementary responses were due.

24. Counsel did not ask for more time to respond to the 78 deficiencies.

25. On February 20, 2026, at 7:57 AM, I emailed Counsel to address procedural defects and requested a telephonic meet-and-confer. (See Exhibit – 8).

26. On February 20, 2026, at 4:15 PM, counsel emailed a request for a meet-and-confer on

February 26, 2026.  (See Exhibit – 9).

27. On February 20, 2026, at 4:51 PM, I emailed the signed Stipulated Protective Order. (See Exhibit – 10).

28. I requested that all responsive documents be produced by February 24, 2026, at 5:00 PM to ensure a "productive and meaningful" conference.  (See Exhibit – 10).

29. In this same email, I stated that if the production was not received by that deadline, the February 26th conference would be limited to a discussion of Defendant's ongoing failure to produce.  (See Exhibit – 10).

30. Defendant missed the February 24th deadline.

31. On February 26, 2026, at 11:25 AM, I emailed Counsel noting they had failed to meet the February 24th production deadline.  (See Exhibit – 11).

32. On February 26, 2026, at 1:00 PM, I participated in the telephonic meet-and-confer with Stephen D. Lozier and Rachelle Pointdujour.

## IV. Admissions and Stances During February 26th Meet-and-Confer

33. The February 26, 2026, 1:00 PM, meet-and-confer lasted approximately 26 minutes.

34. During the call, counsel asked if the 78 Deficiencies can be narrowed.

35. Counsel asked if they can limit the documents they must produce.

36. Counsel stated that they cannot respond to 78 Deficiencies in two business days.

37. During the call, Counsel asserted multiple times that documents regarding ownership of the alleged account are "not relevant" to this case.

38. During the call, Counsel asserted that a complete, unbroken and unredacted chain of title for the alleged debt is "not relevant" to the claims in this action.

39. Counsel stated multiple times during the call that they would not be responding to entire

categories of deficiencies itemized in the Deficiency Notice.

40. Counsel explicitly stated during the call that they will not provide any supplemental responses or documents regarding the Second Set of Discovery.

41. Counsel affirmatively stated during the call that PRA would produce the communications between TransUnion ("TU") and PRA regarding the April 7, 2024, credit inquiry.

42. I informed Counsel that the result of this meet-and-confer is that, we are at an impasse.

43. I provided Defendant with a final "grace period" until March 2, 2026, at 5:00 PM to cure the 78 deficiencies.

44. This included the production of the Master Account Sale Agreement (MASA), General Ledger Accounting Records, a complete unbroken Chain-of-Title and complete communications between TransUnion and PRA regarding the April 7, 2024, Inquiry.

**V. Follow up of Meet and Confer**

45. At 1:29PM following the conference, Counsel sent a follow up email to memorialize the gentleman's agreement for the PO.  (See Exhibit – 12).

46. Counsel stated that once agreed to, he will supplement with a production of confidential documents.

47. Plaintiff sent his reply at 1:42 PM agreeing to the terms of the "gentleman's agreement" regarding the PO.  (See Exhibit – 13).

48. This email also outlined certain documents such as the MASA, unbroken Chain of Title, the TU/PRA communications, General Ledger Accounting Records and the other items in the Notice of Deficiency were due on March 2, 2026, at 5:00PM.  (See Exhibit – 13).

**VI. Substantive Defaults and Evidentiary Conflicts**

49. On February 27, 2026, at 2:41 PM, Defendant sent an email with a 5-page supplemental production.  (See Exhibit – 14).  Due to the 'Confidential' designation, a placeholder has

been filed on the public docket.

50. This 5-page production does not contain the Master Account Sale Agreement (MASA) or the General Ledger accounting, a complete and unbroken Chain-of-Title nor any communications between PRA and TransUnion. (See Exhibit – 14). Due to the 'Confidential' designation, a placeholder has been filed on the public docket.

51. Page 2 of the supplemental production (PRA_JENKINS_000077) contains the entry: "Putback Date: 9/8/2024". (See Exhibit – 14, page 2). Due to the 'Confidential' designation, a placeholder has been filed on the public docket.

52. On February 27, 2026, I received the physical mail for Defendant's Initial Disclosures and Responses to the 2nd Set of Discovery via USPS mail and FedEx.

53. As of the date of this Declaration, no other Supplementation has been provided by the Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on March 6, 2026.**

/s/Jarrett R. Jenkins_____
Jarrett R. Jenkins
334 Locust Street, Apt.1
West Hempstead, NY 11552
516-688-0078
jrobertjenkins@gmail.com

**EXHIBIT LIST**

**Exhibit - 1:**

Email initiating Protective Order (12/19/25) and two (2) follow-up emails.

**Exhibit - 2:**

Email from Counsel (01/29/26) stating Protective Order revisions would be provided "shortly".

**Exhibit - 3:**

Email from Defendant delivering revisions to the Protective Order (02/16/26).

**Exhibit - 4:**

Email (02/12/26) attaching the "Notice of Discovery Deficiencies and Demand to Cure".

**Exhibit - 5:**

Email from Defendant attempting service of Initial Disclosures (02/19/26).

**Exhibit - 6:**

Formal "Notice of Discovery Deficiencies" identifying 78 defects in First Set responses.

**Exhibit - 7:**

Letter (02/19/26) from Stephen J. Steinlight characterizing Notice as "vexatious".

**Exhibit - 8:**

Email (02/20/26) from Plaintiff addressing procedural defects and requesting meet-and-confer.

**Exhibit - 9:**

Email from Counsel requesting a meet-and-confer for February 26, 2026.

**Exhibit - 10:**

Email (02/20/26) with signed Protective Order and instruction for Feb 24th deadline.

**Exhibit - 11:**

Email (02/26/26) from Plaintiff noting Defendant's failure to meet production deadline.

**Exhibit - 12:**

Email from Counsel (02/26/26 at 1:29 PM) following the meet-and-confer call.

**Exhibit - 13:**

Email from Plaintiff (02/26/26 at 1:42 PM) outlining March 2nd deadline for MASA, Chain of Title, TU/PRA communications, General Ledger records, and other Notice of Deficiency items.

**Exhibit - 14:**

**[FILED UNDER SEAL]** 5-page supplemental production (Bates PRA_JENKINS_000076–000080).

# EXHIBIT - 1

 Gmail                                          **Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re:Jenkins-v-Portfolio Recovery Associates, L.L.C.-2:25-cv-06081-NCM-ST - Protective Order

3 messages

---

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                    Fri, Dec 19, 2025 at 6:28 PM
To: stephen.steinlight@troutmansanders.com, FSLECFIntake@troutmansanders.com,
LitigationDocketRequests@troutman.com, stephen.steinlight@troutman.com

Mr. Steinlight,

More than likely a Protective Order will be needed in this case.  Shall I prepare one for your review or would you like to
prepare one?

Regards,

Jarrett R. Jenkins

---

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                    Wed, Jan 14, 2026 at 1:49 PM
To: stephen.steinlight@troutmansanders.com, FSLECFIntake@troutmansanders.com,
LitigationDocketRequests@troutman.com, stephen.steinlight@troutman.com

Mr. Steinlight,

Since you have not responded to the previous email request regarding the potential PO that may be needed in the case.  I
have taken the liberty of drafting one up and have attached it for your review.  I welcome your approval or input.

Thank you,

Jarrett R. Jenkins

[Quoted text hidden]

---

📄 **Jenkins_v_PRA_Stipulated_PO_Draft.pdf**
201K

---

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                    Tue, Jan 20, 2026 at 2:03 PM
To: stephen.steinlight@troutmansanders.com, FSLECFIntake@troutmansanders.com,
LitigationDocketRequests@troutman.com, stephen.steinlight@troutman.com

Mr. Steinlight,

I am following up on my January 14, 2026 email transmitting a draft Stipulated Protective Order for your review.  As noted, I
prepared this in light of the volume of confidential business, software, and compliance materials implicated by
Defendant's discovery obligations.

Please let me know by close of business today, Tuesday, January 20, 2026, whether Defendant agrees to the proposed
Protective Order or wishes to propose revisions.

If I do not hear from you by then, I will proceed accordingly.

Regards,

Jarrett R. Jenkins

[Quoted text hidden]

# EXHIBIT – 2

 Gmail

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Jenkins v. PRA, LLC - PRA's Objections and Responses to Plaintiff's Discovery Requests

1 message

---

**Lozier, Stephen D.** <Stephen.Lozier@troutman.com>                    Thu, Jan 29, 2026 at 9:30 PM
To: Jarrett Jenkins <jrobertjenkins@gmail.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>, "Khattab, Ahmed H." <Ahmed.Khattab@troutman.com>


\*\*\*SENT ON BEHALF OF STEPHEN J. STEINLIGHT\*\*\*


Mr. Jenkins,


Please find attached Defendant Portfolio Recovery Associates, LLC's objections and responses to Plaintiff's first set of discovery requests for this matter. We expect to have proposed revisions to your stipulated protective order shortly.


A hard copy of the attached will follow to you by mail and the corresponding document production will follow by separate email to you.


Best,


**Stephen D. Lozier**
**Associate**
Direct: 312.759.3203
stephen.lozier@troutman.com

**troutman pepper locke**
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
troutman.com

---

NOTICE: This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. E-mails may be monitored or scanned for security and compliance purposes. For more information, including privacy notices and policies, please visit www.troutman.com. If services are provided by Troutman Pepper Locke UK LLP, please see our London office page (www.troutman.com/offices/london.html) for regulatory information.

---

**3 attachments**

 **Jenkins v. PRA, LLC - PRA's Objections and Answers to Plaintiff's Interrogatories.pdf**
482K

**Jenkins v. PRA, LLC - PRA's Objections and Responses to Plaintiff's Requests for Admission.pdf**
412K

📄 **Jenkins v. PRA, LLC - PRA's Objections and Responses to Plaintiff's Requests for Production.pdf**
380K

# EXHIBIT - 3

 **Gmail**

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

## Jenkins v. PRA, LLC - PRA's Objections and Responses to Plaintiff's Second Set of Discovery Requests

1 message

**Lozier, Stephen D.** <Stephen.Lozier@troutman.com>
To: Jarrett Jenkins <jrobertjenkins@gmail.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>

Mon, Feb 16, 2026 at 11:49 PM

***SENT ON BEHALF OF STEPHEN J. STEINLIGHT***

Mr. Jenkins,

Please find attached Defendant Portfolio Recovery Associates, LLC's objections and responses to Plaintiff's second set of discovery requests for this matter. Please also find PRA's proposed revisions to the draft protective order for this case.

Kind regards,

**Stephen D. Lozier**
**Associate**
Direct: 312.759.3203
stephen.lozier@troutman.com

**troutman pepper locke**
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
troutman.com

---

NOTICE: This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. E-mails may be monitored or scanned for security and compliance purposes. For more information, including privacy notices and policies, please visit www.troutman.com. If services are provided by Troutman Pepper Locke UK LLP, please see our London office page (www.troutman.com/offices/london.html) for regulatory information.

---

**4 attachments**

📄 **Jenkins v. PRA, LLC - No. 2_25-cv-6081 - PRA's Objections and Responses to Plaintiff's Second Set of Interrogatories.pdf**
476K

📄 **Jenkins v. PRA, LLC - No. 2_25-cv-6081 - PRA's Objections and Responses to Plaintiff's Second Set of RFPs.pdf**
380K

📄 **Jenkins v. PRA, LLC - No. 2_25-cv-6081 - PRA's Objections and Responses to Plaintiff's Second Set of RFAs.pdf**
738K

📄 **Jenkins v. PRA, LLC - Stipulated Protective Order (PRA Rev.).docx**
43K

# EXHIBIT - 4



Jarrett Jenkins <jrobertjenkins@gmail.com>

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                    Thu, Feb 12, 2026 at 4:14 PM
To: stephen.steinlight@troutmansanders.com, "Steinlight, Stephen J." <stephen.steinlight@troutman.com>, LitigationDocketRequests@troutman.com, "Lozier, Stephen D." <Stephen.Lozier@troutman.com>, "Khattab, Ahmed H." <Ahmed.Khattab@troutman.com>

Mr. Steinlight,

Please find the attached **Notice of Discovery Deficiencies and Demand to Cure** regarding Defendant Portfolio Recovery Associates, LLC's responses to Plaintiff's First Set of Discovery.

This notice is being served via email to ensure immediate notification and to provide the Defendant the full seven (7) calendar days to cure the itemized procedural and substantive defects. As a courtesy and for my own records, a physical copy is also being sent via **USPS Certified Mail** (Tracking: 9589 0710 5270 2231 7889 07).

As noted in the attached, PRA remains in active default of its **Initial Disclosure** obligations and has created their own blockage of Discovery due to the non-participation with a Protective Order, both of which must be remedied by the February 19, 2026, deadline.

Regards,

Jarrett R. Jenkins



📄 **Plaintiff_Deficiency_Demand_Cure_Letter_2_PRA_12Feb26_FINAL.pdf**
1239K

# EXHIBIT - 5

Case 2:25-cv-06081-NCM-ST    Document 11    Filed 03/06/26    Page 22 of 177 PageID #: 76

 **Gmail**

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

Lozier, Stephen D. <Stephen.Lozier@troutman.com>                        Thu, Feb 19, 2026 at 8:06 PM
To: Jarrett Jenkins <jrobertjenkins@gmail.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>

    ***SENT ON BEHALF OF STEPHEN J. STEINLIGHT***


    Mr. Jenkins,


    Please find attached PRA's response to your discovery deficiency letter for this case. I also attach PRA's Initial Disclosures for this matter.


    Hard copies of the same will follow to you by mail.


    Kind regards,


    **Stephen D. Lozier**
    **Associate**
    **troutman pepper locke**
    Direct: 312.759.3203
    stephen.lozier@troutman.com

---

**From:** Jarrett Jenkins <jrobertjenkins@gmail.com>
**Sent:** Thursday, February 12, 2026 4:14 PM
**To:** Steinlight, Stephen J. <Stephen.Steinlight@troutman.com>; Steinlight, Stephen J. <Stephen.Steinlight@troutman.com>; Litigation Docket Requests <LitigationDocketRequests@troutman.com>; Lozier, Stephen D. <Stephen.Lozier@troutman.com>; Khattab, Ahmed H. <Ahmed.Khattab@troutman.com>
**Subject:** Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

CAUTION: This message came from outside the firm. DO NOT click links or open attachments unless you recognize this sender (look at the actual email address) and confirm the content is safe.

Case 2:25-cv-06081-NCM-ST    Document 11    Filed 03/06/26    Page 23 of 177 PageID #: 77

[Quoted text hidden]

NOTICE: This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. E-mails may be monitored or scanned for security and compliance purposes. For more information, including privacy notices and policies, please visit www.troutman.com. If services are provided by Troutman Pepper Locke UK LLP, please see our London office page (www.troutman.com/offices/london.html) for regulatory information.

---

**2 attachments**

 **Jenkins v. PRA, LLC - No. 2_25-cv-6081 - PRA's Response to Plaintiff's Discovery Deficiency Letter.pdf**
553K

**Jenkins v. PRA, LLC - No. 2_25-cv-6081 - PRA's Initial Disclosures.pdf**
352K

# EXHIBIT - 6

Jarrett R. Jenkins
334 Locust Street, Apt. 1
West Hempstead, NY 11552
Tel: 516-688-0078
Email: jrobertjenkins@gmail.com

February 12, 2026

**Via Email and USPS First Class Certified Mail (9589 0710 5270 2231 7889 07)**

Stephen J. Steinlight, Attorney for Defendant
Troutman Pepper Locke, LLP
875 Third Avenue
New York, NY 10022
Tel: 201-391-0370
stephen.steinlight@troutman.com

Re: *Jenkins v. Portfolio Recovery Associates, L.L.C*, Case No. 2:25-cv-06081-NCM-ST
(E.D.N.Y.)
**Deficiency in Discovery Responses – Demand for Cure**

Mr. Steinlight:

**Notice of Deficiency and Demand to Cure Letter**

**Service History Note**

Defendant has engaged in improper service in this litigation:

1. Initial Disclosures (Rule 26(a)(1)) – never served despite December 18, 2025, IC
   Hearing.

2. **Manufactured Discovery Blockade (The PO Sabotage):** Throughout its RFP
   responses, Defendant objects to the production of "confidential" documents (such as the
   Master Sale Agreement) on the grounds that no Protective Order is in place. However:

   ☐ **December 19, 2025:** Plaintiff reached out to initiate the PO process.

   ☐ **Email 1, 2, and 3:** Plaintiff sent three separate follow-up emails requesting a meet-
   and-confer to finalize the PO.

   ☐ **The Silence:** Defendant completely ignored these requests for nearly two months.

3. **The Catch-22 Tactic:** Defendant cannot use the absence of a Protective Order as a
   "shield" to withhold discovery when **Defendant is the sole cause of the delay**. Waiting

until the "eleventh hour" to offer redlines to a draft that was provided months ago is a transparent stalling tactic designed to exhaust the Plaintiff's resources.

**Legal Reality:** Under **Rule 37**, a party may not move for a protective order or withhold discovery based on a "self-created" delay. Defendant's refusal to engage in the PO process while simultaneously using the lack of a PO to block the **Chain of Title** production is evidence of **Willful and Reckless Disregard** for the Federal Rules.

This establishes a pattern of noncompliance: Defendant has failed to serve Initial Disclosures despite mandatory requirements.

Before addressing specific discovery items, Plaintiff notes that Defendant is in a state of **open procedural default** regarding its mandatory obligations under **FRCP 26(a)(1)**. Despite the Initial Conference held on **December 18, 2025**, Defendant has failed to serve its **Initial Disclosures**, which were due no later than January 2, 2026. Pursuant to **Rule 37(c)(1)**, Plaintiff intends to move for the **automatic exclusion** of any witness or document not timely disclosed.

Furthermore, Defendant's objections based on "confidentiality" and the "absence of a protective order" are factually disingenuous and made in bad faith. Plaintiff proactively requested a Protective Order on **December 19, 2025**, **January 14, 2026**, and **January 20, 2026**. Defendant willfully ignored these requests for over 40 days, yet now attempts to use the absence of that very order—a condition caused solely by Defendant's own silence—as a shield to withhold discoverable information.

**Global Substantive Deficiencies**

Defendant's responses across all discovery vehicles are globally deficient under the Federal Rules of Civil Procedure. The following systemic problems infect every response:

1. **Procedural Hypocrisy -** Defendant is currently in active default of its mandatory Initial Disclosure obligations under **FRCP 26(a)(1)** and this Court's scheduling order.  It is procedurally improper and hypocritical for the Defendant to serve a 'First Set of Discovery'—demanding information from the Plaintiff—while simultaneously withholding the basic foundational disclosures required by law.  Defendant cannot demand the Plaintiff play by the rules while the Defendant remains in a state of open non-compliance.

2. **Boilerplate Objections** – Responses rely on generalized objections such as "overly broad," "vague and ambiguous", "irrelevant and immaterial," "proprietary/confidential," and "not limited in time," without specific factual grounds. Such objections are improper under Rule 33(b)(4) and Rule 34(b)(2)(B).

3. **Evasive and Incomplete Answers** – Where Defendant purported to respond, the answers are conclusory, fail to identify specific facts, witnesses, or documents, and evade the core

questions. Under Rule 37(a)(4), an evasive or incomplete response is treated as a failure to respond.

4. **Improper Privilege Claims** – Defendant asserts attorney-client privilege and work product doctrine but has produced no privilege log as required under Rule 26(b)(5).

5. **Confidentiality Misstatements** – Defendant's continued invocation of 'confidentiality' is a bad-faith delay tactic. Defendant has sat on Plaintiff's draft Protective Order since December 19, 2025, while simultaneously using the absence of that Order as a shield to withhold the Chain of Title.

6. Defendant's bad faith is further evidenced by its own affirmative representations. On January 29, 2026, counsel for Defendant stated via email that they 'expect to have proposed revisions to your stipulated protective order shortly.' As of the close of business on February 11, 2026—thirteen days later—no such revisions have been provided. Defendant's use of the word 'shortly' while simultaneously withholding critical **Chain of Title** documents for over 55 days is a transparent tactical delay. A party cannot promise cooperation as a means to extend its own non-compliance.

7. **Supplemental Verification Requirement** – While Defendant provided an initial verification for its original responses, any supplemental or corrected responses provided to cure the deficiencies identified herein must be accompanied by a **new Supplemental Verification page** signed under oath by an authorized officer or agent of PRA. Under **Rule 33(b)(3) and (5)**, the party must sign the answers under oath. An unsworn letter from counsel does not satisfy Defendant's discovery obligations or the duty of candor.

**Specific Cure Demands**

To cure these deficiencies, Defendant must provide corrected, complete, and verified responses as set forth in the enclosed Sections:

- **Section A (ROGs 1–12)** – Cure by serving full and supplementally verified responses under oath, identifying all facts, witnesses, and documents responsive to each interrogatory. Boilerplate objections must be withdrawn.  A privilege log must be served if privilege is claimed.

- **Section B (RFPs 1–19)** – Cure by identifying and producing all responsive documents, or affirming with specificity that no responsive documents exist.  Confidentiality is not governed by a Protective Order due to your **documented obstruction** of that process, and as such, it is not a valid basis to withhold production.

- **Section C (RFAs 1–47)** – Cure by serving sworn and signed responses in compliance with Rule 36(a)(3), without boilerplate denials or evasions.

**Demand for Cure**

Pursuant to FRCP 26, 33, and 34, Plaintiff demands that Defendant serve corrected, complete, and verified discovery responses, within **seven (7) days** of the date of this letter, February 19, 2026.  Failure to cure these defects will result in Plaintiff moving under FRCP 37 for an order compelling compliance and for sanctions, including attorneys' fees and costs.

Plaintiff reserves all rights with respect to these deficiencies and any additional discovery disputes that may arise.

===================================================================

## A. INTERROGATORIES

### Interrogatory No. 1

**Request:**

For **each** Affirmative Defense asserted in Defendant's Answer, state **all facts** supporting the defense, identify **all persons** with knowledge of those facts, and identify **all documents** supporting the defense.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to producing any information or documents subject to the work-product doctrine, including counsel's work product and mental impressions concerning this litigation. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**ANSWER:** Reserving and not waiving its foregoing objections, PRA states that its affirmative defenses speak for themselves. PRA identifies Ricky Vaughan, authorized representative of PRA. Employees of PRA may only be contacted through counsel. Pursuant to Fed. R. Civ. P. 33(d), PRA further identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000075. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory. PRA also reserves the right to supplement its Answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith "Compound" Objection:** Defendant's objection to this standard contention interrogatory as "compound" is a frivolous attempt to avoid narrowing the issues for trial.

- **Moot "Protective Order" Objection:** As noted in the Preliminary Statement, Defendant's 40-day delay in responding to Plaintiff's requests for a Protective Order (dated Dec 19, Jan 14, and Jan 20) renders this objection factually disingenuous.

- **Procedural Hypocrisy regarding Initial Disclosures:** Defendant is in active default of its mandatory **FRCP 26(a)(1)** obligations, having failed to serve Initial Disclosures

following the December 18, 2025, IC Hearing. Defendant cannot withhold the factual basis of its defenses while simultaneously ignoring mandatory disclosure rules

- **"Sword and Shield" Litigation:** Defendant asserts eight Affirmative Defenses—including "Arbitration" based on an alleged original agreement and "Truth" of its communications—yet claims these defenses "speak for themselves". A party cannot use a defense as a sword to bar a claim while using boilerplate objections as a shield to hide the supporting evidence.

- **Abuse of Rule 33(d):** Defendant's reference to **PRA_JENKINS_000001-000075** is an improper "document dump". Rule 33(d) requires that the burden of deriving the answer be substantially the same for both parties; however, a review of these 75 pages reveals only a generic Bill of Sale and internal notes, which do not identify the "Original Agreement" referenced in the **Sixth Affirmative Defense**.

- **Improper Privilege Blanket:** Defendant asserts work-product protection without providing a Privilege Log as required by FRCP 26(b)(5).

**Cure Required:**

- Immediately withdraw the "compound" and "protective order" objections.

- State the specific facts supporting each of the eight asserted Affirmative Defenses.

- Identify by name and job title every natural person with knowledge of these facts.

- Identify by Bates number the specific documents supporting each defense, specifically the "original agreement" mentioned in the **Sixth Affirmative Defense** and the "truthful" records mentioned in the **Seventh Affirmative Defense**.

- Provide a **Privilege Log** for any information withheld under a claim of work-product.

## Interrogatory No. 2

### Request:

If PRA denies any Request for Admission stating that PRA lacked authority or permission to make the April 7, 2024, Inquiry, state all facts on which PRA relies to contend it had authority or permission, and identify all documents PRA relied upon before the Inquiry.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to the terms "authority," and "permission" as vague, ambiguous, calling for legal conclusions, and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as overly broad and unduly burdensome to the extent the requested information or documents are equally available and

accessible to Plaintiff. PRA objects to producing any information or documents subject to the attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity, including counsel's work product and mental impressions concerning this or other litigation. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000075. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory. PRA also reserves the right to supplement its Answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Vagueness and Legal Conclusion Objections:** Defendant's claim that standard industry and statutory terms like "authority" and "permission" are vague or call for legal conclusions is a transparent attempt to obstruct discovery. These terms are foundational to the FCRA and are central to Defendant's own **Sixth Affirmative Defense**, which relies on a purported "original agreement" to bar this action.

- **Frivolous "Equally Available" Objection:** Information regarding the internal "authority" or "permission" PRA relied upon to initiate a credit pull—such as internal account-level authorizations, system logic, or subscriber certifications—is within the exclusive control of the Defendant and is not "equally available" to Plaintiff.

- **Abuse of Rule 33(d) (The Document Dump):** Defendant's reference to **PRA_JENKINS_000001-000075** is an improper use of **FRCP 33(d)**. A review of these 75 pages reveals a generic "Forward Flow" Bill of Sale and internal notes, but **no original credit agreement** and no document authorizing the April 7, 2024, inquiry. Because the answer is not in the documents produced, Defendant cannot shift the burden to Plaintiff to find it.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully stalled the entry of a Protective Order for over 40 days; Defendant cannot now use its own non-compliance as a shield to withhold documents it relies upon for its own defenses.

- **Procedural Hypocrisy:** Defendant's failure to identify the specific documents relied upon for its "authority" is a direct violation of its mandatory **Initial Disclosure** obligations under **Rule 26(a)(1)(A)(ii)**.

**Cure Required:**

- Withdraw the "vague," "compound," "equally available," and "protective order" objections.

- State the specific facts that Defendant contends gave it authority to pull Plaintiff's credit.

- Identify by Bates number the specific documents Defendant relied upon **before** the April 7, 2024 inquiry.

- Specifically identify the "original agreement" mentioned in Defendant's **Sixth Affirmative Defense**. If no such document exists, Defendant must state so clearly and under oath.

- Provide a **Privilege Log** for any information withheld under a claim of privilege or work-product.

**<u>Interrogatory No. 3</u>**

**<u>Request:</u>**

<u>If PRA denies any Request for Admission stating that Plaintiff did not have an account, did not owe a debt, or did not engage in a business transaction with PRA, identify each account or alleged obligation, state when and how PRA contends it arose, and identify all documents reflecting that contention.</u>

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to the term "obligation" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as overly broad and unduly burdensome to the extent the requested information or documents are equally available and accessible to Plaintiff. PRA objects to producing any information or documents subject to the attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity, including counsel's work product and mental impressions concerning this or other litigation. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000075. Discovery is ongoing and PRA specifically reserves the right to.

**Deficiency:**

- **Bad-Faith Semantic Objections:** Defendant's claim that "obligation" and "debt" call for legal conclusions or are argumentative is a transparent attempt to obstruct discovery

regarding the very core of this litigation. These are fundamental terms defined by the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA), and they are central to Defendant's own business model as a debt buyer.

- **Contradiction of Affirmative Defenses:** Defendant asserts in its Fifth Affirmative Defense that any claim is subject to a "set-off of any sums due and owing to PRA". By asserting that a debt is "owing" as a defense, Defendant has waived any "vagueness" or "relevance" objections regarding the details of that alleged debt.

- **Abuse of Rule 33(d) (The Document Dump):** Defendant's reference to PRA_JENKINS_000001-000075 is an improper use of FRCP 33(d). Rule 33(d) is only applicable if the answer to the interrogatory may be determined by examining the documents and the burden of doing so is the same for both parties. However, the 75-page production lacks a complete chain of title and the original application or contract that would show how the alleged obligation "arose". Defendant cannot hide behind a document dump when the documents provided do not actually contain the answer.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully ignored three separate requests for a Protective Order over a 40-day period. Defendant cannot use a lack of a Protective Order—a condition it created through its own non-compliance—as a shield to withhold the evidence of the transaction it claims justified its credit pull.

- **Frivolous "Equally Available" Objection:** Records of the internal acquisition and "logic" used to board this account into PRA's systems are in the exclusive possession of Defendant and are not "equally available" to Plaintiff.

**Cure Required:**

- Immediately withdraw the "compound," "legal conclusion," and "protective order" objections.

- State the specific facts regarding when and how the alleged obligation arose, including the specific date of the underlying "business transaction".

- Identify by Bates number the specific documents (e.g., the specific bill of sale schedule or original Synchrony Bank contract) that reflect this contention.

- Provide a **Privilege Log** for any information withheld under a claim of work-product.

**<u>Interrogatory No. 4</u>**

**<u>Request:</u>**

State the earliest date PRA contends it obtained any interest in any debt allegedly owed by Plaintiff; identify how PRA obtained that interest; and identify all documents reflecting the transfer, assignment, or purchase.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to the term "interest" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as overly broad and unduly burdensome to the extent the requested information or documents are equally available and accessible to Plaintiff.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000018 and PRA_JENKINS_000067. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory. PRA also reserves the right to supplement its Answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Semantic Objections:** Defendant's claim that "interest" and "debt" call for legal conclusions is a transparent attempt to obstruct discovery. These are standard industry terms central to Defendant's own Fifth Affirmative Defense (Set-Off) and Sixth Affirmative Defense (Arbitration), which presuppose the existence of a debt and a legal interest in an "original agreement".

- **Abuse of Rule 33(d) — The "Shell Game":** Defendant's reference to **PRA_JENKINS_000001-000018** and **000067** is an improper use of **FRCP 33(d)** intended to obscure the facts. Under Rule 33(d), a document reference is only valid if the answer can be clearly "determined" by the requester. Here, the Bill of Sale is a maze of contradictions: it explicitly lists a date of **March 12, 2024**, yet provides several other internal conflicting dates, and concludes with a **redacted "Transfer Date"** in the final sentence. Because the document provides multiple conflicting possibilities and hides the definitive date behind a black bar, the "earliest date" is not ascertainable from the production.

- **Failure to Identify the Foundational "Agreement" and "Addendum":** The produced Bill of Sale explicitly references and incorporates the **"Master Account Sale Agreement (the Agreement)"** and an **"Account Sale Addendum dated 2/2/2024"**. Defendant has failed to identify the specific terms of these documents or state how they establish the "interest" or "authority" claimed in Defendant's **Sixth Affirmative Defense**.

- **The "Missing Link" (The Notification Files):** The Bill of Sale states that the accounts being transferred are those identified in the **"Notification Files"** (as defined in the Agreement). Without the production or specific identification of the "Notification Files" related to this transaction, there is no evidence that Plaintiff's specific account was part of the 3/12/2024 transfer.

- **Improper Redaction of Factual Data:** Defendant has redacted the "Transfer Date" in the final sentence of its primary evidence without providing a **Privilege Log** as required by **FRCP 26(b)(5)**. A date of transfer is a factual data point, not a privileged communication. This redaction, combined with the lack of a log, constitutes an **evasive or incomplete response** under **Rule 37(a)(4)**.

- **Contradiction of Asserted Defenses:** Defendant relies on an "original agreement" in its **Sixth Affirmative Defense** . It is legally inconsistent to claim an agreement exists to bar a claim while refusing to identify the specific date, "Notification Files," and "Addendum" that constitute the transfer in discovery.

- **Moot "Protective Order" Objection:** As noted in the Anchor section, Defendant willfully stalled the entry of a Protective Order for over 40 days. Defendant cannot use a lack of a Protective Order—a condition it created through its own silence—as a shield to withhold the specific "assignment" or "schedule" that allegedly links Plaintiff to the generic Bill of Sale produced.

- **Frivolous "Equally Available" Objection:** Information regarding the specific date and internal method by which PRA purchased or "boarded" this debt is in the exclusive possession of Defendant and is not "equally available" to Plaintiff.

- **Procedural Hypocrisy:** Defendant's failure to identify the specific date and documents of transfer is a direct violation of its mandatory **Initial Disclosure** obligations under **Rule 26(a)(1)(A)(ii)**, as these are the very documents Defendant must use to support its standing and affirmative defenses.

**Cure Required:**

- Withdraw the "interest," "debt," "equally available," and "protective order" objections.

- Provide a **written, sworn statement** of the single, finite "earliest date" Defendant contends it obtained an interest in the alleged debt, specifically reconciling the **11/17/2023** date mentioned in ROG 2 with the **3/12/2024** date on the Bill of Sale.

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** referenced in the Bill of Sale to establish the legal authority and specific terms of the alleged transfer.

- **Produce** the specific entry within the **"Notification Files"** (as defined in the Agreement) that Defendant contends refers to the Plaintiff to verify that this specific account was actually included in the 3/12/2024 transaction.

- **Produce** all documents necessary to establish the **"complete and unbroken chain of title"** as referenced in the Bill of Sale, including any intermediate assignments or transfers between Synchrony Bank and Portfolio Recovery Associates, LLC.

- **Produce** the **unredacted** final sentence of the Bill of Sale containing the "Transfer Date" or provide a **Privilege Log** stating the specific legal basis for redacting a purely factual date.

- Provide a **Verification Page** signed under oath by an authorized officer of Defendant confirming the accuracy of the dates and the authenticity of the produced documents.

## **Interrogatory No. 5**

**Request:**

Identify each document PRA possessed before April 7, 2024, that listed or identified Plaintiff by name in connection with any debt, account, or assignment, and identify the custodian of each.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to the term "assignment" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as overly broad and unduly burdensome to the extent the requested information or documents are equally available and accessible to Plaintiff. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000075. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory. PRA also reserves the right to supplement its Answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Abuse of Rule 33(d) (The "Generic Dump" Violation):** Defendant's reference to PRA_JENKINS_000001-000075 is an improper use of FRCP 33(d) because the specific answer cannot be determined from the documents produced. The 75-page production consists primarily of a generic "Forward Flow" Bill of Sale and internal notes that do not list the Plaintiff by name. Under Rule 33(d), a party cannot point to a document that fails to contain the specific data requested (the Plaintiff's name).

- **Failure to Identify Custodians:** This Interrogatory explicitly requests the identification of the custodian of each document. Defendant completely ignored this requirement in its response. Identifying the keeper of the records is a fundamental discovery obligation, especially when Defendant relies on "business records" exceptions for its evidence.

- **The "Permissible Purpose" Gap:** April 7, 2024, is the date of the alleged FCRA violation. If Defendant possessed no documents identifying the Plaintiff by name *before* this date—other than the generic Bill of Sale which lacks the specific "Notification Files"—then Defendant had no factual basis to establish a "permissible purpose" under 15 U.S.C. § 1681b.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day delay in finalizing a Protective Order renders this objection a bad-faith stalling tactic used to withhold the very documents (like the Account Sale Addendum or Notification Files) that would actually contain the Plaintiff's name.

- **Bad-Faith Semantic Objections:** Objecting to standard terms like "debt" and "assignment" as legal conclusions is frivolous, as these terms are the bedrock of Defendant's business and its **Fifth and Sixth Affirmative Defenses**.

**Cure Required:**

- Immediately withdraw the "assignment," "debt," "equally available," and "protective order" objections.

- Provide a **written, sworn list** of every document PRA possessed before April 7, 2024, that specifically identifies the Plaintiff by name.

- Identify the **Custodian of Records** (name and title) for each document identified.

- Specifically state whether PRA possessed the **"Notification Files"** or the **"Account Sale Addendum dated 2/2/2024"** naming the Plaintiff prior to the April 7, 2024, inquiry.

- **Produce** any such documents that were not included in the initial 75-page dump, or identify them by Bates number if they were previously produced (and explain where the Plaintiff's name appears within them).

- Provide a new **Verification Page** signed under oath by an authorized officer of PRA.

**<u>Interrogatory No. 6</u>**

**<u>Request:</u>**

<u>Identify each person, system, department, vendor, or automated process that requested, initiated, approved, or caused the April 7, 2024, Inquiry, and state each role played.</u>

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to the terms "system," "vendor," and "automated process" as vague, ambiguous, calling for legal conclusions, and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as vague and ambiguous with respect to its use of the terms "vendor," "system" and "automated process" in the Interrogatory because the terms are undefined. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Interrogatory as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The method or process by which PRA allegedly accessed Plaintiff's credit report is not relevant to this action nor proportional to the needs of this case.

**ANSWER:** PRA stands on its foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Interrogatory.

**Deficiency:**

- **Bad-Faith "Vagueness" Regarding Industry Terms:** Defendant's claim that terms like "system," "vendor," and "automated process" are vague or undefined is a frivolous attempt to obstruct discovery. These are standard terms in the financial services and debt-collection industry, and Defendant—a sophisticated national debt buyer—undoubtedly utilizes these components in its daily operations.

- **Meritless Relevance Objection:** Defendant's contention that the "method or process" of the credit pull is irrelevant is legally incorrect. Under **15 U.S.C. § 1681e(a)**, a consumer reporting agency (and by extension, users of reports) must maintain "reasonable procedures" to ensure reports are obtained for a permissible purpose. Identifying whether this was a manual act by an employee or a programmed automated batch process is central to determining if the violation was **negligent** or **willful** under **15 U.S.C. §§ 1681n and 1681o**.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully ignored multiple requests to finalize a Protective Order for over 40 days. Defendant cannot use a lack of a Protective Order—a condition it created—as a shield to refuse to answer the most critical question in an FCRA case: **Who or what caused the credit pull?**

- **Total Failure to Answer:** Unlike other responses where Defendant provided an evasive answer, here Defendant "stands on its foregoing objections" and provides **zero factual**

**information**. This is a direct violation of **FRCP 33(b)(3)**, which requires a party to answer to the extent the interrogatory is not objectionable.

**Cure Required:**

- Withdraw the "vague," "ambiguous," "relevance," and "protective order" objections.

- Identify by name the specific **software or system** (e.g., "Latitude," "Collect2000," etc.) used to initiate the April 7, 2024, inquiry.

- Identify any **third-party vendor** (e.g., TransUnion, Equifax, or a middleware provider) involved in the transmission of the request.

- Identify the **specific department or individual** (by name and job title) who authorized the parameters for the credit pull.

- State whether the inquiry was a "manual" pull by a user or a "batch" pull triggered by an automated system event (such as account boarding).

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts.

<u>**Interrogatory No. 7**</u>

<u>**Request:**</u>

<u>State the reason PRA gave to TransUnion for the April 7, 2024, Inquiry and identify all records reflecting that reason.</u>

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Interrogatory as vague and ambiguous, particularly, with respect to its use of the term or phrase "the reason" in the Interrogatory, which is undefined. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Interrogatory as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. **ANSWER:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Interrogatory, including upon the entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Vagueness Regarding "The Reason":** Defendant's claim that the phrase "the reason" is vague or undefined is a transparent attempt to evade the central issue of this litigation. As a sophisticated user of consumer reports, Defendant is well aware that every

inquiry made to a Credit Reporting Agency (CRA) like TransUnion requires a certified "permissible purpose" under 15 U.S.C. § 1681b.

- **Meritless Relevance and Proportionality Objections:** Defendant's assertion that the "reason" given for the credit pull is irrelevant is a legal absurdity. The very core of a violation under the Fair Credit Reporting Act (FCRA) is whether the user had a "permissible purpose." The reason certified by PRA to TransUnion at the moment of the pull is the primary evidence of whether PRA complied with or willfully violated 15 U.S.C. § 1681b.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully stalled the entry of a Protective Order for over 40 days. Defendant cannot use its own procedural delay as a shield to withhold the specific "permissible purpose" code or certification it provided to TransUnion.

- **Procedural Hypocrisy regarding Initial Disclosures:** This Interrogatory seeks information that should have been disclosed voluntarily in Defendant's Initial Disclosures under Rule 26(a)(1)(A)(ii), as it is a document/data point PRA must rely on to support its defense of "permissible purpose." Defendant's 55-day default on those disclosures makes this objection particularly egregious.

- **Total Failure to Answer:** By "standing on its foregoing objections" and providing zero information, Defendant has failed its duty under FRCP 33(b)(3) to answer to the extent the interrogatory is not objectionable.

**Cure Required:**

- Immediately withdraw the "vague," "ambiguous," "relevance," and "protective order" objections.

- State the specific **"Permissible Purpose" code** or text description (e.g., "Collection," "Review," etc.) PRA transmitted to TransUnion to facilitate the April 7, 2024, inquiry.

- **Produce** the **internal system log**, **audit trail**, or **subscriber certification** that reflects the reason given to TransUnion at the exact time of the inquiry.

- **Produce** the specific **"Master Account Sale Agreement"** and **"Account Sale Addendum dated 2/2/2024"** (referenced in the Bill of Sale) which PRA contends provided the legal authority for the "reason" given to TransUnion.

- **Produce** the specific entry within the **"Notification Files"** that identifies this account as one authorized for collection-related inquiries under the Agreement.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts and produced records.

**Interrogatory No. 8**

**Request:**

Describe each step PRA took before the April 7, 2024, Inquiry to determine whether it was permitted to access Plaintiff's Consumer Report, and identify all documents reviewed at each step.

**Response:**

**OBJECTION:** PRA objects to the term "step" as vague and ambiguous because this term is undefined. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to the terms "access" and "permitted" as calling for a legal conclusion and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001-000075. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory. PRA also reserves the right to supplement its Answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Vagueness regarding "Steps":** Defendant's objection to the word "step" as vague or undefined is a frivolous attempt to avoid describing its internal "reasonable procedures" as required by the FCRA. A "step" is a common-sense term for an action taken in a process, and Defendant is legally required to maintain such processes under 15 U.S.C. § 1681e(a).

- **Abuse of Rule 33(d) (The Narrative Gap):** Defendant's reference to PRA_JENKINS_000001-000075 is an improper use of FRCP 33(d). This Interrogatory asks for a description of a process (steps taken). A 75-page document dump of generic bills of sale and internal notes does not—and cannot—describe the mental or procedural actions taken by PRA staff or systems to verify permission.

- **The "Reasonable Procedures" Violation:** Under the FCRA, a user of credit reports must have procedures to ensure they only obtain reports for a permissible purpose. By refusing to describe the "steps" taken, Defendant is effectively admitting it has no record of verifying its "permissible purpose" *before* the April 7, 2024, pull.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day stall in finalizing a Protective Order (despite three separate requests) makes this

objection a bad-faith hurdle designed to withhold the very "Master Account Sale Agreement" and "Account Sale Addendum" that would supposedly govern these "steps".

- **Contradiction of Chronology:** Defendant's production of a Bill of Sale dated March 12, 2024, creates a critical window. This Interrogatory demands to know what steps were taken between that date and the April 7, 2024, inquiry to confirm the data in the "Notification Files" was accurate and authorized for a credit pull.

**Cure Required:**

- Immediately withdraw the "vague," "legal conclusion," and "protective order" objections.

- Provide a **narrative description** of each specific step taken by PRA (or its automated systems) to verify that it had a "permissible purpose" for the April 7, 2024 inquiry.

- **Produce** the **"Master Account Sale Agreement"** and the **"Account Sale Addendum dated 2/2/2024"** which contain the "rules" PRA was supposedly following during these steps.

- **Produce** the specific entry in the **"Notification Files"** that was reviewed or "stepped through" by PRA's system prior to the inquiry.

- State whether any **manual review** was performed by an employee (such as Ricky Vaughan) or if the "step" was entirely automated.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts.

### **Interrogatory No. 9**

**Request:**

Identify the written policies and procedures in effect on April 7, 2024, governing access to consumer reports, including titles, dates, and custodians.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Interrogatory as overly broad, unduly burdensome, seeking information not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests identification of "written policies. . . governing PRA's access to consumer reports," which necessarily includes policies and procedures that are not relevant to the alleged practices challenged in the action or to the provisions of the FCRA that PRA is alleged to have violated. PRA objects to this Interrogatory as overly broad, unduly burdensome, and as seeking documents or information not relevant to the

parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." PRA's "written policies . . . governing access to consumer reports" are not relevant to this action nor proportional to the needs of this case.

**ANSWER:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Relevance Objection:** Defendant's claim that its "written policies and procedures" are not relevant is legally indefensible. Under **15 U.S.C. § 1681e(a)**, every user of consumer reports is federally mandated to maintain "reasonable procedures" to ensure reports are obtained for a "permissible purpose." The existence (or absence) of these policies is the primary evidence required to determine if the April 7, 2024, violation was **negligent** under **15 U.S.C. § 1681o** or **willful** under **15 U.S.C. § 1681n**.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully ignored three separate requests to finalize a Protective Order over a 40-day period. Defendant cannot create a procedural delay through its own silence and then use that delay to withhold foundational discovery.

- **Overbroad/Burdensome Fallacy:** This Interrogatory is narrowly tailored to the specific subject matter of this action—**access to consumer reports**. Requesting the titles and dates of the rules Defendant must follow to comply with federal law is neither burdensome nor "disproportional" to the needs of the case.

- **Procedural Hypocrisy regarding Initial Disclosures:** These policies should have been identified in Defendant's **Initial Disclosures** as documents PRA may use to support its "permissible purpose" defense. Defendant's 55-day default on those disclosures makes this total refusal to answer an act of bad faith.

- **Total Failure to Answer:** By "standing on its foregoing objections" and providing **zero** identification of even a single policy title, Defendant has violated its duty under **FRCP 33(b)(3)**.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," "overbroad," and "protective order" objections.

- **Identify** the titles, effective dates, and version numbers of all written policies and procedures in effect on April 7, 2024, regarding the procurement of consumer reports.

- **Identify** the **Custodian of Records** (name and job title) responsible for maintaining these policies.

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** as these documents constitute the specific "procedures" and "authority" governing access to this Plaintiff's consumer report.

- **Produce** the specific **"Notification Files"** (as defined in the Agreement) that acted as the procedural trigger for the April 7, 2024, inquiry.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts.

**Interrogatory No. 10**

**Request:**

Identify all training provided from 2022 through April 7, 2024, regarding consumer-report access and FCRA compliance, including dates, audiences, and materials used.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Interrogatory as overly broad, unduly burdensome, seeking information not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests identification of "training manuals. . . governing PRA's access to consumer reports," which necessarily includes identification of documents that are not relevant to the alleged practices challenged in the action or to the provisions of the FCRA that PRA is alleged to have violated. PRA objects to this Interrogatory as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." PRA's "training . . . regarding consumer-report access and FCRA compliance" is not relevant to this action nor proportional to the needs of this case.

**ANSWER:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Interrogatory upon the Court's entry of an appropriate protective order.

**Deficiency:**

**Deficiency:**

- **Bad-Faith Relevance Objection (Willfulness):** Defendant's claim that training regarding FCRA compliance and consumer-report access is "not relevant" is a blatant misstatement of law. In an FCRA action, a Plaintiff is entitled to seek punitive and statutory damages for "willful" violations under **15 U.S.C. § 1681n**. Training materials and the frequency of training are the primary evidence used to determine if a Defendant acted with "reckless disregard" or "knowledge" of the law.

- **Failure to Address "Reasonable Procedures":** Under **15 U.S.C. § 1681e(a)**, a user of credit reports must maintain "reasonable procedures." Training is the bedrock of any such procedure. By refusing to identify training, Defendant is effectively attempting to block Plaintiff from challenging Defendant's statutory "reasonable procedures" defense.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully stalled the entry of a Protective Order for over 40 days despite multiple inquiries from Plaintiff. Defendant cannot use a lack of a Protective Order—a condition it created through its own silence—as a shield to withhold the identification of its training programs.

- **Procedural Hypocrisy regarding Initial Disclosures:** Training protocols and the identities of those who manage compliance are items that should have been addressed in Defendant's **Initial Disclosures** under **Rule 26(a)(1)**. Defendant's 55-day default on those disclosures makes this total refusal to answer an act of bad faith.

- **Total Failure to Answer:** By "standing on its foregoing objections" and providing **zero** information regarding even a single training session, Defendant has violated its duty under **FRCP 33(b)(3)** to answer to the extent the interrogatory is not objectionable.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," "overbroad," and "protective order" objections.

- **Identify** by title and date every training session provided to employees or agents involved in the acquisition of Plaintiff's account and the subsequent credit inquiry.

- **Identify** the "audiences" (e.g., "Account Boarding Team," "Legal Department," "Compliance Officers") who received this training.

- **Identify** the specific training materials used (e.g., "FCRA Manual v.2.0," "Permissible Purpose Slide Deck").

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** as these documents constitute the specific "authority" that Defendant's employees were presumably trained to follow when accessing consumer reports.

- **Produce** the specific **"Notification Files"** (as defined in the Agreement) that acted as the data-trigger for the training-governed process of pulling Plaintiff's report.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts.

## Interrogatory No. 11

**Request:**

Identify each consumer reporting agency with which PRA had a contract or service agreement in effect on April 7, 2024, and identify the provisions addressing compliance with the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Interrogatory as overly broad, unduly burdensome, seeking the identification of documents not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests "contracts or service agreements . . relating to access to consumer reports," which are not relevant to the alleged practices challenged in the action or to the provisions of the FCRA that PRA is alleged to have violated

**ANSWER:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Interrogatory.

**Deficiency:**

- **Bad-Faith Relevance Objection (Subscriber Certification):** Defendant's claim that its contracts with Consumer Reporting Agencies (CRAs) are not relevant is legally baseless. Under **15 U.S.C. § 1681b(f)** and **§ 1681e(a),** a user of credit reports must certify the "permissible purpose" for which the reports are sought. The contracts and service agreements contain these mandatory **"Subscriber Certifications,"** which are the primary evidence of whether PRA was contractually and legally authorized to pull Plaintiff's report.

- **Failure to Address "Reasonable Procedures":** These agreements outline the specific compliance protocols the CRAs require PRA to follow. By withholding these documents, Defendant is obstructing Plaintiff's ability to verify if PRA followed the "reasonable procedures" it contractually agreed to maintain under federal law.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant willfully stalled the entry of a Protective Order for over 40 days despite three separate inquiries from Plaintiff. Defendant cannot use a lack of a Protective Order—a condition it

created—as a shield to withhold the very agreements that govern its access to consumer data.

- **Procedural Hypocrisy regarding Initial Disclosures:** These service agreements are documents PRA must rely on to establish its legal relationship with the CRAs and its "permissible purpose" defense. Defendant's 55-day default on **Initial Disclosures** makes this total refusal to answer an act of bad faith.

- **Total Failure to Answer:** By "standing on its foregoing objections" and providing **zero** information regarding even the identity of the CRAs it uses (beyond the obvious), Defendant has violated its duty under **FRCP 33(b)(3)**.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," "overbroad," and "protective order" objections.

- **Identify** by name every Consumer Reporting Agency (e.g., TransUnion, Equifax, Experian, etc.) with which PRA had an active agreement on April 7, 2024.

- **Produce** the actual **Service Agreements, Subscriber Agreements, or Contracts** in effect on April 7, 2024, between PRA and each identified CRA.

- **Identify and highlight** the specific provisions within those produced agreements that address **FCRA compliance**, **permissible purpose certifications**, and **auditing requirements**.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts and produced records.

**Interrogatory No. 12**

**Request:**

If PRA denies any Request for Admission concerning the absence of an arbitration agreement, identify **each arbitration agreement** PRA contends applies to Plaintiff, state **when** PRA obtained it, and **identify all documents** reflecting possession **before** April 7, 2024, and **as of** the filing of PRA's Answer.

**Response:**

**OBJECTION:** PRA objects to this Interrogatory as compound. PRA objects to this Interrogatory as overly broad and unduly burdensome to the extent the requested information or documents are equally available and accessible to Plaintiff. PRA objects to producing any information or documents subject to the attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity, including counsel's work product and mental impressions concerning this or other litigation.

**ANSWER:** Reserving and not waiving its foregoing objections, pursuant to Fed. R. Civ. P. 33(d), PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000067-000075. Discovery is ongoing and PRA specifically reserves the right to supplement its Answer to this Interrogatory.

**Deficiency:**

- **The "Circular Reasoning" Objection:** Defendant's claim that an arbitration agreement is "equally available" to Plaintiff is a bad-faith paradox. In its **Sixth Affirmative Defense**, Defendant asserts that an "original agreement" governs this dispute. If Defendant intends to move to compel arbitration, it must possess the agreement it relies upon. It cannot simultaneously claim an agreement exists to bar this lawsuit while refusing to produce it on the grounds that the Plaintiff already has it.

- **Abuse of Rule 33(d) — The "Insufficient Document" Reference:** Defendant refers to **PRA_JENKINS_000067-000075**. These pages (generic cardholder agreements from various years) do not identify a specific agreement that **applies to Plaintiff**. Rule 33(d) requires that the answer be "determined" from the documents; a generic "sample" agreement does not determine the existence of a binding contract between *this* Plaintiff and *this* Defendant.

- **Frivolous Privilege Objection:** Defendant's objection based on "attorney-client privilege" and "work-product" regarding an arbitration agreement is meritless. An arbitration agreement is an underlying contract, not a confidential communication between PRA and its counsel. Claiming privilege over a foundational contract is a transparent attempt to hide a broken **Chain of Title**.

- **Contradiction of Affirmative Defenses:** Defendant's refusal to identify when it obtained the agreement is a direct hit to its **Sixth Affirmative Defense**. If Defendant did not possess the arbitration agreement before the April 7, 2024, inquiry, it cannot claim the "original agreement" provided a permissible purpose for that pull.

**Cure Required:**

- Immediately withdraw the "equally available" and "privilege" objections.

- **Produce** the **original contract or agreement** (e.g., the signed credit application or the specific cardholder agreement) that Defendant contends applies to the Plaintiff and contains the arbitration provision.

- State specifically whether Defendant possesses a signed or electronically acknowledged version of this contract that mentions the Plaintiff by name.

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** referenced in the Bill of Sale to establish how the right to enforce this specific arbitration agreement was transferred to PRA.

- **Produce** the specific entry within the **"Notification Files"** that identifies this account as being subject to an arbitration agreement.

- State the **exact date** PRA first came into physical or electronic possession of the specific contract/agreement that applies to the Plaintiff.

- Provide a **new Supplemental Verification** page signed under oath by an authorized officer of PRA for these new facts and produced records.

========================================================================

## B. REQUESTS FOR PRODUCTION

### Request for Production No. 1

**Request:**

All documents that PRA contends allowed, authorized, or permitted PRA to make the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to the terms "allowed," "authorized" and "permitted" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000019 and PRA_JENKINS_000067. PRA further states that it may amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Semantic Objections:** Defendant's objection to "allowed," "authorized," and "permitted" is a transparent attempt to evade the fundamental requirement of **15 U.S.C. § 1681b**. These terms are not mere legal conclusions; they are the factual predicates for a "permissible purpose" defense.

- **The "Incomplete Production" (The 19-Page Limit):** Defendant points to **PRA_JENKINS_000001–000019** and **000067**. This limited selection (a generic Bill of Sale and cover sheets) is a strategic omission. It excludes the very documents the Bill of

Sale itself says are required to "authorize" the transfer: the **"Master Account Sale Agreement (the Agreement)"**, the **"Account Sale Addendum dated 2/2/2024"**, and the **"Notification Files"**.

- **Redaction Malpractice:** Within these 19 pages, Defendant has redacted the "Transfer Date" and other key data points without providing a **Privilege Log** as required by **FRCP 26(b)(5)**.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day silence in finalizing a Protective Order (after three separate prompts) proves this objection is a bad-faith stall tactic used to withhold the foundational agreements that govern the pull.

- **Procedural Hypocrisy regarding Initial Disclosures:** These "authorizing" documents are precisely what Defendant was required to disclose voluntarily under **Rule 26(a)(1)(A)(ii)** over 55 days ago.

**Cure Required:**

- Immediately withdraw the "legal conclusion" and "protective order" objections.

- **Produce** the unredacted **"Master Account Sale Agreement (the Agreement)"** in effect on April 7, 2024.

- **Produce** the **"Account Sale Addendum dated 2/2/2024"** referenced in the Bill of Sale.

- **Produce** the specific **"Notification Files"** (as defined in the Agreement) that identify the Plaintiff's account as part of the transaction.

- **Produce** the **original contract or agreement** between Plaintiff and Synchrony Bank that PRA contends "authorized" it to access the credit report.

- **Produce** the **unredacted** Bill of Sale or provide a **Privilege Log** for any factual data (like the Transfer Date) that remains hidden.

- Provide a **Supplemental Response** stating that the production is now complete and includes all documents Defendant relies upon for its "permissible purpose" defense.

## Request for Production No. 2

### Request:

All documents signed by Plaintiff that PRA contends allowed PRA to access Plaintiff's Consumer Report at any time.

**Response:**

**OBJECTION:** PRA objects to the term "allowed" as calling for a legal conclusion and as argumentative. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad and unduly burdensome to the extent it is duplicative of Request Number 1.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000075. PRA further states that it reserves the right to amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Semantic Objection:** Defendant's objection to the term "allowed" as a legal conclusion is an attempt to obstruct discovery into the factual basis of its **Sixth Affirmative Defense** (Arbitration/Original Agreement). This request seeks the specific **original contract** or signed application that Defendant contends created the legal relationship between the parties.

- **Frivolous "Unlimited in Time" Objection:** Defendant's claim that the request is "unlimited in time" is meritless. This action involves a specific account and a specific inquiry date. Any document signed by the Plaintiff that allegedly authorizes the Defendant to pull credit is, by definition, relevant to the "permissible purpose" at issue, regardless of when it was signed.

- **Abuse of Rule 34 (The "Generic Dump"):** Defendant points to **PRA_JENKINS_000001–000075**. This 75-page production contains a generic Bill of Sale and sample cardholder agreements, but it **does not** contain a single document actually **signed by the Plaintiff**. Responding to a request for "signed documents" with "unsigned samples" is an evasive and incomplete response under **Rule 37(a)(4)**.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day silence in finalizing a Protective Order proves this is a bad-faith stall tactic. A document signed by the Plaintiff is, by definition, already known to the Plaintiff and cannot be "proprietary" or "confidential" as to him.

- **Procedural Hypocrisy:** If Defendant possesses a signed agreement that it intends to use to support its standing or arbitration defense, it was required to produce it during **Initial Disclosures**.

**Cure Required:**

- Immediately withdraw the "allowed," "overbroad," and "protective order" objections.

- **Produce** the actual **original contract, credit application, or electronic signature record** specifically signed by the Plaintiff that Defendant contends authorized the credit inquiry.

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** which allegedly transferred the rights within that signed document to PRA.

- **Produce** the specific **"Notification Files"** that PRA used to identify the Plaintiff's specific account as being governed by the signed documents identified in this request.

- If Defendant contends no such signed document exists in its possession, it must provide a **sworn statement** affirming that it does not possess any documents signed by the Plaintiff.

- Provide a **Supplemental Response** stating that the production of signed documents is now complete.

## Request for Production No. 3

**Request:**

All documents reflecting any application, account, agreement, or transaction between PRA and Plaintiff.

**Response:**

**OBJECTION:** PRA objects to the term "transaction" as calling for a legal conclusion and as argumentative. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad and unduly burdensome to the extent the requested documents are equally available and accessible to Plaintiff.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000075. PRA further states that it reserves the right to amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Abuse of Rule 34 (The "Generic Dump"):** Defendant's reference to PRA_JENKINS_000001–000075 is an evasive response. This request seeks documents reflecting a transaction or agreement between PRA and Plaintiff. However, the 75-page production contains only a generic Bill of Sale between Synchrony Bank and PRA and

sample cardholder agreements. It contains zero documents reflecting a direct transaction, application, or account initiation between the actual parties to this lawsuit.

- **Bad-Faith Semantic Objection:** Objecting to the term "transaction" as a legal conclusion is a transparent attempt to avoid producing internal records of how this account was "transacted" or boarded into PRA's systems.

- **Frivolous "Equally Available" Objection:** Internal PRA records of its transactions, "boarding" logs, and account notes are in the exclusive possession of Defendant and are not "equally available" to Plaintiff.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order (despite three separate prompts) proves this is a bad-faith hurdle designed to withhold the "Master Account Sale Agreement" and "Notification Files" that constitute the only "transaction" Defendant can point to regarding this debt.

- **Procedural Hypocrisy regarding Initial Disclosures:** Any agreement or record of a transaction that Defendant intends to use to support its Fifth Affirmative Defense (Set-Off) or Sixth Affirmative Defense (Arbitration) was required to be disclosed voluntarily over 55 days ago under Rule 26(a)(1)(A)(ii).

**Cure Required:**

- Immediately withdraw the "transaction," "equally available," and "protective order" objections.

- **Produce** the **original contract or agreement** (e.g., the signed credit application or the specific cardholder agreement) between the Plaintiff and the **Original Creditor** (Synchrony Bank).

- **Produce** a **complete and unbroken chain of title** for the alleged debt, including **all** intervening assignments, bills of sale, and transfer agreements from the Original Creditor down to PRA.

- **Produce** the **"Master Account Sale Agreement (the Agreement)"** and the **"Account Sale Addendum dated 2/2/2024"** referenced in the produced Bill of Sale.

- **Produce** the specific **"Notification Files"** (as defined in the Agreement) that identify the Plaintiff by name and account number as part of the 3/12/2024 transaction.

- **Produce** all internal **Account Notes, Boarding Logs, and Transaction Histories** within PRA's systems that identify the Plaintiff by name and reflect how the account was "transacted" into PRA's database.

- **Produce** the **unredacted** Bill of Sale or provide a **Privilege Log** for any redacted factual data (like the "Transfer Date").

- Provide a **Supplemental Response** stating that the production of all documents reflecting the chain of title and transactions is now complete.

**Request for Production No. 4**

**Request:**

All documents identifying Plaintiff as owing any debt to PRA at any time.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "identifying" as calling for a legal conclusion and as argumentative. PRA objects to the term "owing" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it incorporates and requires an interpretation of the statutory language of 15 U.S.C. § 1692a(5). PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the phrases "any debt" and "any time" throughout the Request. PRA objects to this Request as overly broad, unduly burdensome, seeking documents not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests "All documents identifying…any debt… at any time" which necessarily includes documents that are not relevant to establishing PRA's alleged violation(s) of the FCRA."

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_ PRA_JENKINS_000001-000019 and PRA_JENKINS_000067. PRA further states that it may amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Semantic Objections ("Debt" and "Owing"):** Defendant's objection to the terms "debt" and "owing" as legal conclusions is an exercise in absurdity. Defendant's entire business model—and its defense in this case—rests on the factual contention that Plaintiff **owes** a **debt** to PRA. By refusing to produce documents that "identify" this debt, Defendant is attempting to hide the factual basis for its "permissible purpose".

- **Frivolous FDCPA Reference:** Defendant's objection regarding **15 U.S.C. § 1692a(5)** (the FDCPA definition of debt) is a "red herring." While this is an FCRA action, the

Defendant's internal classification of the account as a "debt" is a factual matter, not a legal theory, and is directly relevant to whether they were pulling credit for "collection" purposes.

- **The "Notification File" Omission:** Defendant identifies **PRA_JENKINS_000001– 000019** and **000067**, which are generic Bill of Sale pages and a sample agreement. These documents **do not** identify the Plaintiff as "owing" anything. Only the **"Notification Files"** and **"Account Sale Addendum"** (which Defendant has withheld) contain the specific account data that would "identify" the Plaintiff in connection with a debt.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith hurdle. If a document identifies the Plaintiff as owing a debt, it is a record about the Plaintiff; it is not a "trade secret" that can be withheld from the very person it identifies.

- **Procedural Hypocrisy:** Under **Rule 26(a)(1)**, Defendant was required to produce all documents it may use to support its claim that a debt exists (the basis for its "permissible purpose"). Its 55-day default on **Initial Disclosures** makes this objection particularly egregious.

**Cure Required:**

- **Immediately withdraw** the "legal conclusion," "vagueness," and "protective order" objections.

- **Produce the original contract or agreement** (e.g., signed credit application or cardholder agreement) between the Plaintiff and the Original Creditor.

- **Produce the General Ledger accounting records and Account-Level Ledgers from the Original Creditor AND every intervening assignee/owner** in the alleged chain of title, ending with the Defendant. These records must verify:

  1. The **on-boarding entry** showing when each entity first recognized the account as an asset on its books.

  2. The **maintenance entries** (interest, fees, payments) while the entity allegedly owned the debt.

  3. The **off-boarding/transfer entry** showing exactly when the asset was removed from that entity's books for sale to the next party.

- **Produce a complete and unbroken chain of title** (signed Assignments and Bills of Sale) for this specific account, matching the dates and amounts found in the produced General Ledgers.

- **Produce the "Master Account Sale Agreement" and "Account Sale Addendum"** for the 3/12/2024 transaction, along with any similar Master Agreements for intervening transfers.

- **Produce the unredacted Bill of Sale** or provide a **Privilege Log** for any redacted factual data (like the "Transfer Date").

- **State under oath** whether PRA possesses these ledger records for the entire chain. If they do not, they must admit they cannot prove a valid transfer of the alleged debt.

## Request for Production No. 5

**Request:**

All documents reflecting the transfer, assignment, sale, or purchase of any debt allegedly owed by Plaintiff to PRA.

**Response:**

**OBJECTION:** PRA objects to the terms "transfer," "assignment," "sale" "purchase" and "owed" as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it incorporates and requires an interpretation of the statutory language of 15 U.S.C. § 1692a(5). PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the phrases "any debt" in the Request. PRA objects to this Request as overly broad, unduly burdensome, seeking documents not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests "All documents reflecting…any debt" which necessarily includes documents that are not relevant to establishing PRA's alleged violation(s) of the FCRA. PRA objects to this Request as overly broad and unduly burdensome to the extent it is duplicative of Request Number 4.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000019 and PRA_JENKINS_000067. PRA further states that it reserves the right to amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Semantic Objections to Industry Terms:** Defendant's objection to standard industry terms like "transfer," "assignment," "sale," and "purchase" as legal conclusions is frivolous. These are the specific mechanisms by which Defendant claims to have

acquired the legal right to pull Plaintiff's credit. Refusing to produce the underlying evidence of these acts is a direct obstruction of discovery into Defendant's **Fifth and Sixth Affirmative Defenses**.

- **Direct Contradiction of Affirmative Defenses:** Defendant's refusal to produce these documents directly obstructs discovery into its own asserted defenses:

  1. **Fifth Affirmative Defense (Set-Off):** PRA cannot claim a set-off for a debt it refuses to prove it owns via a verified **Chain of Title** and **General Ledger**.
  2. **Sixth Affirmative Defense (Arbitration):** PRA cannot invoke an arbitration agreement while simultaneously objecting to the production of the **Original Contract** that would contain such a clause.
  3. **Seventh Affirmative Defense (Truth of Information):** PRA asserts that the information it transmitted was "true." However, PRA cannot verify the "truth" of the debt's balance, origin, or ownership without the **Original Creditor's General Ledger** and the **Original Signed Agreement**. Transmission of a "data file" is not proof of "truth"; it is merely proof of receipt.

- **The "Data vs. Debt" Fallacy:** Defendant points to **PRA_JENKINS_000001–000019**, which are generic Bill of Sale cover sheets and a sample agreement. As established by Plaintiff, the mere transmission of data (Notification Files) is not a legal transfer of a debt. This request seeks the actual instruments of transfer—the signed contracts and assignments—not just the digital data.

- **Omission of General Ledger Accounting:** To prove a valid "sale" or "purchase," Defendant must produce the **General Ledger entries** from the Original Creditor and every intervening owner. Without the accounting records showing the asset being "on-boarded" and "off-boarded" from each entity's books, there is no proof a transaction occurred beyond a hearsay "receipt".

- **Moot "Protective Order" Objection:** Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith stall tactic. A consumer's own account records and the chain of title for a debt they allegedly owe cannot be withheld as "proprietary" from that consumer.

- **Procedural Hypocrisy regarding Initial Disclosures:** These documents are the bedrock of Defendant's standing. Its 55-day default on **Initial Disclosures** under **Rule 26(a)(1)** makes this objection-heavy response an act of bad faith.

**Cure Required:**

- **Immediately withdraw** the "legal conclusion," "vagueness," and "protective order" objections.

- **Produce the original contract or agreement** (e.g., signed credit application or cardholder agreement) between the Plaintiff and the Original Creditor.

- **Produce the General Ledger accounting records and Account-Level Ledgers** from the Original Creditor **AND** every intervening assignee/owner in the alleged chain of title, ending with the Defendant.

- **Produce a complete and unbroken chain of title** (signed Assignments and Bills of Sale) for this specific account, matching the dates and amounts found in the produced General Ledgers.

- **Produce the unredacted "Master Account Sale Agreement"** and **"Account Sale Addendum dated 2/2/2024"** referenced in the produced Bill of Sale.

- **Produce the unredacted final sentence** of the Bill of Sale containing the "Transfer Date."

- **Provide a Sworn Statement of Non-Existence:** If Defendant cannot produce the foundational contracts or the General Ledger accounting for each link in the chain, it must provide a **written, sworn statement** stating that such documents do not exist in its possession, custody, or control.

- **Advisory Note:** Defendant is advised that a statement of non-existence regarding these documents constitutes a formal admission that Defendant lacks the evidentiary basis to support its **Fifth, Sixth, and Seventh Affirmative Defenses**, as "data transmissions" are not a substitute for the original instruments of debt and accounting.

- Provide a **Supplemental Response** stating that the production of all documents reflecting the chain of title and accounting records is now complete.

**Request for Production No. 6**

**Request:**

All documents in PRA's possession **before April 7, 2024** that identify Plaintiff by name in connection with any debt or account.

**Response:**

**OBJECTION:** PRA objects to the term "possession" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the terms "identify," "debt" and "account" as calling for legal conclusions and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it incorporates and requires an interpretation of the statutory language of 15 U.S.C. § 1692a(5). PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the phrases "any debt" in the Request. PRA objects to this Request as overly broad, unduly burdensome, seeking documents not relevant to the parties' claims or defenses or proportional to the needs of this case because it requests "All documents

before April 7, 2024 ...... in connection with any debt or account" which necessarily includes documents that are not relevant to establishing PRA's alleged violation(s) of the FCRA. PRA objects to this Request as overly broad and unduly burdensome to the extent it is duplicative of Request Number 4.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000075. PRA further states that it reserves the right to amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Abuse of Rule 34 (The "Generic Dump" Violation):** Defendant's reference to **PRA_JENKINS_000001–000075** is an evasive and non-responsive answer. This request specifically seeks documents possessed **before April 7, 2024**, that identify the Plaintiff by name. The 75-page production consists of generic Bill of Sale cover sheets and sample agreements that **do not contain the Plaintiff's name**. Pointing to a bulk dump that fails to identify the Plaintiff is a violation of the duty to respond in good faith.

- **Failure to Distinguish "Data" from "Physical Documents":** Defendant's response fails to clarify what it actually held in its possession at the time of the credit pull. As established by Plaintiff, "Account Statements" and "Notification Files" are merely transmissions of data/information; they are not the physical instruments (contracts/assignments) that prove the truth of the information or the legal authority to act upon it.

- **Bad-Faith Semantic Objections to "Possession" and "Identify":** Objecting to "possession" and "identify" as legal conclusions is frivolous. Whether Defendant physically or electronically "possessed" a document identifying the Plaintiff is a question of fact.

- **Direct Obstruction of the "Permissible Purpose" Inquiry:** The central issue is what PRA actually held in its possession *before* it pulled the Plaintiff's credit. If Defendant possessed no documents identifying the Plaintiff by name other than a generic data file, it had no "permissible purpose" under **15 U.S.C. § 1681b**.

**Cure Required:**

- Immediately withdraw the "possession," "identify," "legal conclusion," and "protective order" objections.

- **Produce a verified list** of every specific document PRA actually held in its physical or electronic possession **prior to April 7, 2024**, that identifies the Plaintiff by name.

- **Clarify the Nature of Possession:** For each item identified, Defendant must state whether it possessed the **actual physical document** (or a true and correct copy of the original contract/assignment) or if it merely possessed **digital data/information** (such as an account statement or notification file) transmitted by a third party.

- **Provide a Sworn Statement of Non-Existence:** If Defendant did not possess any original instruments or physical contracts identifying the Plaintiff before the April 7, 2024 inquiry, it must provide a **written, sworn statement** stating that its possession at the time of the pull was limited to data transmissions.

- **Advisory Note:** Defendant is advised that a statement of non-existence regarding any physical instruments identifying the Plaintiff prior to the inquiry date constitutes a formal admission that the credit pull was based solely on a "data transmission," which is insufficient to establish "truth" or "permissible purpose" under the FCRA.

- Provide a **Supplemental Response** stating that the production of all documents possessed prior to April 7, 2024, is now complete.

**<u>Request for Production No. 7</u>**

**<u>Request:</u>**

<u>All records showing the reason PRA gave to TransUnion for the April 7, 2024 Inquiry.</u>

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the term "reason" in the Request, which is undefined. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request to the extent it requests information or documents that are subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Request upon the Court's entry of an appropriate protective order."

**Deficiency:**

- **Bad-Faith "Vague and Ambiguous" Objection:** Defendant's claim that the term "reason" is undefined and ambiguous is a transparent stall tactic. In the context of an FCRA inquiry, the "reason" is the **"Permissible Purpose"** certification PRA is federally mandated to provide to TransUnion under **15 U.S.C. § 1681b(f)** and **§ 1681e(a)**.

- **Total Failure to Respond:** By "standing on its objections," Defendant has produced **zero** records of the actual transmission or certification it sent to TransUnion. This is a direct violation of **Rule 34(b)(2)**, which requires a party to produce documents or state a specific objection to each part of the request.

- **Frivolous "Third-Party Confidentiality" Objection:** Defendant cannot hide behind a "duty of confidentiality" to TransUnion to withhold the certification it made regarding the **Plaintiff's own credit data**. A consumer is legally entitled to know the purpose for which their credit was accessed.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith hurdle designed to withhold the only record that proves what PRA *claimed* its purpose was on April 7, 2024.

- **Direct Obstruction of the Case Merits:** This request seeks the "smoking gun"—the actual electronic transmission or subscriber certification that triggered the pull. Without this record, the court cannot determine if PRA's stated reason to the CRA matches its "permissible purpose" defense in this lawsuit.

**Cure Required:**

- Immediately withdraw the "vague," "confidentiality," and "protective order" objections.

- **Produce the actual electronic record, transmission log, or certification** (often referred to as a "Subscriber Inquiry Log" or "Inquiry Header") sent by PRA to TransUnion on April 7, 2024.

- **Identify the specific "Permissible Purpose" code** or text string used in that transmission (e.g., "Collection," "Account Review," etc.).

- **Produce the Service Agreement or "Subscriber Manual"** between PRA and TransUnion that defines the "reasons" (codes) used by PRA to authorize inquiries.

- **Provide a Sworn Statement:** If Defendant contends that no record of its communication with TransUnion exists in its possession, it must state under oath how it certified its purpose for the April 7, 2024 Inquiry as required by **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all records reflecting the reason given to TransUnion is now complete.

## Request for Production No. 8

**Request:**

All records showing the subscriber account, credentials, system, or automated process used by PRA to make the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to the terms "subscriber account," "credentials," "system" and "automated process" as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Requests as vague and ambiguous with respect to its use of the terms "subscriber account," "credentials," "system" and "automated process" in the Request because the terms are undefined. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The method or process by which PRA allegedly accessed Plaintiff's credit report is not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith Relevance Objection (Process vs. Purpose):** Defendant's claim that the "method or process" is irrelevant is a direct attempt to hide the lack of **"Reasonable Procedures"** required under **15 U.S.C. § 1681e(a)**. In an FCRA case, if an inquiry was triggered by an automated system without human oversight, the "reasonableness" of that automation is the central issue. If the system was programmed to pull credit based solely on a "data transmission" without verifying the existence of an original contract, that is evidence of **willful or negligent** non-compliance.

- **Evasive Objections to Industry Standard Terms:** Objecting to "subscriber account," "credentials," and "automated process" as "vague" or "legal conclusions" is meritless. These are standard technical and industry terms used by every Consumer Reporting Agency (CRA) and subscriber. PRA knows exactly which account and automated batch process it used to initiate the April 7, 2024 Inquiry.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order (despite three prompts) proves this is a bad-faith stall tactic. The technical process used to pull a consumer's credit is discoverable to ensure the process complies with federal law.

- **Failure to Address "Systemic Error":** By withholding the records of the "system" used, Defendant is preventing Plaintiff from discovering whether the April 7, 2024 Inquiry was

part of a systemic "batch pull" error—a fact critical to proving **willfulness** under **15 U.S.C. § 1681n**.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** records of the inquiry's technical origin, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "relevance," "vague," and "protective order" objections.

- **Identify and Produce** the technical logs or "Audit Trails" showing the specific **Subscriber Account** and **User ID/Credentials** used to access TransUnion on April 7, 2024.

- **Produce a "System Description" or "Workflow Diagram"** of the automated process that triggered the inquiry.

- **Clarify the Triggering Event:** State whether the inquiry was initiated by a human employee or an automated batch process triggered by the receipt of the "Notification Files" from the 3/12/2024 sale.

- **Provide a Sworn Statement:** If Defendant contends that its "automated process" pulls credit without first verifying the possession of the original contract or general ledger accounting, it must admit this fact under oath.

- **Advisory Note:** Defendant is advised that a process that pulls consumer reports based solely on unverified "data transmissions" fails the "reasonable procedures" test mandated by the FCRA.

- Provide a **Supplemental Response** stating that the production of all records reflecting the process and system used is now complete.

**<u>Request for Production No. 9</u>**

**<u>Request:</u>**

<u>All documents reviewed by PRA **before April 7, 2024** in deciding to make the Inquiry.</u>

**Response:**

**OBJECTION:** PRA objects to the terms "reviewed," and "deciding" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad and unduly burdensome to the extent it is duplicative of Request Number 1.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000075. PRA further states that it may amend and/or supplement its response to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Evasive and Non-Responsive Production:** Defendant's reference to **PRA_JENKINS_000001–000075** is evasive because it fails to clarify if this range constitutes the **exclusive and total universe** of documents reviewed. While this range includes account statements, those are mere "information" files. This request seeks the "decision-making" trail. If the 75 pages produced are the only documents Defendant reviewed, Defendant must explicitly state that no other documents—specifically the **Original Contract** or **General Ledger Accounting**—were part of its decision-making process prior to the April 7, 2024 Inquiry.

- **Bad-Faith Semantic Objections to "Reviewed" and "Deciding":** Objecting to "reviewed" and "deciding" as legal conclusions is frivolous. These are foundational discovery terms. Whether a human agent or an automated system "reviewed" a specific file or contract before triggering the Inquiry is a question of fact.

- **Direct Obstruction of the "Permissible Purpose" Inquiry:** The central issue is the **factual basis** for the inquiry. If Defendant "decided" to pull credit based solely on the review of a digital data file or an unverified account statement, without reviewing the foundational **Instruments** of the debt (the contract), it lacked a "permissible purpose" under **15 U.S.C. § 1681b**.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith stall tactic. Documents allegedly reviewed to justify a credit pull cannot be withheld from the consumer as "proprietary."

**Cure Required:**

- Immediately withdraw the "reviewed," "deciding," "legal conclusion," and "protective order" objections.

- **Explicitly state under oath** whether the documents identified in **PRA_JENKINS_000001–000075** constitute the **entirety** of the records reviewed by PRA prior to the April 7, 2024 Inquiry.

- **Produce any additional instruments** (Original Contracts, signed Assignments, or General Ledgers) that were reviewed but not included in the initial production.

- **Provide a Sworn Statement of Non-Existence:** If no other documents exist, Defendant must provide a **written, sworn statement** confirming that its "decision" to pull credit was based exclusively on the review of the 75 pages produced (generic templates and account statements) and that no original contract or ledger was reviewed.

- **Advisory Note:** Defendant is advised that an admission that it reviewed only "account statements" or "generic templates"—without reviewing the foundational original contract—constitutes a formal admission that it lacked a factual basis for "permissible purpose" and failed to maintain "reasonable procedures" as mandated by the FCRA.

- Provide a **Supplemental Response** stating that the production of all documents reviewed prior to the inquiry is now complete.

**Request for Production No. 10**

**Request:**

All records reflecting any review, check, or verification performed by PRA before making the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to the terms "review," "check" and "verification" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the phrases "any review, check or verification" in the Request because the terms are undefined. PRA objects to this Request as overly broad and unduly burdensome to the extent it is duplicative of Request Number 9.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA stands on its foregoing objections. PRA states that it may produce documents responsive to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith "Vague and Ambiguous" Objection:** Defendant's claim that "review," "check," and "verification" are undefined is frivolous. These are standard industry actions. In the context of the FCRA, these terms refer to the **"Reasonable Procedures"** a subscriber must perform to verify a "permissible purpose" under **15 U.S.C. § 1681e(a)**.

- **Failure to Distinguish "Documents" from "Records of Action":** Defendant's "duplicative" objection is legally unsound. While RFP No. 9 seeks the documents reviewed, RFP No. 10 seeks the **records of the act of reviewing**. This includes internal

audit logs, timestamps, system verification flags, and employee "activity notes" showing when and how the verification was performed.

- **Direct Obstruction of the "Reasonable Procedures" Inquiry:** The central issue is whether PRA performed **any** actual verification before pulling the report. If no "check" or "verification" record exists, it is evidence that the inquiry was triggered automatically without any meaningful verification of the data's accuracy or the debt's ownership.

- **Moot "Protective Order" Objection:** As established in the Anchor section, Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith stall tactic. Records of how a debt buyer verified a consumer's account are not "trade secrets" that can be withheld from that consumer.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** records of the verification process, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "vague," "duplicative," and "protective order" objections.

- **Produce all internal logs, audit trails, and activity records** showing the date, time, and specific "check" or "verification" performed by PRA staff or automated systems prior to the April 7, 2024 Inquiry.

- **Identify the specific employee or system** that performed the "verification" and the specific criteria used to "check" the account (e.g., verifying the account was not in bankruptcy, verifying a signed contract was on file, etc.).

- **Provide a Sworn Statement of Non-Existence:** If no record of a "review, check, or verification" exists—meaning the inquiry was triggered without any pre-pull verification process—Defendant must provide a **written, sworn statement** to that effect.

- **Advisory Note:** Defendant is advised that an admission that no "verification" or "check" was recorded prior to the credit pull constitutes a formal admission that Defendant failed to maintain "reasonable procedures" as mandated by **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all records reflecting the verification process is now complete.

## Request for Production No. 11

**Request:**

All written policies in effect on April 7, 2024 governing PRA's access to consumer reports.

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policies or process by which PRA allegedly accessed Plaintiff's credit report are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA stands on its foregoing objections. PRA states that it may produce documents responsive to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Legal Error Regarding "Relevance":** Defendant's assertion that its policies are "not relevant" is a fundamental misstatement of the law. In an FCRA action, "permissible purpose" under **15 U.S.C. § 1681b** is only half the battle. **15 U.S.C. § 1681e(a)** *requires* every subscriber to maintain **"reasonable procedures"** to ensure that consumer reports are only obtained for permissible purposes. Without producing these policies, Defendant is preventing Plaintiff from discovering whether PRA's procedures were legally sufficient or existed at all.

- **Bad-Faith "Protective Order" Stall:** Defendant's refusal to produce these records until a Protective Order is entered is a transparent obstruction. As documented in the Anchor section of this letter, Defendant has willfully delayed the finalization of a Protective Order for over 40 days despite multiple prompts. Using a self-created procedural delay to withhold evidence of compliance with federal law is an act of bad faith.

- **Direct Obstruction of the "Willfulness" Inquiry:** Evidence of a lack of written policies—or policies that authorize credit pulls based solely on "data transmissions"—is central to proving a **willful violation** under **15 U.S.C. § 1681n**. If PRA has no written rules governing when an automated pull is authorized, the violation is systemic, not accidental.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** documents, Defendant has violated its duty under **Rule 34(b)(2)** to provide discovery in a timely and transparent manner.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," and "protective order" objections.

- **Produce the complete, written policies and procedures** in effect on April 7, 2024, specifically those governing the acquisition of consumer reports, the "boarding" of new accounts, and the verification of debt ownership prior to credit inquiries.

- **Produce any internal Training Manuals or Compliance Guides** provided to employees or system administrators regarding the "permissible purpose" requirements of the FCRA.

- **Provide a Sworn Statement of Non-Existence:** If Defendant did not have written policies or procedures in place on April 7, 2024, regarding the legal acquisition of consumer reports, it must state so under oath.

- **Advisory Note:** Defendant is advised that the absence of written procedures—or the production of procedures that do not require verification of the original debt instrument prior to an inquiry—constitutes a formal admission that Defendant failed to maintain "reasonable procedures" as mandated by **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all governing policies and procedures is now complete.

## Request for Production No. 12

**Request:**

All written procedures in effect on April 7, 2024 implementing PRA's policies governing access to consumer reports.

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The procedures or process by which PRA allegedly accessed Plaintiff's credit report are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA stands on its foregoing objections. PRA states that it may produce documents responsive to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Bad-Faith "Relevance" Objection (Policies vs. Procedures):** Defendant's argument that procedures are irrelevant is a fundamental misreading of the Fair Credit Reporting

Act. While RFP No. 11 sought the "Policies" (the high-level rules), RFP No. 12 seeks the **"Procedures"** (the actual step-by-step instructions and technical workflows) used to implement those rules. Under **15 U.S.C. § 1681e(a)**, the "reasonableness" of a subscriber's conduct is judged by the adequacy of its procedures. Withholding the "how-to" manuals prevents Plaintiff from discovering if PRA's actual practices match its stated policies.

- **Direct Obstruction of the "Reasonable Procedures" Inquiry:** If PRA's procedures instruct its system or staff to initiate a credit pull automatically upon the receipt of a "Notification File" (data) without first requiring the verification of the **Original Contract** (instrument), that procedure is evidence of a **willful violation** of the FCRA.

- **Moot "Protective Order" Objection:** As established in the Anchor section of this letter, Defendant's 40-day failure to finalize a Protective Order proves this is a bad-faith stall tactic. A company cannot hide the "procedures" it uses to invade a consumer's privacy behind a protective order that it is actively refusing to sign.

- **Total Failure to Respond:** By "standing on its objections" and refusing to produce the implementation manuals, Defendant has violated its duty under **Rule 34(b)(2)** to provide full and complete discovery.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," and "protective order" objections.

- **Produce the written implementation procedures** (e.g., standard operating procedures, workflow diagrams, or technical manuals) in effect on April 7, 2024, that detail exactly how a credit inquiry is initiated, what specific steps must be taken to verify a "permissible purpose," and what documents must be in PRA's possession before a pull is authorized.

- **Provide a Sworn Statement of Non-Existence:** If Defendant does not have written procedures implementing its policies—meaning its staff or systems act without specific, documented instructions—it must state so under oath.

- **Advisory Note:** Defendant is advised that the absence of step-by-step implementation procedures regarding credit access constitutes a *per se* failure to maintain "reasonable procedures" as mandated by **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all implementation procedures is now complete.

## Request for Production No. 13

**Request:**

All training materials used from 2022 through April 7, 2024 relating to access to consumer reports or compliance with the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policies, training manuals or processes by which PRA allegedly accessed Plaintiff's credit report are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA stands on its foregoing objections. PRA states that it may produce documents responsive to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Legal Fallacy Regarding "Relevance":** Defendant's argument that training materials are "not relevant" because the case only concerns "permissible purpose" is a willful misinterpretation of the FCRA. Under **15 U.S.C. §1681e(a)**, a subscriber is mandated to maintain **"reasonable procedures"** to prevent unauthorized access. Training is the foundational element of any "reasonable procedure." If Defendant's personnel or system administrators were not trained on the legal requirement to possess the **Original Instrument** (the contract) before accessing a report, that deficiency is central to the litigation.

- **Direct Obstruction of the "Willfulness" Inquiry:** To recover statutory and punitive damages under **15 U.S.C. §1681n**, a plaintiff must show the violation was "willful." Training materials are the primary evidence used to determine if a company acted in **"reckless disregard"** of the law. If PRA's training materials suggest that a "data transmission" or "Notification File" is sufficient to establish a permissible purpose, that is evidence of a systemic, willful violation.

- **Moot "Protective Order" Objection:** As documented in the Anchor section, Defendant has engaged in a 40-day stall regarding the Protective Order. Defendant cannot unilaterally create a procedural bottleneck and then cite that bottleneck as a reason to withhold evidence of its compliance (or lack thereof) with federal training mandates.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** training records, Defendant has violated its duty under **Rule 34(b)(2)**. Training materials regarding FCRA compliance are routinely produced in consumer litigation and are never considered "proprietary" to the point of being non-discoverable.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," and "protective order" objections.

- **Produce all training manuals, slide decks, webinars, and written instructions** used from 2022 through April 7, 2024, regarding:

  1. The legal requirements for "permissible purpose" under **15 U.S.C. §1681b**.

  2. The internal process for "boarding" purchased accounts and verifying the existence of the underlying debt.

- The specific criteria for when an automated or manual credit inquiry is authorized.

- **Provide a Sworn Statement of Non-Existence:** If Defendant did not provide specific FCRA compliance training to the individuals or departments responsible for the April 7, 2024 Inquiry, it must state so under oath.

- **Advisory Note:** Defendant is advised that the failure to train employees on the distinction between "data transmissions" (Information) and "original contracts" (Instruments) regarding credit access constitutes evidence of a **willful violation** and a failure to maintain "reasonable procedures" under **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all relevant training materials is now complete.

**<u>Request for Production No. 14</u>**

**<u>Request:</u>**

<u>All contracts or service agreements in effect on April 7, 2024 between PRA and TransUnion relating to access to consumer reports.</u>

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The alleged

contracts or service agreements between TransUnion and PRA are not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information or documents that are subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Legal Fallacy Regarding "Relevance":** Defendant's claim that its service agreement with TransUnion is "not relevant" is a frontal assault on the discovery process. Under **15 U.S.C. § 1681e(a)**, every subscriber must certify the purposes for which information is sought and agree that the information will be used for no other purpose. This contract is the **foundational record** of that certification. It defines the legal "reason" PRA provided to the CRA to gain access to the Plaintiff's credit data.

- **Direct Obstruction of the "Permissible Purpose" Inquiry:** The service agreement contains the **"Subscriber Manual"** or "Permissible Purpose Codes" that explain exactly what PRA meant when it electronically "clicked" or "coded" the reason for the April 7, 2024 Inquiry. Without this contract, the Plaintiff is barred from testing whether PRA's internal justification matches the legal requirements of **15 U.S.C. § 1681b**.

- **Frivolous "Third-Party Confidentiality" Objection:** PRA cannot contract away the Plaintiff's right to discovery. A private confidentiality clause with TransUnion does not shield PRA from its federal obligation to produce evidence regarding its access to a consumer's credit report. Federal discovery rules and the FCRA's transparency mandates supersede private NDAs.

- **Moot "Protective Order" Objection:** As documented in the Anchor section, Defendant has manufactured a 40-day delay in finalizing a Protective Order. Defendant is prohibited from using its own procedural foot-dragging as a shield to withhold the very contract that authorized its invasion of the Plaintiff's privacy.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** records of its contractual authority to pull credit, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "relevance," "confidentiality," and "protective order" objections.

- **Produce the complete Service Agreement, Subscriber Contract, and any Addendums** in effect on April 7, 2024, between PRA and TransUnion.

- **Produce the "Subscriber Manual" or "User Guide"** referenced in said agreement that defines the specific "Permissible Purpose Codes" and "Reason Codes" used by PRA.

- **Identify the specific Subscriber Account Number** used to initiate the April 7, 2024 Inquiry.

- **Provide a Sworn Statement:** If Defendant contends that it accessed TransUnion's database without a written agreement or certification in place on April 7, 2024, it must state so under oath.

- **Advisory Note:** Defendant is advised that accessing a consumer report without a valid, signed certification of purpose on file with the CRA constitutes a **willful violation** of the FCRA under **15 U.S.C. § 1681e(a)** and **§ 1681q**, exposing Defendant to statutory and punitive damages.

- Provide a **Supplemental Response** stating that the production of all contractual records with TransUnion is now complete.

### Request for Production No. 15

**Request:**

All contracts or service agreements in effect on April 7, 2024 between PRA and Equifax relating to access to consumer reports.

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The alleged contracts or service agreements between Equifax and PRA are not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information or documents that are subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Legal Fallacy Regarding "Relevance":** Similar to RFP No. 14, Defendant's claim that its service agreement with Equifax is "not relevant" is a fundamental misstatement of discovery law. Under **15 U.S.C. § 1681e(a)**, every subscriber is mandated to certify the purposes for which information is sought. Even if the specific inquiry on April 7, 2024, was through a different bureau, PRA's Master Agreements with all major credit reporting agencies (CRAs) establish the **standard of care**, the **reasonable procedures** (or lack thereof), and the **certifications** Defendant has made regarding its access to consumer data.

- **Direct Obstruction of the "Willfulness" Inquiry:** This contract is essential to determine if PRA maintains consistent procedures across bureaus or if it utilizes different "Reason Codes" to bypass internal restrictions. To prove a **willful violation** under **15 U.S.C. § 1681n**, Plaintiff is entitled to discover if Defendant's unauthorized access is a systemic issue across its various CRA subscriber accounts.

- **Frivolous "Third-Party Confidentiality" Objection:** PRA cannot use a private contract with Equifax to shield itself from its federal discovery obligations. Confidentiality agreements do not override the Plaintiff's right to evidence in an FCRA action, and any legitimate business secrecy concerns are solved by the Protective Order—which Defendant has willfully failed to finalize for over 40 days.

- **Moot "Protective Order" Objection:** As established in the Anchor section of this letter, Defendant's refusal to sign a Protective Order while simultaneously using the *absence* of one to withhold documents is a bad-faith tactic designed to paralyze discovery.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** records, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "relevance," "confidentiality," and "protective order" objections.

- **Produce the complete Service Agreement, Subscriber Contract, and any Addendums** in effect on April 7, 2024, between PRA and Equifax.

- **Produce the "Subscriber Manual" or "User Guide"** referenced in said agreement that defines the specific "Permissible Purpose Codes" used by PRA.

- **Identify any Subscriber Account Numbers** used by PRA to access Equifax records during the period relevant to the boarding of the Plaintiff's alleged account.

- **Provide a Sworn Statement:** If Defendant contends it had no written agreement or certification in place with Equifax on April 7, 2024, it must state so under oath.

- **Advisory Note:** Defendant is advised that accessing consumer reports without a valid, signed certification of purpose on file with the CRA (Equifax) constitutes evidence of a **willful violation** and a failure to maintain "reasonable procedures" under 15 U.S.C. § 1681e(a).

- Provide a **Supplemental Response** stating that the production of all contractual records with Equifax is now complete.

## Request for Production No. 16

**Request:**

All contracts or service agreements in effect on April 7, 2024 between PRA and Experian relating to access to consumer reports.

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The alleged contracts or service agreements between TransUnion and Experian are not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information or documents that are subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** PRA stands on the foregoing objections. PRA reserves the right to amend and/or supplement its objection(s) and answer to this Request upon the Court's entry of an appropriate protective order.

**Deficiency:**

- **Non-Responsive and Evasive "Copy-Paste" Error:** Defendant's objection states that "contracts or service agreements between **TransUnion and Experian** are not relevant." This is a non-sequitur and a facial failure to respond to the Request, which seeks contracts between **PRA and Experian**. This sloppy, boilerplate response proves that Defendant did not perform a meaningful review of the Request or its own records before objecting.

- **Legal Fallacy Regarding "Relevance":** As with RFPs 14 and 15, Defendant's claim that its service agreement with Experian is "not relevant" is a fundamental misstatement of discovery law. Under **15 U.S.C. § 1681e(a)**, every subscriber must certify its purposes for seeking information. PRA's master agreements with all major credit reporting

agencies (CRAs) establish the **standard of care**, the **reasonable procedures** (or lack thereof), and the **certifications** Defendant has made regarding its access to consumer data.

- **Direct Obstruction of the "Willfulness" Inquiry:** This contract is essential to determine if PRA maintains consistent procedures across all bureaus. To prove a **willful violation** under 15 U.S.C. § 1681n, Plaintiff is entitled to discover if Defendant's unauthorized access is a systemic issue across its various CRA subscriber accounts.

- **Frivolous "Third-Party Confidentiality" and "Protective Order" Objections:** As established in the Anchor section of this letter, Defendant has willfully delayed the finalization of a Protective Order for over 40 days. Defendant cannot use a procedural bottleneck of its own making to shield its subscriber agreements from discovery.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** records, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "relevance," "confidentiality," and "protective order" objections.

- **Address the non-responsive error** regarding "TransUnion and Experian" and provide a verified response regarding the actual contracts between **PRA and Experian**.

- **Produce the complete Service Agreement, Subscriber Contract, and any Addendums** in effect on April 7, 2024, between PRA and Experian.

- **Produce the "Subscriber Manual" or "User Guide"** referenced in said agreement that defines the specific "Permissible Purpose Codes" used by PRA.

- **Provide a Sworn Statement of Non-Existence:** If Defendant contends it had no written agreement or certification in place with Experian on April 7, 2024, it must state so under oath.

- **Advisory Note:** Defendant is advised that accessing consumer reports without a valid, signed certification of purpose on file with the CRA (Experian) constitutes evidence of a **willful violation** and a failure to maintain "reasonable procedures" under **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all contractual records with Experian is now complete.

## Request for Production No. 17

## Request:

<u>All documents reflecting any audit, compliance review, or internal assessment relating to PRA's access to consumer reports from 2022 through April 7, 2024.</u>

**Response:**

**OBJECTION:** PRA objects to this Request to the extent it seeks proprietary and/or confidential business information absent entry of an appropriate protective order by the Court. PRA objects to this Request as overly broad, unduly burdensome, and as seeking documents or information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The methods or processes by which PRA allegedly accesses consumer credit reports are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** PRA stands on the foregoing objections.

**Deficiency:**

- **Legal Fallacy Regarding "Relevance":** Defendant's claim that internal audits and assessments are "not relevant" is a rejection of established FCRA jurisprudence. Under **15 U.S.C. § 1681e(a)**, a subscriber must not only "maintain" reasonable procedures but also ensure they are effective. Internal audits are the **primary evidence** of whether PRA's procedures were being followed or if they were known to be deficient prior to the April 7, 2024 Inquiry.

- **Direct Obstruction of the "Willfulness" Inquiry:** To prove a **willful violation** under **15 U.S.C. § 1681n**, a plaintiff must show that a defendant acted in "reckless disregard" of the law. If an internal audit or compliance review flagged issues with PRA's "account boarding" process or its reliance on unverified "data transmissions" before April 2024, and Defendant failed to correct those issues, such evidence is the "smoking gun" for statutory and punitive damages.

- **The "Method and Process" Error:** Defendant's objection that "methods or processes" are irrelevant is contradictory. The "method" by which Defendant accesses consumer reports is exactly what must be audited to comply with the FCRA. By withholding these assessments, Defendant is preventing the Plaintiff from testing the validity of Defendant's Affirmative Defenses.

- **Moot "Protective Order" Objection:** As established in the Anchor section of this letter, Defendant's 40-day failure to finalize a Protective Order (despite three prompts) proves this is a bad-faith stall tactic. Defendant cannot unilaterally create a procedural bottleneck and then cite that bottleneck as a reason to withhold evidence of systemic non-compliance.

- **Total Failure to Respond:** By "standing on its objections" and producing **zero** audit records, Defendant has violated its duty under **Rule 34(b)(2)**.

**Cure Required:**

- Immediately withdraw the "relevance," "proportionality," and "protective order" objections.

- **Produce all internal audits, compliance reports, or assessments** from 2022 through April 7, 2024, that address PRA's acquisition of consumer reports, its "permissible purpose" certifications, or its procedures for verifying debt ownership prior to credit pulls.

- **Produce any "Corrective Action Plans"** (CAPs) resulting from these audits that were in effect or pending during the relevant period.

- **Provide a Sworn Statement of Non-Existence:** If Defendant did not perform any audits or assessments of its credit access procedures during this two-year period, it must state so under oath.

- **Advisory Note:** Defendant is advised that a failure to audit or assess its own compliance procedures constitutes evidence of **"reckless disregard"** for consumer privacy and a failure to maintain "reasonable procedures" as mandated by **15 U.S.C. § 1681e(a)**.

- Provide a **Supplemental Response** stating that the production of all relevant audit and assessment records is now complete.

### Request for Production No. 18

**Request:**

All arbitration agreements PRA contends apply to Plaintiff.

**Response:**

**OBJECTION:** PRA objects to this Request as overly broad and unduly burdensome to the extent the requested information or documents are equally available and accessible to Plaintiff. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000067 000075.

**Deficiency:**

- **Bad-Faith Reliance on Conditional Affirmative Defenses (The Sixth Affirmative Defense):** Defendant asserts in its **Sixth Affirmative Defense** that "To the extent Plaintiff

has agreed to arbitrate this dispute in the original agreement creating the obligation, the Complaint violates that agreement and this matter should be dismissed and/or stayed pending arbitration.  the Complaint violates that agreement." This is a "phantom" defense. Defendant is attempting to reserve a right to arbitrate while simultaneously objecting to the production of the very agreement that would create that right. If Defendant intends to rely on this defense, it has a mandatory obligation to produce the specific contract, not a generic sample.

- **Bad-Faith "Equally Available" Objection:** Defendant's claim that an arbitration agreement is "equally available" to the Plaintiff is a meritless attempt to shift the burden of proof. Since Defendant is the party asserting that an agreement exists which might "dismiss and/or stay" this matter, Defendant bears the sole burden of producing the **Instrument** it intends to use as a shield.

- **Abuse of Rule 34 (The "Sample Agreement" Violation):** Defendant points to **PRA_JENKINS_000067–000075**, which consists of **generic samples** and "templates" of Cardmember Agreements. A "sample" is not a contract and does not prove the existence of an agreement between these specific parties. If the "sample" provided is not the actual version PRA possessed **prior to April 7, 2024**, then the response is non-responsive.

- **Frivolous "Unlimited in Time" Objection:** This objection is nonsensical. The request is naturally limited to the lifespan of the alleged account. Objecting to the timeframe of a contract that Defendant itself has raised as a potential bar to this litigation is a transparent stall tactic.

**Cure Required:**

- Immediately withdraw the "equally available" and "unlimited in time" objections.

- **Produce the actual, specific Credit Card Agreement** (not a "sample" or "template") that PRA contends contains the arbitration clause referenced in its **Sixth Affirmative Defense**.

- **Clarify the Nature of Possession:** Defendant must state under oath whether it possessed the **specific agreement** produced in **PRA_JENKINS_000067–000075** prior to the April 7, 2024 Inquiry, or if that document was acquired/generated *after* the Plaintiff filed this lawsuit.

- **Provide a Sworn Statement of Non-Existence:** If Defendant does not possess a contract or arbitration agreement that specifically identifies the Plaintiff or the alleged account, it must provide a **written, sworn statement** stating that its Sixth Affirmative Defense is based solely on a "possibility" and not on any document in its physical or electronic possession.

- **Advisory Note:** Defendant is advised that asserting a defense based on an agreement it cannot produce—while relying on "generic samples"—constitutes a formal admission that Defendant lacked the legal authority to enforce any "arbitration" defense and lacked a "permissible purpose" to access the Plaintiff's credit report.

- Provide a **Supplemental Response** stating that the production of all arbitration agreements contended to apply to the Plaintiff is now complete.

### **Request for Production No. 19**

### **Request:**

All documents PRA contends contradict Plaintiff's claimed damages.

**Response:**

**OBJECTION:** PRA objects to this Request as premature and to the extent it seeks to impose obligations beyond those contained in the Federal Rules of Civil Procedure. PRA objects to this Request as premature as discovery is ongoing and Plaintiff has not produced any evidence of any alleged or claimed damages.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA identifies the following documents which may be identified by Bates numbers: PRA_JENKINS_000001 000075.

**Deficiency:**

- **Bad-Faith "Premature" Objection:** Defendant's claim that this request is "premature" because "Plaintiff has not produced any evidence" is a violation of **Rule 26** and **Rule 34**. Discovery is a simultaneous exchange; it is not a sequential process where the Defendant waits for the Plaintiff to finish before revealing its rebuttal evidence. Defendant has a mandatory duty to produce any documents it *contends* contradict the Plaintiff's claims.

- **Failure to Address Specific Pled Harms:** The Complaint explicitly alleges concrete harms including **embarrassment, humiliation, and anxiety** , as well as **loss of time and productivity**. Defendant's refusal to produce evidence contradicting these specific harms suggests it either has no rebuttal evidence or is willfully withholding it to gain a tactical advantage at trial.

- **Abuse of Rule 34 (The "Generic Dump" Violation):** Pointing to **PRA_JENKINS_000001–000075** is non-responsive. These generic templates and unverified account statements do nothing to contradict claims of emotional distress, loss of sleep, or the invasion of privacy caused by an unauthorized credit pull.

- **Direct Obstruction of the "No Harm" Defense:** If Defendant intends to argue that the April 7, 2024 Inquiry caused "no harm" because it was a "soft pull," it must produce the internal policies, assessments, or industry data it intends to rely on for that argument.

**Cure Required:**

- Immediately withdraw the "premature" and "beyond the FRCP" objections.

- **Identify and Produce** any specific records Defendant intends to use to contradict the Plaintiff's claims of **emotional distress (anxiety, humiliation, frustration)** and **loss of time/productivity**.

- **Produce any "Investigation Files" or "Social Media Monitoring"** Defendant has conducted or reviewed in an attempt to undermine the Plaintiff's claims of distress or loss of peace of mind.

- **Provide a Sworn Statement of Non-Existence:** If Defendant currently possesses **zero** documents that specifically contradict the Plaintiff's claimed damages, it must provide a **written, sworn statement** to that effect.

- **Advisory Note:** Defendant is advised that "standing on objections" of prematurity while discovery is active is a violation of the duty to respond in good faith. Any documents not produced in response to this request will be the subject of a **Motion in Limine** to preclude their use at trial or in support of any motion regarding the issue of damages.

- Provide a **Supplemental Response** stating that the production of all documents intended to contradict Plaintiff's damages is now complete.

===============================================================

## C.  REQUESTS FOR ADMISSION

**<u>Request for Admission No. 1</u>**

**<u>Request:</u>**

<u>Admit you acquired the Plaintiff's Transunion consumer report on April 7, 2024.</u>

**Response:**

**OBJECTION:** PRA objects to this Request including use of the term "acquired" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, after reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Denial for "Lack of Knowledge":** Defendant's claim that it is "without knowledge or information sufficient to admit or deny" after a "reasonable investigation" is a demonstrably false statement of fact. In its responses to RFPs No. 6 and 9, Defendant pointed to PRA_JENKINS_000001–000075 as the documents it reviewed *prior* to the April 7, 2024 Inquiry. Defendant cannot produce records it claims were part of a pre-inquiry "review" and simultaneously claim it does not know if the inquiry actually occurred.

- **Semantic Obstruction of FCRA Terms:** Objecting to the term "acquired" and "consumer report" as "legal conclusions" is an attempt to bypass the plain language of the Fair Credit Reporting Act. These are foundational, defined terms under **15 U.S.C. § 1681a**, and their use in an RFA is not a "conclusion" but a request to admit a specific event in the discovery record.

- **Procedural Failure under FRCP 36(a)(4):** A party may not give lack of information as a reason for failure to admit or deny unless it states that it has made a "reasonable inquiry" and that the information it knows or can readily obtain is insufficient.

- **Evasive "Information" vs. "Instruments" Tactics:** By denying this RFA, Defendant is attempting to distance itself from the **Information** it produced (the 75 pages of account statements) to avoid admitting that those statements were the only basis for the credit pull. If Defendant possessed those statements, it possessed the knowledge to admit the inquiry occurred.

- **Contradiction of Business Records:** Defendant's claim that it is "without knowledge or information sufficient to admit or deny" is factually impossible. Defendant has already produced 75 pages of internal account notes (PRA_JENKINS_000001-000075) which document the history of this specific account.

- **Inconsistent with the Complaint:** The Complaint specifically identifies the date and source of the inquiry as April 7, 2024, from TransUnion. Defendant's denial serves no purpose other than to delay the litigation of a threshold fact.

- **The "Inquiry" Metadata:** The April 7, 2024 inquiry is a matter of record on Plaintiff's TransUnion report, and the data regarding that pull (timestamp, subscriber ID, and purpose code) exists within Defendant's own "System Logic" or third-party vendor logs. Claiming a lack of knowledge regarding an action Defendant performed is an evasive non-response under Rule 37(a)(4).

**Cure Required:**

- Immediately withdraw the "legal conclusion," "argumentative," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant acquired the Plaintiff's TransUnion consumer report on April 7, 2024.

- **Identify the Inquiry Metadata:** If Defendant persists in its denial, it must produce the **Subscriber Log** and **System Audit Trail** for April 7, 2024, showing all automated or manual credit inquiries initiated by PRA on that date.

- **Reconcile the Production:** If Defendant maintains it lacks "sufficient knowledge" to admit the pull, it must provide a verified statement explaining how it was able to identify and produce **PRA_JENKINS_000001–000075** as responsive to this specific account while simultaneously claiming it cannot confirm the credit inquiry associated with that same account.

- **Rule 36(a)(4) Certification:** If Defendant continues to claim lack of information, it must provide a detailed description of the "reasonable inquiry" performed, including the specific databases searched and the names of the individuals consulted.

- **Advisory Note:** Defendant is advised that under **Rule 37(c)**, if a party fails to admit what is later proven to be true—especially when the evidence is already in the party's possession (the 75-page production)—the court may order payment of reasonable expenses, including attorney's fees, incurred in making that proof.

**Request for Admission No. 2**

**Request:**

Admit that PRA caused the April 7, 2024 Inquiry to occur.

**Response:**

**OBJECTION:** PRA objects to this Request including use of the term "caused" as vague, ambiguous, as calling for a legal conclusion, and as argumentative. PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "caused," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Semantic Objections of Foundational Terms:** Defendant's claim that the word "caused" is vague or a legal conclusion is a transparent stall tactic designed to avoid admitting a basic factual event. In the context of the FCRA, "causing" a report to be procured is a core factual element, and a sophisticated debt buyer surely understands how its own systems initiate inquiries with Credit Reporting Agencies.

- **Contradiction of Affirmative Defenses:** In its Seventh Affirmative Defense, Defendant asserts that the information it communicated regarding Plaintiff was "true". It is legally

inconsistent to assert the "truth" of an action as a defense while simultaneously claiming the word "caused"—referring to that very action—is too "vague" to admit or deny.

- **Bad-Faith Denial for "Lack of Knowledge":** Defendant's claim that it is "without knowledge or information sufficient to admit or deny" is a demonstrably false statement of fact. In its responses to **RFPs No. 6 and 9**, Defendant pointed to **PRA_JENKINS_000001–000075** as the documents it reviewed prior to the April 7, 2024 Inquiry. Defendant cannot produce records it claims were part of a pre-inquiry "review" and simultaneously claim it does not know if it "caused" the inquiry to occur.

- **Procedural Failure under FRCP 36(a)(4):** Defendant issued a denial based on a purported lack of "knowledge or information" without stating that it conducted a **reasonable inquiry**. Because the metadata of the inquiry (including the Subscriber ID and Timestamp) resides within Defendant's own "System Logic" or third-party vendor logs, the information is readily obtainable. Claiming a lack of knowledge regarding an action Defendant performed is an evasive non-response under **Rule 37(a)(4)**.

- **Evasive "Subject To" Formatting:** By providing a "subject to" response that objects to the terminology while issuing a flat denial, Defendant has created an ambiguous record that prevents the narrowing of issues for trial, which is the primary purpose of **Rule 36**.

**Cure Required:**

- Withdraw the "vague," "ambiguous," "legal conclusion," "subject to," and "lack of knowledge" objections.

- Provide a definitive **Admission** or **Denial** regarding the act of initiating the pull.

- If Defendant maintains its denial, it must identify the specific third-party entity (if any) it contends "caused" the inquiry if it was not PRA itself.

- **Reconcile the Seventh Affirmative Defense:** If Defendant persists in its "vague" objection, it must explain how it can verify the "truth" of a communication (Seventh Affirmative Defense) while simultaneously claiming it does not understand the "cause" of that communication.

- **Identify the Initiation Mechanism:** Defendant must state under oath whether the inquiry was initiated by an automated system or a manual entry by a PRA employee.

- **Rule 36(a)(4) Certification:** If Defendant continues to claim lack of information, it must provide a detailed description of the "reasonable inquiry" performed, including the specific databases searched.

- **Advisory Note:** Defendant is advised that under **Rule 37(c)**, if a party fails to admit what is later proven to be true—especially when the evidence is already in the party's

possession (the 75-page production)—the court may order payment of reasonable expenses, including attorney's fees.

**Request for Admission No. 3**

**Request:**

Admit that the April 7, 2024 Inquiry was made using PRA's subscriber account.

**Response:**

**OBJECTION:** PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the phrase "subscriber account" in the Request, which is undefined. PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The process by which PRA allegedly accessed Plaintiff's credit report are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving the foregoing objections, after reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Denial for "Lack of Knowledge":** Defendant's claim that it is "without knowledge" regarding its own subscriber account is a demonstrably false statement of fact. In its responses to **RFPs No. 14, 15, and 16**, Defendant acknowledged the existence of "contracts or service agreements" with the major credit reporting agencies. It is legally impossible for a sophisticated debt buyer to have "reasonable investigation" procedures that fail to identify its own billing and access accounts.

- **Semantic Obstruction of Industry Terms:** Defendant's claim that "subscriber account" is vague or undefined is a bad-faith denial of industry reality. As a sophisticated financial entity that pulls thousands of credit reports, Defendant is well-aware that a "subscriber account" is the mandatory contractual vehicle required by Credit Reporting Agencies (CRAs) like TransUnion to facilitate access to consumer data.

- **Contradiction of Asserted Defenses:** Defendant's relevance objection is legally meritless. In its Seventh Affirmative Defense, Defendant asserts that the information it communicated was "true," and its Eighth Affirmative Defense challenges Plaintiff's

standing under the FCRA. The "process" by which the report was accessed—specifically the subscriber ID used—is the primary evidence required to verify if the Defendant was the actual party that initiated the pull and what "permissible purpose" it certified to the CRA at that moment.

- **Procedural Failure under FRCP 36(a)(4):** Defendant's claim that it is "without knowledge or information sufficient to admit or deny" is factually disingenuous. The subscriber account used to pull a consumer's credit is a data point residing within Defendant's own internal audit trails, account logs, or its monthly billing statements from TransUnion. Under **Rule 36**, a party must perform a **reasonable inquiry** of its own records before claiming it cannot answer.

- **Improper Relevance Shield:** Defendant cannot unilaterally decide that the "process" of a credit pull is irrelevant when the FCRA specifically mandates "reasonable procedures" to ensure reports are obtained for a permissible purpose under 15 U.S.C. § 1681e(a).

- **Evasive "Subject To" Formatting:** By issuing a "subject to" response that objects while issuing a denial, Defendant has created an ambiguous record that prevents the narrowing of issues for trial.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," "relevance," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that the April 7, 2024 Inquiry was made using a PRA subscriber account.

- **Reconcile with Affirmative Defenses:** If Defendant continues to deny knowledge of the account used, it must provide a verified explanation as to how it can certify the "truth" of the communication (**Seventh Affirmative Defense**) or challenge the Plaintiff's standing (**Eighth Affirmative Defense**) without identifying the specific contractual channel through which it accessed the Plaintiff's data.

- **Perform and Document a Rule 36(a)(4) Inquiry:** If Defendant persists in its "lack of knowledge" claim, it must provide a **sworn certification** detailing the "reasonable inquiry" performed, including:

  1. The specific review of billing statements from TransUnion for April 2024.

  2. A search of the contracts and service agreements identified in **RFPs 14, 15, and 16**.

  3. The names and titles of the personnel who searched Defendant's "System Logic" or internal logs for the April 7, 2024 inquiry metadata.

- **Advisory Note:** Defendant is advised that "standing on objections" of vagueness regarding its own billing accounts—especially while asserting "truth" as a defense—constitutes an act of bad faith. Failure to cure this response will result in a request for the Court to deem the matter **admitted** pursuant to **Rule 36(a)(6)**.

## Request for Admission No. 4

**Request:**

Admit that PRA gave Transunion a reason for the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to this Requests as vague and ambiguous, particularly, with respect to its use of the term "reason" in the Request, which is undefined. PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA allegedly gave TransUnion a "reason" to allegedly access Plaintiff's credit report is not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "caused," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Facial Failure of "Reasonable Inquiry" (The Copy-Paste Blunder):** Defendant's response is a facial violation of **FRCP 36(a)(4)**. Defendant states its denial is "based on the vague and ambiguous nature of the term **'caused'**," yet the word "caused" appears nowhere in this Request. This blatant copy-paste error from the previous RFA response proves that Defendant did not perform a "reasonable inquiry" into the specific facts of RFA No. 4 and is merely issuing boilerplate obstructions to avoid discovery.

- **Semantic Obstruction of "Reason":** Defendant's claim that the word "reason" is vague or undefined is a bad-faith denial of industry reality. In the context of the FCRA, "reason" is synonymous with the **"Permissible Purpose"** or **"Purpose Code"** that a subscriber is *required* to certify to a CRA before receiving a report. Defendant, a sophisticated debt buyer, knows exactly what a "reason" for an inquiry is.

- **Contradiction of Asserted Defenses:** In its **Seventh Affirmative Defense**, Defendant asserts that the information it communicated regarding Plaintiff was "true". Defendant

cannot logically or legally verify the "truth" of a communication while simultaneously claiming it does not know if—or why—it gave a "reason" to TransUnion to initiate that very communication.

- **Legal Fallacy Regarding "Relevance":** Defendant's claim that the "reason" given to TransUnion is irrelevant is a rejection of 15 U.S.C. § 1681b. The "reason" (Purpose Code) provided at the moment of the pull is the primary evidence of whether Defendant had a "permissible purpose" or if it misrepresented its intent to the CRA to bypass privacy protections.

- **Evasive "Subject To" Formatting:** By providing a "subject to" response that objects to the terminology while issuing a denial based on a word not found in the request ("caused"), Defendant has created an ambiguous and frivolous record that prevents the narrowing of issues for trial.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "relevance," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that PRA provided a reason (Purpose Code) to TransUnion for the April 7, 2024 Inquiry.

- **Identify the Specific "Reason":** Defendant must state under oath the specific "Permissible Purpose" or "Reason Code" it certified to TransUnion to facilitate the April 7, 2024 Inquiry.

- **Address the Procedural Failure:** Defendant must provide a verified explanation as to why it denied the request based on the word "caused" (which was not in the request) and certify that a *new*, actual investigation has been conducted for RFA No. 4.

- **Reconcile the Seventh Affirmative Defense:** If Defendant continues to deny knowledge of the "reason" given, it must explain how it can verify the "truth" of the communication (**Seventh Affirmative Defense**) if it does not know the stated purpose of the inquiry that generated the communication.

- **Advisory Note:** Defendant is advised that "standing on objections" of vagueness while issuing a non-responsive denial based on a different request's terminology is a violation of the duty to respond in good faith. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted.

<u>**Request for Admission No. 5**</u>

<u>**Request:**</u>

<u>Admit that you did not have the written instructions of the Plaintiff to acquire his consumer report.</u>

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the phrase "written instructions" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to this Request including use of the term "acquired" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "written instructions," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Denial for "Lack of Knowledge" (The "Information" vs. "Instruments" Trap):** Defendant's claim that it lacks sufficient knowledge to admit the absence of "written instructions" is a demonstrably false statement of fact. Defendant has already produced **PRA_JENKINS_000001–000075**, which it identifies as the records it reviewed prior to the inquiry. If a signed consent form or "written instruction" from the Plaintiff is not within those 75 pages of **Information**, Defendant has the knowledge to admit its absence.

- **Semantic Obstruction of Statutory Language:** Objecting to the phrase "written instructions" as "vague" or "undefined" is a bad-faith denial of the FCRA's plain language. **15 U.S.C. § 1681b(a)(2)** specifically identifies "written instructions of the consumer" as a distinct permissible purpose. Defendant, a sophisticated entity, cannot claim ignorance of the very statutory terms that govern its access to credit data.

- **Contradiction of Affirmative Defenses:** Defendant's **Sixth Affirmative Defense** (Arbitration) and **Seventh Affirmative Defense** (Truth) imply the existence of an underlying agreement or a factual basis for its actions. It is legally inconsistent to rely on the "truth" of its records while simultaneously claiming it cannot determine if those records contain a simple written consent from the Plaintiff.

- **Frivolous "Unlimited in Time" Objection:** This objection is nonsensical. The request is naturally limited to the period prior to the April 7, 2024 Inquiry. Objecting to the timeframe of a consent document that Defendant should have possessed *before* the pull is a transparent stall tactic.

- **Procedural Failure under FRCP 36(a)(4):** A party must perform a "reasonable inquiry" before claiming lack of knowledge. Since Defendant has already "identified" its entire account file in its RFP responses, it is factually impossible for it to lack the knowledge required to admit that a specific document (written instruction) is not in that file.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "overly broad," "unlimited in time," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant did not have the written instructions of the Plaintiff to acquire his consumer report.

- **Identify the Document in Production:** If Defendant denies this request, it must identify by Bates number where in **PRA_JENKINS_000001–000075** a "written instruction" from the Plaintiff exists. If it does not exist in the production, the denial is a violation of **Rule 37(a)(4)**.

- **Reconcile with Affirmative Defenses:** Defendant must state under oath how it can assert the "truth" of its communications (**Seventh Affirmative Defense**) if it cannot even verify the foundational legal authority (consent) for the credit pull that generated those communications.

- **Advisory Note:** Defendant is advised that "standing on objections" of vagueness regarding a specific statutory term (15 U.S.C. § 1681b(a)(2)) is an admission of reckless disregard for the law. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted.

## Request for Admission No. 6

**Request:**

Admit the Plaintiff did not give his written consent to you authorizing the credit pull.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the phrase "written consent" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "authorizing" and of the phrase "credit pull" as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "written consent," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Denial for "Lack of Knowledge" (The "Information" vs. "Instruments" Trap):** Defendant's claim that it lacks sufficient knowledge to admit the absence of "written consent" is a demonstrably false statement of fact. Defendant has already identified and produced its entire account file in **PRA_JENKINS_000001–000075**. If a signed consent form is not present within those 75 pages of **Information**, Defendant has the requisite knowledge to admit its absence.

- **Semantic Obstruction of Statutory Concepts:** Objecting to the phrase "written consent" and "authorizing" as "legal conclusions" is a frivolous attempt to avoid admitting a factual absence. These terms are central to the FCRA's framework for "permissible purpose". Whether a physical or electronic document exists where the Plaintiff grants authority is a question of fact, not a legal theory.

- **Contradiction of Asserted Defenses (The Sixth and Seventh Affirmative Defenses):** Defendant relies on the "truth" of its communications (Seventh Affirmative Defense) and the potential existence of an arbitration agreement (Sixth Affirmative Defense). It is a bad-faith contradiction to assert defenses based on the validity of an underlying obligation while simultaneously claiming it cannot determine if the consumer ever consented to a credit pull related to that obligation.

- **Frivolous "Unlimited in Time" Objection:** This objection is nonsensical and intended only for delay. The request is naturally limited to the timeframe prior to the April 7, 2024 Inquiry. If Defendant does not have a consent form dated on or before April 7, 2024, it must admit the request.

- **Procedural Failure under FRCP 36(a)(4):** A party may not plead "lack of information" unless it states that it has made a "reasonable inquiry". Since Defendant has already searched its records to produce **PRA_JENKINS_000001–000075**, its claim of insufficient knowledge is factually disingenuous and an evasive non-response under **Rule 37(a)(4)**.

- **Evasive "Subject To" Formatting:** By issuing a "subject to" response that objects to the terminology while issuing a flat denial, Defendant has created an ambiguous record that fails to narrow the issues for trial.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," "unlimited in time," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that the Plaintiff did not give his written consent to PRA authorizing the April 7, 2024 credit pull.

- **Identify the Document in Production:** If Defendant denies this request, it must identify by Bates number where in **PRA_JENKINS_000001–000075** any "written consent" from the Plaintiff exists.

- **Reconcile with Affirmative Defenses:** Defendant must explain how it can verify the "truth" of its actions (**Seventh Affirmative Defense**) if it cannot even verify if it had the Plaintiff's consent to access the very data upon which those actions are based.

- **Advisory Note:** Defendant is advised that "standing on objections" regarding the presence or absence of a foundational legal document—while having already produced the purported account file—constitutes a willful obstruction of the truth. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted.

## Request for Admission No. 7

### Request:

Admit you never obtained a verbal authorization from the Plaintiff to pull his consumer report.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to this Request as vague and ambiguous, particularly, with respect to its use of the term "pull" in the Request, which is undefined. PRA objects to the phrase "verbal authorization" as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the terms "authorization" and "consumer report" as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, PRA admits that it did not obtain oral or verbal authorization from Plaintiff to access his credit information. PRA denies the remainder of this Request.

**Deficiency:**

- **Logically Incoherent "Half-Admission":** Defendant's response is a masterpiece of evasion. Defendant "admits" it did not obtain verbal authorization but then "denies the remainder of this Request". Since the request asks to admit that Defendant **never** obtained such authorization, a denial of the "remainder" (the word "never") is a functional claim that Defendant *did* obtain verbal authorization at some point. Defendant cannot admit it didn't get authorization and simultaneously deny that it "never" got it without creating a bad-faith contradiction.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications were "true". If Defendant is denying that it "never" obtained verbal authorization, it is asserting as a "truth" that a verbal

authorization exists. However, no such authorization, call recording, or telephonic log exists in the 75-page production (**PRA_JENKINS_000001–000075**).

- **Semantic Obstruction of "Pull" and "Consumer Report":** Defendant objects to these terms as "vague" or "legal conclusions" while simultaneously using the phrase "access his credit information" in its admission. This is a distinction without a difference. Under the FCRA, "accessing credit information" is the act of "pulling a consumer report". Using different terminology to qualify an admission is an evasive tactic designed to avoid the statutory definitions of **15 U.S.C. § 1681a**.

- **Procedural Failure under Rule 36(a)(4):** When a party admits part of a request, it must "specify so much of it as is true and qualify or deny the rest". By denying "the remainder" without specifying what fact—other than the word "never"—it is contesting, Defendant has failed to meet the substance of the request.

- **Frivolous "Unlimited in Time" Objection:** As with previous requests, this objection is meritless. The request is naturally limited to the period leading up to the April 7, 2024 Inquiry.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," "unlimited in time," and "denies the remainder" objections.

- **Provide an Unqualified Admission** that PRA never obtained verbal authorization from the Plaintiff to pull his consumer report.

- **Reconcile the Logical Contradiction:** If Defendant persists in denying "the remainder," it must state under oath the **specific date and time** it contends a verbal authorization was obtained and identify the recording or call log within its production that supports this claim.

- **Clarify the Seventh Affirmative Defense:** Defendant must state whether the "truth" it asserts in its Seventh Affirmative Defense includes the existence of a verbal authorization that it has otherwise admitted it does not have.

- **Advisory Note:** Defendant is advised that providing a "yes-but-no" response to a foundational fact of consent is an act of bad faith. If this contradiction is not cured, Plaintiff will move for an order deeming the entire matter **admitted** and seek sanctions for the necessity of proving a fact that Defendant has already admitted in part.

## Request for Admission No. 8

**Request:**

Admit that Plaintiff did not fill out an application for credit with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "credit" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA states that, despite a reasonable inquiry, it lacks information or knowledge sufficient to form a belief as to the truth or falsity of the Request and, therefore, denies this Request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Semantic Obstruction of "Credit":** Objecting to "credit" as a "legal conclusion" is a frivolous attempt to avoid admitting a factual absence of a statutory term defined under 15 U.S.C. § 1681a(r).

- **Concession of Standing as a Debt Buyer:** Defendant has produced a **Bill of Sale** within its production of **PRA_JENKINS_000001–000075**. Regardless of whether that specific document successfully transfers the Plaintiff's debt, the act of relying on a Bill of Sale constitutes a **concession of corporate identity**. By producing this document, Defendant is affirmatively stating that its business model regarding this account is that of a **debt buyer**, not an **original creditor**.

- **Factual and Logical Impossibility:** It is a bad-faith lie to claim a "lack of knowledge" as to whether a consumer applied for credit with a firm that identifies itself as a third-party purchaser. Defendant knows with 100% certainty that it is not in the business of originating credit applications. Therefore, if Defendant is a debt buyer (as its own evidence proves), it has the immediate and definitive knowledge required to admit that the Plaintiff never filled out a credit application with PRA.

- **Willful Obstruction of Rule 36:** The purpose of **Rule 36** is to narrow issues that are not in dispute. By pretending it might be an original creditor just to avoid an admission— while simultaneously holding a Bill of Sale that says the opposite—Defendant is creating a "sham" record to force the Plaintiff to prove a fact that Defendant already knows to be true.

- **Contradiction of the Seventh Affirmative Defense:** In its **Seventh Affirmative Defense**, Defendant asserts that its communications were "true". If Defendant is truly "ignorant" of whether it originated the account or bought it (as its "lack of knowledge" implies), then it has no factual basis to assert that any information it communicated regarding the debt was "true".

- **Procedural Fraud under Rule 36(a)(4):** A "reasonable inquiry" into Defendant's own business records (the Bill of Sale) and its own corporate status yields an immediate and unavoidable answer. This response is an evasive non-response under **Rule 37(a)(4)**.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that the Plaintiff did not fill out an application for credit with PRA.

- **Reconcile with the Bill of Sale:** Defendant must state under oath how it can rely on a **Bill of Sale** to establish its right to collect—or its "permissible purpose" to pull credit— while simultaneously claiming it does not know if it is the original creditor with whom the Plaintiff would have applied for credit.

- **Clarify the Seventh Affirmative Defense:** Defendant must state whether its "Truth" defense is based on its status as an original creditor or a debt buyer.

- **Identify the Document in Production:** If Defendant denies this request, it must identify by Bates number where in **PRA_JENKINS_000001–000075** any credit application from the Plaintiff exists.

- **Advisory Note:** Defendant is advised that "standing on objections" of lack of knowledge while its own evidence (the Bill of Sale) negates the possibility of an original application is an act of **frivolous litigation**. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted and a request for sanctions for the bad-faith use of boilerplate denials.

## <u>Request for Admission No. 9</u>

<u>**Request:**</u>

<u>Admit that you did not offer credit to Plaintiff.</u>

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the term "offer" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to Plaintiff's definition of the term "credit" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "offer," PRA is without knowledge or information sufficient to

admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Concession of Standing as a Debt Buyer (The Identity Hammer):** Just as with RFA No. 8, Defendant has produced a **Bill of Sale** within **PRA_JENKINS_000001–000075**. By relying on a Bill of Sale, Defendant has affirmatively conceded that its relationship to this account is that of a **purchaser**, not an **originator**.

- **Factual and Logical Impossibility:** It is a bad-faith obstruction to claim a "lack of knowledge" as to whether Defendant "offered" credit to the Plaintiff. Defendant knows its own business model; it is a debt buyer that acquires existing obligations. It is not a lending institution. Therefore, Defendant knows with 100% certainty that it never made an "offer" of credit to the Plaintiff, making its claim of "insufficient knowledge" a demonstrably false statement of fact.

- **Semantic Obstruction of Foundational Terms:** Objecting to the term "offer" as "vague" and "credit" as a "legal conclusion" is a frivolous attempt to bypass the plain language of the Fair Credit Reporting Act. "Credit" is a foundational, defined term under **15 U.S.C. § 1681a(r)**, and "offer" is a basic factual event.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts in its **Seventh Affirmative Defense** that its communications regarding the Plaintiff were "true". If Defendant is truly "ignorant" of whether it offered credit to the Plaintiff (as its denial suggests), it cannot possibly certify the "truth" of the resulting debt or its right to pull a credit report based on that debt.

- **Procedural Fraud under Rule 36(a)(4):** A "reasonable inquiry" of Defendant's own corporate records and its own production of a Bill of Sale would yield an immediate admission. Claiming a lack of knowledge regarding its own primary business functions is an evasive non-response under **Rule 37(a)(4)**.

- **Frivolous "Unlimited in Time" Objection:** The request is naturally limited to the timeframe of the alleged account and the April 7, 2024 Inquiry. Using this as a shield to avoid admitting a lack of an original credit offer is a transparent stall tactic.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," "unlimited in time," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant did not offer credit to the Plaintiff.

- **Reconcile with the Bill of Sale:** Defendant must state under oath how it can rely on a **Bill of Sale** (which identifies it as a purchaser) while simultaneously claiming it does not know if it is a creditor that "offered" credit to the Plaintiff.

- **Clarify the Seventh Affirmative Defense:** Defendant must explain how it can assert the "truth" of the debt if it lacks the basic knowledge of how the debt was originated or whether it had a direct lending relationship with the Plaintiff.

- **Advisory Note:** Defendant is advised that "standing on objections" regarding its own identity and business actions—especially while in possession of evidence proving it is a third-party buyer—is a violation of the duty to respond in good faith. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

**Request for Admission No. 10**

**Request:**

Admit that Plaintiff did not fill out an application for employment purposes with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the phrase "employment purposes" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA admits that Plaintiff did not fill out an application for employment purposes with PRA. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Qualification ("Information and Belief"):** Defendant's use of "upon information and belief" to qualify an admission is a procedural violation of **Rule 36**. An admission must be straightforward. Since Defendant is the only party that would have its own employment records, it has absolute knowledge of whether the Plaintiff applied for a job. Hedging an admission with "information and belief" is an attempt to avoid a binding judicial admission.

- **Semantic Obstruction of Statutory Terms:** Objecting to the phrase "employment purposes" as a "legal conclusion" or "vague" is a bad-faith denial of the FCRA's plain language. **15 U.S.C. § 1681b(a)(3)(B)** explicitly defines "employment purposes" as a specific category of permissible purpose. Defendant cannot claim ignorance of the statutory definitions that govern the very credit reports it pulls.

- **Evasive "Subject To" Formatting:** By issuing a "subject to" response that "reserves" objections while providing a qualified admission, Defendant has created an ambiguous record. This prevents the narrowing of issues for trial—the core mandate of **Rule 36**—by leaving the door open for Defendant to "amend" or "supplement" its answer based on its own self-created vagueness.

- **Frivolous "Unlimited in Time" Objection:** This objection is nonsensical. Whether the Plaintiff *ever* applied for a job with PRA is a binary fact. If he didn't, he didn't. Claiming this is "unduly burdensome" because it isn't limited in time is a transparent attempt to obstruct a simple factual admission.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Plaintiff did not fill out an application for employment purposes with PRA.

- **Remove the "Information and Belief" Hedge:** Defendant must provide a definitive admission based on a search of its own corporate and HR records.

- **Rule 36(a)(6) Certification:** Defendant is advised that if it fails to provide a straightforward, unqualified admission to a fact clearly within its own corporate knowledge, Plaintiff will move the Court to deem the matter **admitted** and seek **sanctions for the bad-faith use of boilerplate denials** and evasive qualifications.

## Request for Admission No. 11

**Request:**

Admit that you did not offer employment to Plaintiff.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the term "offer" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to the term "employment" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA admits that it has not made an offer of employment to Plaintiff. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham Qualification ("Upon Information and Belief"):** Defendant's use of "upon information and belief" to qualify an admission regarding its own internal HR records is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry" before responding. It is a corporate absurdity for a multi-billion dollar entity to claim it only has a "belief"—rather than absolute knowledge—regarding whether it has extended a job offer to a specific individual. This qualification is an attempt to avoid the finality of a judicial admission.

- **Semantic Obstruction of FCRA Categories:** Objecting to the terms "offer" and "employment" as "vague" or "legal conclusions" is a bad-faith denial of the FCRA's structure. "Employment purposes" is a specific, defined category of permissible purpose under **15 U.S.C. § 1681b(a)(3)(B)**. Defendant cannot claim these terms are "undefined" when they form the statutory basis for one of the very reasons a company is allowed to pull a credit report.

- **Frivolous "Unlimited in Time" Objection:** This is a recurring, meritless objection. Whether an offer of employment was made is a binary historical fact. Claiming it is "unduly burdensome" to check an HR database for a single name is a transparent attempt to obstruct discovery.

- **Evasive "Subject To" Formatting:** By "reserving" objections while providing a hedged admission, Defendant is attempting to preserve a "trap door" to later amend its response. This defeats the purpose of **Rule 36**, which is to fix facts for trial so they do not have to be litigated.

- **Contradiction of the Seventh Affirmative Defense (Truth):** If Defendant truly only has "information and belief" (not knowledge) as to its employment relationship with Plaintiff, it has no factual basis to assert the "truth" of its actions as a defense.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Defendant did not make an offer of employment to Plaintiff.

- **Remove the "Information and Belief" Hedge:** Defendant must provide a definitive admission based on a verified search of its corporate records.

- **Reconcile with Seventh Affirmative Defense:** Defendant must state under oath how it can assert the "truth" of its communications if it cannot even provide a straightforward answer regarding its own employment offers.

- **Advisory Note:** Defendant is advised that "standing on objections" and using qualified language for facts within its own exclusive control is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

## Request for Admission No. 12

### Request:

Admit that Plaintiff did not fill out an application for insurance with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the term "application" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA admits that Plaintiff has not completed an application for insurance with PRA. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Factual and Logical Impossibility (The Identity Hammer):** Just as with the previous RFAs, Defendant is hiding behind a corporate identity crisis. PRA is a debt buyer, not an insurance provider. It is a bad-faith obstruction to claim that a multi-billion dollar debt collection entity needs to rely on "information and belief" to determine if it sells insurance policies. Defendant knows with 100% certainty that its business model does not include originating insurance applications.

- **Sham Qualification ("Upon Information and Belief"):** Using "information and belief" to qualify an admission regarding Defendant's own business offerings is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry". It is a corporate absurdity for Defendant to claim it only has a "belief"—rather than absolute knowledge—regarding whether it has an insurance department or has ever received an insurance application from the Plaintiff.

- **Semantic Obstruction of Statutory Categories:** Objecting to the term "application" as a "legal conclusion" is a frivolous attempt to avoid admitting the absence of a "permissible purpose". "Insurance purposes" is a specific, defined category under **15 U.S.C. § 1681b(a)(3)(C)**. Defendant cannot claim this is "vague" when it is one of the limited statutory reasons allowed for pulling a credit report.

- **Contradiction of the Seventh Affirmative Defense (Truth):** If Defendant truly only has a "belief" (not knowledge) as to whether it acts as an insurer, it has no factual basis to

assert that any information it communicated regarding the Plaintiff's "debt" was "true". You cannot certify the "truth" of an account while pretending you don't know the nature of your own business relationship with the consumer.

- **Frivolous "Unlimited in Time" Objection:** Whether the Plaintiff ever applied for insurance with a debt buyer is a binary, historical fact. Claiming this is "unduly burdensome" to check is a transparent attempt to clog the discovery process with boilerplate noise.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Plaintiff did not fill out an application for insurance with PRA.

- **Remove the "Information and Belief" Hedge:** Defendant must provide a definitive admission based on a verified search of its own corporate records.

- **Reconcile with Corporate Identity:** Defendant must state under oath how it can rely on a **Bill of Sale** (conceding it is a debt buyer) while simultaneously claiming it does not know if it is an insurance company.

- **Advisory Note:** Defendant is advised that "standing on objections" and using qualified language for facts within its own exclusive control is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

<u>**Request for Admission No. 13**</u>

<u>**Request:**</u>

<u>Admit that you did not offer insurance to Plaintiff.</u>

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the term "offer" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA admits that it has not offered insurance to Plaintiff. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Factual and Logical Impossibility (The Identity Hammer):** As established in previous RFAs, Defendant is a debt buyer, not an insurance provider. It is a bad-faith obstruction to claim that a sophisticated debt collection entity needs to rely on "information and belief" to determine whether its own business operations include extending offers of insurance. Defendant knows with 100% certainty that it is not in the business of insurance, making this qualified response a demonstrably false hedge.

- **Sham Qualification ("Upon Information and Belief"):** Using "information and belief" to qualify an admission regarding Defendant's own business activities is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry". It is a corporate absurdity for Defendant to claim it only has a "belief"—rather than absolute knowledge—regarding whether it has ever offered insurance to the Plaintiff.

- **Semantic Obstruction of "Offer":** Objecting to the term "offer" as "vague" or a "legal conclusion" is a frivolous attempt to avoid admitting the absence of a "permissible purpose". "Insurance purposes" is a specific category under **15 U.S.C. § 1681b(a)(3)(C)**. Claiming this term is "undefined" when it is a cornerstone of FCRA compliance is an act of bad faith.

- **Contradiction of the Seventh Affirmative Defense (Truth):** If Defendant truly only has a "belief" (not knowledge) as to whether it offered insurance to the Plaintiff, it lacks the factual foundation to assert in its **Seventh Affirmative Defense** that any information it communicated regarding the Plaintiff's "debt" was "true".

- **Frivolous "Unlimited in Time" Objection:** Whether an offer of insurance was made is a binary historical fact. Claiming this is "unduly burdensome" to check is a transparent attempt to clog the discovery process with boilerplate noise.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Defendant did not offer insurance to the Plaintiff.

- **Remove the "Information and Belief" Hedge:** Defendant must provide a definitive admission based on a verified search of its own corporate and sales records.

- **Reconcile with Corporate Identity:** Defendant must state under oath how it can rely on a **Bill of Sale** (conceding it is a third-party debt buyer) while simultaneously claiming it does not know if it functions as an insurance company.

- **Advisory Note:** Defendant is advised that "standing on objections" and using qualified language for facts within its own exclusive control is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

### Request for Admission No. 14

### Request:

Admit that your procurement of Plaintiff's consumer report was not in response to a court order.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to the term "procurement" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA "procured" Plaintiff's "consumer report."

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA is not in possession of a court order that expressly authorized PRA to access Plaintiff's credit information. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham Qualification ("Upon Information and Belief"):** Defendant's use of "upon information and belief" to qualify an admission regarding the existence of a court order is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry." A court order is a specific, formal document. If such an order involving the Plaintiff existed to justify the April 7, 2024 Inquiry, it would be a foundational part of the account records. Claiming to only have a "belief"—rather than absolute knowledge—regarding the absence of such a document in its own files is a bad-faith attempt to avoid a binding admission.

- **Evasive "Not in Possession" Hedge:** By stating it is "not in possession" of a court order, Defendant is providing a "silent denial". The request asks to admit the procurement was not **in response** to a court order. Whether Defendant currently "possesses" the physical paper is irrelevant to the factual question of whether a court order was the legal trigger for the inquiry.

- **Semantic Obstruction of Statutory Categories:** Objecting to the term "procurement" and "consumer report" as "legal conclusions" is a frivolous attempt to avoid admitting the absence of a permissible purpose under **15 U.S.C. § 1681b(a)(1)**. A court order is the most distinct and verifiable "permissible purpose" in the FCRA; claiming the request is "vague" is an act of bad faith.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications were "true". If Defendant lacks the knowledge to provide a straightforward admission regarding its legal authority (or lack thereof) for the inquiry, it has no factual basis to assert that its communications or collection processes were "true."

- **Frivolous "Unlimited in Time" Objection:** The request is naturally limited to the timeframe of the April 7, 2024 Inquiry. Claiming this is "unduly burdensome" to check—when a court order would be the single most important legal document in any account file—is a transparent attempt to clog discovery with noise.

## Cure Required:

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Defendant's procurement of Plaintiff's consumer report was not in response to a court order.

- **Remove the "Possession" and "Belief" Hedges:** Defendant must provide a definitive admission based on a verified search of the account file identified as **PRA_JENKINS_000001–000075**.

- **Reconcile with the Seventh Affirmative Defense:** Defendant must state under oath how it can verify the "truth" of its actions if it cannot even confirm the presence or absence of a court order authorizing those actions.

- **Advisory Note:** Defendant is advised that using qualified language for a fact that would be a matter of record in its own files is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

## Request for Admission No. 15

## Request:

Admit that your procurement of Plaintiff's consumer report was not in response to a federal grand jury subpoena.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to the term "procurement" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA "procured" Plaintiff's "consumer report."

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA is not in possession of a "federal grand jury subpoena" that requested PRA to access Plaintiff's credit information. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham Qualification ("Upon Information and Belief"):** Defendant's use of "upon information and belief" to qualify an admission regarding a federal grand jury subpoena is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry." A federal grand jury subpoena is an extraordinary legal instrument. If such an instrument existed to justify the April 7, 2024 Inquiry, it would be the primary legal document in the account file. Claiming to only have a "belief"—rather than absolute knowledge—regarding the absence of such a critical document in its own records is a bad-faith attempt to avoid a binding judicial admission.

- **Evasive "Not in Possession" Hedge:** By stating it is "not in possession" of a subpoena, Defendant is providing an evasive "silent denial". The request asks to admit the procurement was not **in response** to a subpoena. Whether Defendant currently "possesses" the physical paper today is irrelevant to the factual question of whether a subpoena was the legal trigger for the inquiry on April 7, 2024.

- **Semantic Obstruction of Statutory Categories:** Objecting to the terms "procurement" and "consumer report" as "legal conclusions" is a frivolous attempt to avoid admitting the absence of a permissible purpose under **15 U.S.C. § 1681b(a)(1)**. A grand jury subpoena is a specifically enumerated permissible purpose; claiming the request is "vague" is an act of bad faith designed to obstruct the narrowing of issues.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications and actions were "true". If Defendant lacks the certainty to provide a straightforward admission regarding whether it was acting under the mandate of a federal grand jury, it has no factual basis to assert that its communications or collection processes were "true."

- **Frivolous "Unlimited in Time" Objection:** The request is naturally limited to the timeframe of the April 7, 2024 Inquiry. Claiming it is "unduly burdensome" to check for a

federal subpoena—a document that would trigger strict internal legal handling—is a transparent attempt to clog discovery with boilerplate noise.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Defendant's procurement of Plaintiff's consumer report was not in response to a federal grand jury subpoena.

- **Remove the "Possession" and "Belief" Hedges:** Defendant must provide a definitive admission based on a verified search of its legal department records and the account file identified as **PRA_JENKINS_000001–000075**.

- **Reconcile with the Seventh Affirmative Defense:** Defendant must state under oath how it can verify the "truth" of its actions if it cannot even confirm the presence or absence of a federal subpoena authorizing those actions.

- **Advisory Note:** Defendant is advised that using qualified language for a fact that would be a matter of high-priority record in its own legal files is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

### Request for Admission No. 16

**Request:**

Admit that your procurement of Plaintiff's consumer report was not for determining Plaintiff's eligibility for a government-issued license.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to the term "procurement" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to the term "eligibility" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to the phrase "government-issued" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA "procured" Plaintiff's "consumer report."

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA has not "determine[ed] Plaintiff's eligibility for a government-issued license." Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Willful Obstruction of Business Record Knowledge:** Defendant's claim that it "lacks knowledge" or relies on "information and belief" is a bad-faith denial. Every time a subscriber like PRA "procures" a consumer report, it **must** certify a specific permissible purpose to the CRA (e.g., Experian, Equifax, TransUnion) to gain access. Defendant knows with 100% certainty the specific purpose it certified on April 7, 2024. Claiming it only has a "belief" about its own electronic certification is a demonstrably false statement of fact.

- **Semantic Obstruction of Statutory Permissible Purposes:** Objecting to the terms "eligibility" and "government-issued license" as "vague" is a frivolous attempt to avoid admitting that Defendant did **not** use the specific permissible purpose found in **15 U.S.C. § 1681b(a)(3)(D)**. These terms are not "undefined"—they are the exact language of the statute Defendant is required to follow.

- **Factual Impossibility (The Debt Buyer Concession):** Defendant has produced a **Bill of Sale** in this action. By identifying itself as a debt buyer, it has conceded that its "purpose" for accessing credit data is related to debt collection, not government licensing. It is a logical impossibility for Defendant to "reasonably inquire" into its own records and not find that it is a private collection entity with no government licensing function.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications were "true". If Defendant lacks the knowledge to provide a straightforward admission regarding the *reason* it accessed the Plaintiff's private data, it has no factual basis to assert the "truth" of any part of its collection process.

- **Evasive "Subject To" Formatting:** By "reserving" objections while providing a hedged admission, Defendant is attempting to leave a "trap door" to later change its story. This defeats the purpose of **Rule 36**, which is to fix facts for trial.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant's procurement of Plaintiff's consumer report was not for determining Plaintiff's eligibility for a government-issued license.

- **Identify the CRA Certification:** If Defendant denies this request, it must state under oath the **specific permissible purpose code** it provided to the CRA to procure the April 7, 2024 report.

- **Reconcile with the Bill of Sale:** Defendant must explain how its status as a third-party debt buyer (as shown in its own production) could possibly involve government licensing eligibility.

- **Advisory Note:** Defendant is advised that "playing cute" with statutory terms and its own CRA certifications is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

### Request for Admission No. 17

### Request:

Admit that your procurement of Plaintiff's consumer report was not for determining Plaintiff's eligibility for any other government-issued benefit.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to the term "procurement" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and argumentative. PRA objects to the term "eligibility" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to the phrase "government-issued" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA "procured" Plaintiff's "consumer report."

**RESPONSE:** Reserving and not waiving its foregoing objections, upon information and belief, PRA has not "determine[ed] Plaintiff's eligibility for any other government-issued license." Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Non-Responsive and Evasive (The "Copy-Paste" Failure):** Defendant's response is a textbook "evasive answer" under **Rule 37(a)(4).** The Request asks to admit that the procurement was not for determining eligibility for a government-issued **benefit.** Defendant's response instead addresses a government-issued **license.** By answering a

question that was not asked (and likely copy-pasting its response from RFA No. 16), Defendant has failed to respond to the substance of the Request.

- **Willful Obstruction of Business Record Knowledge:** As with RFA No. 16, Defendant knows with 100% certainty the **Permissible Purpose code** it certified to the CRA on April 7, 2024. It is a bad-faith denial to claim a "lack of knowledge" or "belief" regarding its own electronic certification. Defendant knows it did not certify "government-issued benefit" to the CRA.

- **Sham Qualification ("Upon Information and Belief"):** Using "information and belief" to qualify an admission regarding Defendant's own business operations and its specific interaction with a CRA is a procedural sham. Under **Rule 36**, a party must perform a "reasonable inquiry." A multi-billion dollar corporation knows its own identity and the reasons it accesses consumer data.

- **Semantic Obstruction of Statutory Language:** Objecting to the terms "eligibility" and "government-issued benefit" as "vague" is a frivolous attempt to avoid admitting the absence of the permissible purpose found in **15 U.S.C. § 1681b(a)(3)(D)**. These are not "undefined" terms; they are the exact statutory categories Defendant is legally required to identify when pulling a report.

- **The Identity Paradox (Debt Buyer vs. Benefit Provider):** Defendant has produced a **Bill of Sale** in this action. By identifying itself as a third-party debt buyer, it has conceded it is not a government agency. It is a logical and factual impossibility for a debt buyer to "not know" whether it was acting as a government benefit provider when it invaded the Plaintiff's privacy.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant's procurement of Plaintiff's consumer report was not for determining Plaintiff's eligibility for any other government-issued benefit.

- **Correct the Evasive Response:** Defendant must actually address the term "**benefit**" as requested, rather than defaulting to the word "**license**" from the previous request.

- **Identify the CRA Certification:** If Defendant denies this request, it must state under oath the **specific permissible purpose code** it provided to the CRA to procure the April 7, 2024 report.

- **Advisory Note:** Defendant is advised that providing a non-responsive, copy-pasted answer that fails to address the specific terminology of the Request is a violation of the

duty to respond in good faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate and non-responsive denials.**

## Request for Admission No. 18

**Request:**

Admit that the Inquiry was not in connection with child support.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative. PRA objects to the phrase "in connection" as vague and ambiguous because said phrase is undefined. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA made an "Inquiry."

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "in connection with child support," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Contradiction of Business Records (The Bill of Sale):** Defendant has produced a **Bill of Sale** within its production of **PRA_JENKINS_000001–000075**. Regardless of the document's legal validity in transferring the debt, its production is a formal concession that Defendant is a **third-party debt buyer** in this matter. As a self-identified debt buyer, Defendant knows with 100% certainty that its access to the Plaintiff's credit report was for "Collection" or "Account Review" purposes, which by definition excludes "Child Support". To claim a "lack of knowledge" while holding a Bill of Sale that establishes a commercial-only purpose is a bad-faith lie.

- **Willful Ignorance of the Transactional Record:** Every time a subscriber like PRA "procures" a consumer report, it **must** electronically certify a specific permissible purpose code to the CRA (e.g., Experian, Equifax, TransUnion). Defendant has an absolute record of exactly what purpose it certified on April 7, 2024. Claiming a "lack of knowledge" about its own electronic certification is a demonstrably false statement of fact designed to avoid narrowing the issues for trial.

- **Semantic Obstruction of Statutory Categories:** Objecting to the phrase "in connection with" as "vague" is a frivolous attempt to bypass the plain language of the FCRA. The

statute specifically uses this phrasing in **15 U.S.C. § 1681b** to define the legal boundaries of credit access.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its actions were "true". If Defendant lacks the knowledge to provide a straightforward admission regarding whether it was acting as a debt collector (per its Bill of Sale) or a child support agent (which its denial suggests is a possibility), then its "Truth" defense is a fraudulent pleading with no factual basis.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that the Inquiry was not in connection with child support.

- **Reconcile with Corporate Identity:** Defendant must state under oath how it can rely on a **Bill of Sale** (conceding it is a debt buyer) while simultaneously claiming it does not know if it was acting as a child support enforcement agency.

- **Identify the CRA Certification Code:** If Defendant persists in its denial, it must state under oath the **specific permissible purpose code** it provided to the CRA to procure the April 7, 2024 report.

- **Advisory Note:** Defendant is advised that "playing cute" by pretending it doesn't know its own business purpose—while in possession of a Bill of Sale for the alleged account— is a willful obstruction of the truth. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

## Request for Admission No. 19

**Request:**

Admit that the Plaintiff did not create an account with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "account" as vague, ambiguous, as calling for a legal conclusion, and as argumentative. PRA objects to the term "create" as vague and ambiguous because said term is undefined.

**RESPONSE:** Reserving and not waiving the foregoing objections, denied.

**Deficiency:**

- **Direct Contradiction of Business Records (The Bill of Sale Hammer):** Defendant has produced a **Bill of Sale** in this action (within **PRA_JENKINS_000001–000075**). By relying on a Bill of Sale, Defendant has 100% conceded its identity as a **Debt Buyer** that purchased an existing account from a third party. It is a factual and logical impossibility for a debt buyer to "deny" that a consumer did not create an account with them. By issuing a flat denial, Defendant is affirmatively stating, under penalty of perjury, that the Plaintiff **did** initiate a direct account relationship with PRA. This is a demonstrably false statement of fact that contradicts Defendant's own document production.

- **Semantic Obstruction of "Account" and "Create":** Objecting to the term "account" as a "legal conclusion" or "vague" is a bad-faith tactic to avoid admitting the absence of a direct contractual relationship. "Account" is a standard statutory term under the FCRA and the FDCPA. Similarly, "create" is a common factual event. Defendant, a sophisticated entity that manages millions of accounts, cannot claim it does not understand what it means for a consumer to "create an account."

- **Sham Denial to Evade Standing Issues:** The purpose of this denial is to hide the fact that Defendant lacks an original **Instrument** (a signed contract or application) that would prove a direct relationship. By denying that the Plaintiff "did not create an account," Defendant is attempting to fabricate a "direct relationship" to justify its credit pull, despite its own evidence (the Bill of Sale) proving it is merely a third-party purchaser.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications and records were "true". If Defendant's records (the Bill of Sale) show the debt was bought, but its discovery response claims the account was created directly with PRA, Defendant is maintaining two contradictory "truths."

- **Frivolous "Unlimited in Time" Objection:** Whether the Plaintiff ever initiated a relationship with PRA is a binary historical fact. Claiming this is "unduly burdensome" is a transparent attempt to clog the record with boilerplate noise.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that the Plaintiff did not create an account with PRA.

- **Reconcile with the Bill of Sale:** Defendant must explain, under penalty of perjury, how it can deny this Request while simultaneously relying on a **Bill of Sale** which identifies the account as one purchased from a predecessor-in-interest.

- **Identify the Contract:** If Defendant persists in its denial (thereby claiming the Plaintiff *did* create an account with PRA), it must identify by Bates number where in **PRA_JENKINS_000001–000075** a contract or account-opening document signed by the Plaintiff exists.

- **Advisory Note:** Defendant is advised that issuing a flat denial to a fact that its own business records prove to be true is an act of **frivolous litigation** and a violation of the duty of candor. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate and false denials.**

## Request for Admission No. 20

**Request:**

Admit that you did not initiate the creation of an account with the Plaintiff.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "account" as vague, ambiguous, as calling for a legal conclusion, and as argumentative. PRA objects to the terms "initiate" and "creation" as vague and ambiguous because said terms are undefined.

**RESPONSE:** Reserving and not waiving the foregoing objections, denied.

**Deficiency:**

- **Direct Contradiction of Business Records (The Bill of Sale Hammer):** Defendant has produced a **Bill of Sale** in this action (within **PRA_JENKINS_000001–000075**). By relying on a Bill of Sale, Defendant has 100% conceded its identity as a **Debt Buyer** that purchased an existing account from a third party. It is a factual and logical impossibility for a debt buyer to "deny" that it did not initiate the creation of an account. By issuing a flat denial, Defendant is affirmatively stating, under penalty of perjury, that it **did** initiate the account relationship with the Plaintiff. This is a demonstrably false statement of fact that contradicts Defendant's own document production.

- **Semantic Obstruction of "Account" and "Initiate":** Objecting to the term "account" as a "legal conclusion" and "initiate" as "vague" is a bad-faith tactic to avoid admitting its status as a third-party purchaser. "Account" is a standard statutory term under the FCRA and the FDCPA. Defendant, a sophisticated entity managing millions of accounts, cannot claim it does not understand what it means to "initiate" an account relationship.

- **Sham Denial to Evade Standing Issues:** The purpose of this denial is to hide the fact that Defendant lacks an original **Instrument** (a signed contract or application) that would

prove it was the initiating party of the debt. By denying that it "did not initiate the creation," Defendant is attempting to fabricate a "direct relationship" to justify its credit pull, despite its own evidence (the Bill of Sale) proving it only entered the picture after the account was already in existence and allegedly in default.

- **Contradiction of the Seventh Affirmative Defense (Truth):** In its **Seventh Affirmative Defense**, Defendant asserts that its communications and records were "true". If Defendant's records (the Bill of Sale) show the alleged debt was purchased, but its discovery response claims the account was initiated by PRA, Defendant is maintaining two contradictory "truths" in a single legal proceeding.

- **Frivolous "Unlimited in Time" Objection:** Whether the Defendant initiated an account is a binary historical fact. Claiming this is "unduly burdensome" to check is a transparent attempt to clog the record with boilerplate noise.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that Defendant did not initiate the creation of an account with the Plaintiff.

- **Reconcile with the Bill of Sale:** Defendant must explain, under penalty of perjury, how it can deny this Request while simultaneously relying on a **Bill of Sale** which identifies the account as one originated by a different entity.

- **Identify the Initiation Documents:** If Defendant persists in its denial (thereby claiming it *did* initiate the account creation), it must identify by Bates number where in **PRA_JENKINS_000001–000075** any document exists showing PRA as the originating creditor of the account.

- **Advisory Note:** Defendant is advised that issuing a flat denial to a fact that its own business records prove to be true is an act of **frivolous litigation** and a violation of the duty of candor. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate and false denials.**

## Request for Admission No. 21

**Request:**

Admit that PRA did not own a debt allegedly owed by Plaintiff on April 7, 2024.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to the terms "own" and "owed" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Semantic Obstruction of Foundational Terms:** Objecting to the terms "debt," "own," and "owed" as "vague," "ambiguous," or "legal conclusions" is the height of bad-faith obstruction. Defendant's entire business model is predicated on the "ownership" of "debts" that are "owed." These are standard statutory terms under the **FDCPA (15 U.S.C. § 1692a)** and the **FCRA**. A sophisticated debt buyer cannot claim it does not understand the very concepts that give it legal standing to exist.

- **The "Ownership" Trap (A Denial of a Negative is an Affirmative):** By denying the request to admit it did **not** own the debt on April 7, 2024, Defendant is affirmatively stating, under penalty of perjury, that it **did** own the alleged debt on that specific date.

- **Contradiction of Business Records (The Bill of Sale):** Defendant has produced a **Bill of Sale** within **PRA_JENKINS_000001–000075**. To support its denial, this Bill of Sale (and its attached schedules) must demonstrate a completed chain of title transferring the specific account to PRA **on or before April 7, 2024**. If the Bill of Sale is generic, lacks the Plaintiff's specific account, or is dated *after* the credit pull, this denial is a demonstrably false statement of fact.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant relies on the "truth" of its records. If Defendant is denying that it didn't own the debt, it is asserting as a "truth" that it was the legal owner. If the 75-page production does not contain a specific, authenticated transfer of this specific debt effective by April 7, 2024, the denial is a violation of the duty of candor.

- **Procedural Failure under Rule 36(a)(4):** A denial must "fairly respond to the substance of the matter". By hiding behind "legal conclusion" objections while issuing a flat denial, Defendant is attempting to avoid the burden of proving its own standing as the owner of the debt it used as a "permissible purpose" to pull credit.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," "legal conclusion," and "argumentative" objections.

- **Provide an Unqualified Admission** if Defendant cannot produce a specific document proving it held legal title to the account on April 7, 2024.

- **Identify the Proof of Title:** If Defendant persists in its denial, it **must** identify by Bates number where in **PRA_JENKINS_000001–000075** a document exists that specifically names the Plaintiff's account and shows the transfer of ownership was finalized *prior* to the April 7, 2024 Inquiry.

- **Reconcile with Affirmative Defenses:** Defendant must explain how it can assert the "truth" of its communications (**Seventh Affirmative Defense**) if it cannot verify the exact date it acquired the legal right to the information it was communicating.

- **Advisory Note:** Defendant is advised that a denial of ownership in an RFA, when the produced documents do not support a completed chain of title by the date of the credit pull, constitutes a **frivolous and bad-faith response**. Failure to cure will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of boilerplate denials.**

## <u>Request for Admission No. 22</u>

<u>Request:</u>

<u>Admit that PRA did not have a document on April 7, 2024 that lists Plaintiff by name as owing a debt to PRA.</u>

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "debt" and "document" as calling for legal conclusions and as argumentative. PRA objects to the terms "owing" as vague 11 and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its forgoing objections, denied.

**Deficiency:**

- **Bad-Faith Reliance on Redacted Evidence:** Defendant has issued a flat denial to this Request, thereby affirmatively stating under penalty of perjury that it **did** possess a document on April 7, 2024, listing the Plaintiff by name as owing a debt to PRA. However, the foundational document Defendant relies upon—the **Bill of Sale**—contains a **redacted transfer date** in its final sentence. Defendant is attempting to use this redaction as both a sword and a shield: denying the Request based on a "successor-in-interest" status while hiding the very date that would prove whether that status actually existed on the date of the Inquiry.

- **The "Successor" Fallacy:** Defendant's denial rests on the legal fiction that a PDF statement from a third-party (Synchrony/Citibank) constitutes a debt "owed to PRA." This bridge only exists if the Bill of Sale was fully executed and effective **on or before April 7, 2024**. By redacting the date, Defendant is obstructing the Plaintiff's ability to

verify if the "ownership" it claims to have had actually existed at the moment it invaded the Plaintiff's privacy.

- **Semantic Obstruction of "Owing" and "Debt":** Defendant's objection to "owing" as a "legal conclusion" is a transparent attempt to preserve "wiggle room." These are not vague terms; they are the factual predicates for a permissible purpose under **15 U.S.C. § 1681b(a)(3)(A)**. If the transfer date was April 8th or later, then as a matter of fact, the Plaintiff did **not** owe a debt to PRA on April 7th, making Defendant's denial a demonstrably false statement of fact.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts that its communications and actions were "true." If Defendant pulled the Plaintiff's credit report *before* the effective date of the Bill of Sale, its claim of having a permissible purpose was a lie. Maintaining a denial of this RFA while redacting the date of transfer is a violation of the duty of candor.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if the Bill of Sale transferring the specific account was not fully executed and effective **on or before April 7, 2024**.

- **Un-redact the Transfer Date:** To support this denial in good faith, Defendant **must** produce an un-redacted version of the Bill of Sale (or the specific assignment schedule) showing the exact date PRA acquired the legal right to the Plaintiff's data.

- **Identify the Specific Document:** If Defendant persists in its denial, it must identify by Bates number the specific document in **PRA_JENKINS_000001–000075** that (1) existed on April 7, 2024, and (2) explicitly identifies PRA as the legal owner of the debt.

- **Advisory Note:** Defendant is advised that issuing a denial based on "ownership" while redacting the date of that ownership is an act of bad faith. If discovery reveals the transfer date post-dates the Inquiry, Plaintiff will move for **sanctions for the bad-faith use of false denials** and a violation of **Rule 36**.

### Request for Admission No. 23

### Request:

Admit that PRA did not have a document on April 7, 2024 that identifies Plaintiff by name in an assigned account.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "identified," "document" and "account" as calling for legal conclusions and as argumentative. PRA objects to the term

"assigned" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Willful Concealment of Foundational Instruments:** Defendant's flat denial is a certification that it possessed an "assigned account" document on April 7, 2024. However, the Bill of Sale produced in **PRA_JENKINS_000001–000075** explicitly references several critical documents that were **not produced**, including:

  - The **Master Account Sale Agreement** (MASA);

  - The **Notification Files**; and

  - The **Account Sale Addendum** dated 2/2/2024. By referencing these documents as the source of its rights while failing to produce them, Defendant is engaging in a "silent denial" of the Plaintiff's right to verify the **Chain of Title**.

- **Failure of the Unbroken Chain (Intervening Owners):** The Bill of Sale mentions multiple **intervening owners** in the chain of title. A legal assignment requires an unbroken, documented path from the original creditor to PRA. If any link in that chain— including the transfer from the intervening owners—is missing or redacted, there is no "assignment" as a matter of law. Defendant's denial, while hiding the "Notification Files" and "Addendum," is a bad-faith attempt to manufacture standing it cannot prove.

- **The Redacted Transfer Date (The Kill Switch):** As established in RFA 22, the **redacted date** in the final sentence of the Bill of Sale is the only thing that proves when the "assignment" actually became effective. Defendant cannot deny that the account was "not assigned" while simultaneously redacting the date that proves when the assignment occurred.

- **Semantic Obstruction of "Assigned":** Objecting to the term "assigned" as "vague" or a "legal conclusion" is a frivolous tactic for a debt buyer whose entire legal existence depends on the law of assignments. Defendant—a sophisticated actor—cannot claim it does not understand the mechanism by which it allegedly acquired the right to pull the Plaintiff's credit.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts its communications were "true." If Defendant pulled credit before the chain of title was completed and unredacted (specifically the 2/2/2024 Addendum or the intervening owner transfers), then its claim of a "permissible purpose" was a legal fraud.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if the chain of title was not **complete, unbroken, and effective** on or before April 7, 2024.

- **Produce the Missing Chain of Title:** To maintain this denial in good faith, Defendant **must** produce:

  1. The un-redacted **Master Account Sale Agreement**;

  2. The un-redacted **Account Sale Addendum** dated 2/2/2024;

  3. The **Notification Files** that specifically list the Plaintiff; and

  4. All documents evidencing the transfers between the **intervening owners**.

- **Identify the Specific Document:** If Defendant persists in its denial, it must identify by Bates number where in its production an actual **Assignment of Account** exists that is (1) unredacted, (2) dated on or before 4/7/24, and (3) shows an unbroken chain of title.

- **Advisory Note:** Defendant is advised that "standing on objections" while withholding the very documents (MASA, Addendum, Intervening Transfers) that define its legal rights is an act of bad faith. Failure to provide an unqualified admission or the supporting unredacted chain will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of false denials.**

## Request for Admission No. 24

**Request:**

Admit that PRA did not have a document on April 7, 2024 that shows a debt being transferred to PRA for Plaintiff.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "debt" and "document" as calling for legal conclusions and as argumentative. PRA objects to the term "transferred" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Willful Concealment of Transfer Instruments:** Defendant has issued a flat denial, swearing under penalty of perjury that it possessed a document on April 7, 2024, showing a debt being transferred **to PRA** for the Plaintiff. However, the Bill of Sale produced in

**PRA_JENKINS_000001–000075** explicitly references several critical documents that were **not produced**, including:

- The **Master Account Sale Agreement** (MASA);

- The **Notification Files**; and

- The **Account Sale Addendum** dated 2/2/2024. Without these documents, the "transfer" to PRA is a legal fiction that cannot be verified.

- **The "Successor" Timing Trap:** As established in RFAs 22 and 23, the **transfer date in the Bill of Sale is redacted**. Defendant cannot deny that a transfer had not occurred while simultaneously hiding the date that proves when the transfer became effective. If the effective date was April 8th or later, then as a matter of law, no document could have shown a transfer to PRA on April 7th.

- **Failure of the Unbroken Chain (Intervening Owners):** The Bill of Sale identifies multiple **intervening owners**. A valid "transfer to PRA" requires an unbroken, documented path from the original creditor through every intervening entity to PRA. By redacting the dates and withholding the MASA and Addendum, Defendant is engaging in a bad-faith attempt to claim a completed transfer without proving the chain was intact by the date of the Inquiry.

- **Semantic Obstruction of "Transferred":** Objecting to the term "transferred" as "vague" is a frivolous tactic for a debt buyer whose entire business model is the acquisition of transferred debts. "Transfer" is a fundamental factual event; Defendant cannot claim ignorance of the term to avoid admitting a lack of standing on the date of the credit pull.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts its actions were "true." If Defendant pulled credit before the transfer was finalized—meaning it did not yet have legal authority over the data—its claim of a "permissible purpose" was a fraud.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if the transfer of this specific account to PRA was not **complete, unbroken, and effective** on or before April 7, 2024.

- **Produce the Missing Chain of Title:** To maintain this denial in good faith, Defendant **must** produce:

   1. The un-redacted **Master Account Sale Agreement**;

   2. The un-redacted **Account Sale Addendum** dated 2/2/2024;

3.  The **Notification Files** that specifically list the Plaintiff; and

4.  All documents evidencing the transfers between the **intervening owners**.

- **Identify the Specific Document:** If Defendant persists in its denial, it must identify by Bates number where in its production a document exists that (1) is unredacted, (2) is dated on or before 4/7/24, and (3) shows an effective transfer **to PRA**.

- **Advisory Note:** Defendant is advised that "standing on objections" while withholding the very documents that define its transfer of rights is an act of bad faith. Failure to provide an unqualified admission or the supporting unredacted chain will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions.**

## Request for Admission No. 25

**Request:**

Admit that PRA did not review a document identifying Plaintiff before making the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "debt" and "document" as calling for legal conclusions and as argumentative. PRA objects to the term "transferred" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the term "identifying" as calling for a legal conclusion and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA made an "Inquiry."

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Bad-Faith Denial of Electronic Audit Trails:** By issuing a flat denial, Defendant is swearing under penalty of perjury that it **did** review a document identifying the Plaintiff **before** the April 7, 2024 Inquiry. Every access to a consumer report must be preceded by a "permissible purpose" determination based on existing information. If Defendant's internal "log files" or "access records" do not show that the Plaintiff's specific account file was opened and reviewed *prior* to the timestamp of the credit pull, this denial is a demonstrably false statement of fact.

- **The "Successor" Timing Trap:** Defendant's denial implies it had the legal right to review the Plaintiff's private data before the Inquiry. However, as established in RFAs 22-24, the **Bill of Sale** contains a **redacted transfer date**. If that date is April 8th or later, Defendant could not have "reviewed" a document in any legal capacity as a "successor-

in-interest" before April 7th. Any such "review" would have been an unauthorized access of a stranger's private information.

- **Willful Concealment of Pre-Inquiry Records:** To support this denial in good faith, Defendant must possess a record—such as a timestamped "Account Notes" entry or a "Data Intake" log—showing the review occurred. Defendant has produced 75 pages of an account file (**PRA_JENKINS_000001–000075**), yet notably absent is any internal audit trail or "Screen Print" showing a review was conducted on or before April 7, 2024.

- **Semantic Obstruction of "Review" and "Identifying":** Objecting to the term "identifying" as a "legal conclusion" is a frivolous attempt to avoid admitting that Defendant likely pulled the Plaintiff's credit as part of a "bulk batch" without any individual review. "Identifying" is a standard factual term; either a document contains the Plaintiff's name, or it does not.

- **Frivolous Denial of the "Inquiry":** Objecting to the Request because it "assumes PRA made an Inquiry" is an act of procedural bad faith. Defendant has already admitted it "procured" the report in other responses. To now claim the term "Inquiry" is a "legal conclusion" or an "assumption" is a transparent attempt to obstruct the discovery process with contradictory semantics.

## Cure Required:

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if Defendant cannot produce a time-stamped internal record showing a human or automated review of the Plaintiff's specific identity occurred **prior** to the April 7, 2024 Inquiry.

- **Un-redact the Transfer Date:** To maintain this denial in good faith, Defendant **must** prove it had the legal authority to "review" the Plaintiff's data on April 7 by un-redacting the Bill of Sale date.

- **Identify the Audit Trail:** If Defendant persists in its denial, it must identify by Bates number where in its production a record exists showing the **date and time** the Plaintiff's account was first accessed or reviewed by PRA staff or systems.

- **Advisory Note:** Defendant is advised that "standing on objections" while hiding the timing of its "review" and its "ownership" is an act of bad faith. If discovery reveals the Inquiry was made via a "blind batch pull" before any individual review of the Plaintiff's account took place, Plaintiff will move for **sanctions for the bad-faith use of false denials.**

## Request for Admission No. 26

## Request:

<u>Admit that PRA did not review a contract signed by Plaintiff before making the April 7, 2024 Inquiry.</u>

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative. PRA objects to the terms "contract," and "signed" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA made an "Inquiry."

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "a contract signed by Plaintiff," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Lack of Knowledge" vs. Affirmative Defenses:** Defendant's claim that it "lacks knowledge" or "information sufficient to admit or deny" whether it reviewed a signed contract is a procedural sham and a direct contradiction of its own pleadings. In its **Sixth Affirmative Defense**, Defendant asserts a right to **arbitrate** based on the "original agreement". In its **Fifth Affirmative Defense**, Defendant asserts a right to **Set-off**, which requires a calculation of credits and debits defined by the original contract terms. Defendant cannot—in good faith—assert defenses based on an "original agreement" while simultaneously claiming that "a contract signed by Plaintiff" is a "vague and ambiguous" phrase that it lacks the knowledge to address.

- **Willful Ignorance of the Account File:** Defendant has produced its entire account file in **PRA_JENKINS_000001–000075**. To satisfy the "reasonable inquiry" requirement of **Rule 36**, Defendant must simply look at the 75 pages it produced. If a signed contract is not present in that file, Defendant has a mandatory duty to admit it did not review one. Using a "lack of knowledge" hedge to avoid admitting the absence of an **Original Instrument** is an act of bad faith.

- **Semantic Obstruction of Foundational Terms:** Objecting to the terms "contract" and "signed" as "vague" or "undefined" is a frivolous attempt to avoid admitting that it pulled the Plaintiff's credit without ever seeing the underlying agreement. As a debt buyer, Defendant's entire legal standing and its "Truth" defense (**Seventh Affirmative Defense**) depend on the existence and terms of a contract.

- **The "Inquiry" Wordplay:** Objecting to the term "Inquiry" as a "legal conclusion" while simultaneously using the term "Response" to address the "Request" is nonsensical obstruction.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant did not review a contract signed by the Plaintiff before making the April 7, 2024 Inquiry.

- **Identify the Document:** If Defendant persists in its denial (thereby claiming it **did** review a signed contract), it **must** identify by Bates number where in **PRA_JENKINS_000001–000075** a contract signed by the Plaintiff exists.

- **Reconcile with Affirmative Defenses:** Defendant must explain how it can claim a right to **Arbitrate** or **Set-off** based on an agreement it now claims it lacks the "knowledge" to identify or admit to reviewing.

- **Advisory Note:** Defendant is advised that "standing on objections" regarding the contents of its own production while simultaneously asserting defenses based on those missing documents is an act of bad faith. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of sham denials.**

<u>**Request for Admission No. 27**</u>

<u>**Request:**</u>

<u>Admit that PRA did not review a court judgment naming Plaintiff before making the April 7, 2024 Inquiry.</u>

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "Inquiry" as calling for a legal conclusion and as argumentative. PRA objects to the terms or phrase "court judgment" as calling for a legal conclusion and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA made an "Inquiry."

**RESPONSE:** Reserving and not waiving the foregoing objections, after reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" & Failure of Reasonable Inquiry:** Defendant's claim that it is "without knowledge or information sufficient" to admit or deny this request after a "reasonable investigation" is a procedural sham. Defendant has produced its entire responsive account file in **PRA_JENKINS_000001–000075**. To satisfy the "reasonable inquiry" requirement of **Rule 36**, Defendant is simply required to look at its own 75-page production. If a court judgment is not present in that file, Defendant has a mandatory duty to admit its absence based on information **presently known**.

- **The "Supplementation" Loophole:** Defendant's statement that "Discovery is ongoing" is not a valid excuse for failing to answer a Request for Admission. A reservation of the right to supplement under Rule 26(e) does not override the present duty to admit or deny based on the records Defendant has already certified as relevant. Using the *possibility* of future discovery to avoid admitting a *presently verifiable fact* (the absence of a judgment in the current file) is an act of bad faith.

- **Semantic Obstruction of "Court Judgment":** Objecting to the phrase "court judgment" as a "legal conclusion" is a frivolous tactic. A court judgment is a matter of public record and a foundational document for debt collection. Defendant cannot claim it does not understand what a judgment is to avoid admitting it lacked this specific "permissible purpose" before the Inquiry.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts in its **Seventh Affirmative Defense** that its actions and records are "true." If Defendant truly lacks the knowledge to even confirm if it holds a judgment against the Plaintiff—a basic binary fact—it has no factual basis to assert the "truth" of its records or its right to engage in collection activity.

**Cure Required:**

- **Immediately withdraw** the "legal conclusion," "argumentative," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that, based on information **presently known or readily obtainable**, Defendant did not review a court judgment naming the Plaintiff before the April 7, 2024 Inquiry.

- **Identify the Document:** If Defendant persists in its denial (thereby claiming it **did** review a court judgment), it **must** identify the specific court, case number, and date of the judgment, and identify by Bates number where it is located in the **PRA_JENKINS_000001–000075** production.

- **Advisory Note:** Defendant is advised that "standing on objections" regarding the contents of its own 75-page production is a violation of the duty of candor. Failure to

provide an unqualified admission based on its current records will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted and a request for sanctions.

**Request for Admission No. 28**

**Request:**

Admit that Plaintiff does not have an account with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "account" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **The "Internal Tracking" Shell Game:** By issuing a flat denial, Defendant is swearing that the Plaintiff **does** have an account with PRA. However, in the context of the FCRA and debt collection, an "account" is not merely a line item in a debt buyer's internal database; it is a legal relationship. Defendant is attempting to use its own **internally generated tracking number** as a substitute for a verified legal account. This is a bad-faith attempt to manufacture a "permissible purpose" where none exists.

- **The Ownership Contradiction (RFA 26 vs. RFA 28):** Defendant's responses are logically irreconcilable. In **RFA No. 26**, Defendant claims it "lacks knowledge" or "information sufficient" to admit it reviewed a **signed contract**. Yet, in **RFA No. 28**, it affirmatively denies that the Plaintiff does *not* have an account. Defendant cannot claim it "does not know" about the contract that creates the account while simultaneously swearing that the account exists.

- **Frivolous "Unlimited in Time" Objection:** Defendant's objection that the request is "unlimited in time" is a meritless distraction. The central issue is whether a legal relationship existed on April 7, 2024. A sophisticated debt buyer with digitized records can verify the existence of an account in seconds. This objection is a transparent attempt to avoid a straight answer.

- **Semantic Obstruction of "Account":** Objecting to the term "account" as a "legal conclusion" is frivolous. PRA's entire business model is the management of "accounts." This word is used throughout their own production (**PRA_JENKINS_000001–000075**). Defendant cannot use the word as a business label but then claim it is "vague" when asked to verify its legal existence.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** that the Plaintiff does not have, and has never had, a direct account agreement with PRA.

- **Identify the Account Details:** If Defendant persists in its denial (thereby claiming an account **does** exist), it **must**:

  1. Whether the "account" is a consensual contract between Plaintiff and PRA or an administrative tracking file created solely by PRA for collection purposes;

  2. Provide the **Date the Account was Opened** on PRA's books; and

  3. Identify by Bates number in **PRA_JENKINS_000001–000075** the specific document that establishes the Plaintiff's consent to open an account with PRA.

- **Produce the Foundation:** To maintain this denial in good faith, Defendant **must** produce the **original signed agreement** (as referenced in its Sixth Affirmative Defense) that authorized the creation of this account. A third-party statement from a predecessor-in-interest does not constitute a "PRA Account."

- **Advisory Note:** Defendant is advised that "playing word games" with its own business records is an act of bad faith. If Defendant continues to claim an account exists while refusing to produce the unredacted Bill of Sale or the Master Sale Agreement (as requested in RFAs 23 and 24), Plaintiff will move for **sanctions for the bad-faith use of contradictory and evasive denials.**

## Request for Admission No. 29

**Request:**

Admit that Plaintiff does not owe a debt to you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to the terms "owe" as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Bad-Faith Denial Without Foundational Proof:** Defendant has issued a flat denial, swearing that the Plaintiff **does** owe a debt to PRA. However, this denial is a demonstrably false statement of fact unless Defendant can prove an **unbroken and unredacted complete chain of title** from the original creditor to PRA.

- **Concealment of Necessary Instruments:** The Bill of Sale produced by Defendant (**PRA_JENKINS_000001**) explicitly references several critical documents that are absent from the production:

  - The **Master Account Sale Agreement (MASA)**;

  - The **Notification Files** (the only documents that link this specific Plaintiff to the sale); and

  - The **Account Sale Addendum** dated 2/2/2024. By denying the Request while withholding the very documents that would prove the "transfer" and "obligation," Defendant is engaging in a "silent fraud" upon the discovery process.

  - **The "Intervening Owner" Gap:** The Bill of Sale identifies at least **three intervening owners** between the original creditor and PRA. A legal obligation to PRA cannot exist without unredacted evidence of every single transfer in that chain. If one link is missing or if a transfer date is redacted, there is no "debt owed" to PRA as a matter of law.

  - **The Redaction Trap (Timing):** As established in previous RFAs, the **transfer date** in the final sentence of the Bill of Sale (**PRA_JENKINS_000001**) is redacted. If that date is April 8, 2024, or later, then as a matter of fact, the Plaintiff did **not** owe a debt to PRA on the date of the Inquiry (April 7). Maintaining a denial while hiding the date that proves the denial is false is a violation of the duty of candor.

  - **Semantic Obstruction of Industry Terms:** Objecting to "owe" and "debt" as "legal conclusions" is frivolous. PRA is a debt buyer; its entire business is the collection of "debts" that are "owed." Claiming it does not understand these terms to avoid admitting a lack of standing is a bad-faith tactic.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if Defendant cannot produce a **complete, unbroken, and unredacted** chain of title from the original creditor through all intervening owners to PRA, dated **on or before April 7, 2024.**

- **Produce the Unredacted Foundation:** To maintain this denial in good faith, Defendant **must** produce:

  1. The unredacted **Master Account Sale Agreement (MASA)**;

  2. The unredacted **Account Sale Addendum** dated 2/2/2024;

  3. The **Notification Files** listing the Plaintiff's specific account; and

4. Unredacted evidence of the transfers between all **intervening owners**.

- **Identify the Specific Link:** If Defendant persists in its denial, it must identify by Bates number where in its production an unredacted, effective assignment exists that shows the Plaintiff owed a debt **specifically to PRA** on April 7, 2024.

- **Advisory Note:** Defendant is advised that "standing on objections" while withholding the chain of title is an act of procedural bad faith. If discovery reveals the chain was broken or the transfer post-dates the Inquiry, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of false denials.**

### Request for Admission No. 30

**Request:**

Admit that you have never been assigned a debt of the Plaintiff for collection.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "debt" as calling for a legal conclusion and as argumentative. PRA objects to the term or phrase "assigned" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Semantic Obstruction of Industry Fundamentals:** Defendant objects to the term "assigned" as "vague" and "undefined". This is a frivolous and bad-faith objection. PRA is a specialized debt buyer whose entire corporate existence is built upon the legal mechanism of **assignment**. Claiming a lack of understanding of the word "assigned" to avoid a straight answer is a transparent attempt to obstruct discovery regarding Defendant's standing.

- **Bad-Faith Denial of Standing:** By issuing a flat denial, Defendant is swearing under penalty of perjury that it **was** assigned a debt of the Plaintiff **for collection** on or before April 7, 2024. However, as established in the previous RFAs, the **Bill of Sale (PRA_JENKINS_000001)** contains a **redacted transfer date**. If that assignment was not fully executed and effective until April 8, 2024, or later, then the denial of this Request is a perjurious statement.

- **The "For Collection" Distinction:** Under the FCRA, a "permissible purpose" exists only if the entity is actually engaged in a credit transaction or collection activity involving the consumer at the time of the inquiry. If the "assignment for collection" occurred *after* the Inquiry, Defendant had no right to access the Plaintiff's private

credit data. By denying this Request while hiding the transfer date, Defendant is shielding a potential "pre-acquisition" credit pull.

- **Failure of the Unbroken Chain (The Paper Trail):** To maintain this denial in good faith, Defendant must possess an **unbroken and unredacted chain of title** proving the assignment happened before April 7. Defendant has notably failed to produce the **Master Account Sale Agreement (MASA)**, the **Notification Files**, or the **Account Sale Addendum** referenced in its own production. Without these, there is no evidence of a valid assignment for collection.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections regarding the terms "assigned" and "debt."

- **Provide an Unqualified Admission** if the debt was not legally and fully assigned to PRA for collection **on or before April 7, 2024**.

- **Produce the Unredacted Assignment:** To support this denial in good faith, Defendant **must** produce:

  1. The **unredacted transfer date** on the Bill of Sale (**PRA_JENKINS_000001**);

  2. The **Notification File** or **Schedule** showing the Plaintiff's account was included in the assignment; and

  3. The **Master Account Sale Agreement (MASA)** defining the terms of the assignment for collection.

- **Identify the Specific Document:** If Defendant persists in its denial, it must identify by Bates number where in its 75-page production a document exists that explicitly confirms the date the account was "assigned for collection" to PRA.

- **Advisory Note:** Defendant is advised that "playing word games" with the term "assigned" is an act of procedural bad faith. If discovery reveals the assignment was not finalized until after the Inquiry, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of false denials.**

## Request for Admission No. 31

**Request:**

Admit that Plaintiff did not seek to engage in a business transaction with you.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the terms or phrases "engage,"

"seek" and "business transaction" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA states that, despite a reasonable inquiry, it lacks information or knowledge sufficient to form a belief as to the truth or falsity of the Request and, therefore, denies this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" Denial:** Defendant's claim that it "lacks information or knowledge sufficient to form a belief" as to whether the Plaintiff sought to engage in a business transaction with it is a procedural absurdity. Defendant has produced its entire account file in **PRA_JENKINS_000001–000075**. If the Plaintiff had ever "sought" a transaction (e.g., an application for credit, a loan request, or a signed contract initiated by the Plaintiff), such a record would be the centerpiece of that production. Claiming ignorance regarding the contents of its own 75-page file is an act of bad faith.

- **Frivolous Objection to "Business Transaction":** Defendant objects to the phrase "business transaction" as "vague" and "undefined." This is a transparent attempt to ignore the very language of the **Fair Credit Reporting Act (FCRA)**. Under **15 U.S.C. § 1681b(a)(3)(F)**, a "permissible purpose" can exist if there is a "legitimate business need... in connection with a business transaction that is **initiated by the consumer**." By objecting to this term, Defendant is attempting to block discovery into the fact that the Plaintiff never initiated any relationship with PRA.

- **The "Strangers to the Debt" Reality:** As a third-party debt buyer, Defendant knows as a matter of fact that its only "business transaction" was with the **seller** of the alleged debt, not the Plaintiff. To deny this Request while hiding behind a "lack of knowledge" is a bad-faith attempt to manufacture a "permissible purpose" out of thin air.

- **Frivolous "Unlimited in Time" Objection:** Whether the Plaintiff sought a transaction "at any time" is easily verifiable via a name/SSN search in Defendant's digitized database. Defendant is a sophisticated multi-billion dollar entity; claiming a search for its own customer records is "unduly burdensome" is a meritless stalling tactic.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that the Plaintiff did not seek to engage in a business transaction with PRA on or before April 7, 2024.

- **Produce the Initiation Record:** If Defendant persists in its denial (thereby claiming the Plaintiff **did** seek a transaction), it **must** identify by Bates number the specific application, inquiry, or contract **initiated by the Plaintiff** that is located in **PRA_JENKINS_000001–000075**.

- **Reconcile with FCRA Compliance:** If no such initiation record exists, Defendant must explain the factual basis for its denial under the "consumer-initiated" standard of **15 U.S.C. § 1681b**.

- **Advisory Note:** Defendant is advised that "standing on objections" to the very language of the FCRA is an act of bad faith. If discovery reveals the Plaintiff never initiated a transaction and the Defendant pulled credit as a "stranger" to the consumer, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

## Request for Admission No. 32

**Request:**

Admit that you did not seek to engage in a business transaction with Plaintiff.

**Response:**

**OBJECTION:** PRA objects to this Request as vague, ambiguous, overly broad and unduly burdensome because it is unlimited in time. PRA objects to the terms or phrases "engage," "seek" and "business transaction" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied.

**Deficiency:**

- **Bad-Faith Denial of Corporate Reality:** By issuing a flat denial, Defendant is swearing under penalty of perjury that it **did** seek to engage in a business transaction with the Plaintiff. This is a factual impossibility for a "passive" debt buyer. PRA does not market services to consumers; it purchases portfolios from other creditors. Defendant's transaction was with the **original creditor and or intervening seller**, not the Plaintiff. Swearing otherwise to avoid an admission is a demonstrably false statement of fact.

- **Semantic Obstruction of FCRA Statutory Language:** Defendant objects to the phrase "business transaction" as "vague" and "undefined." As established in RFA No. 31, "business transaction" is the specific language used in **15 U.S.C. § 1681b(a)(3)(F)**. By claiming this term is vague, Defendant is attempting to block discovery into the very legal standard it must meet to prove a "permissible purpose."

- **The "Search for Purpose" Contradiction:** If Defendant "sought" a transaction with the Plaintiff, there must be a record of that outreach—such as a solicitation letter, a loan offer, or a contract proposal—dated **before** the April 7, 2024 Inquiry. No such document exists in the 75-page account file (**PRA_JENKINS_000001–000075**). For Defendant to deny this Request while its own production proves the opposite is a violation of the duty of candor.

- **Frivolous "Unlimited in Time" Objection:** Whether Defendant ever sought a transaction with the Plaintiff is a binary fact easily verified by its own internal records. Labeling this as "unduly burdensome" is a boilerplate tactic used to avoid admitting that Defendant is a total stranger to the Plaintiff.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** that Defendant did not seek to engage in a business transaction with the Plaintiff on or before April 7, 2024.

- **Identify the "Sought" Transaction:** If Defendant persists in its denial (thereby claiming it **did** seek a transaction), it **must**:

  1. Identify the **exact nature** of the business transaction it sought with the Plaintiff;

  2. Provide the **date** it first attempted to engage the Plaintiff in this transaction; and

  3. Identify by Bates number in **PRA_JENKINS_000001–000075** the document (letter, offer, or proposal) that proves this outreach occurred.

- **Advisory Note:** Defendant is advised that "playing word games" with its own business model is an act of procedural bad faith. If discovery reveals that Defendant's only "transaction" was a bulk-debt purchase from a third party, and that no transaction was ever sought with the Plaintiff, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of false denials.**

### Request for Admission No. 33

**Request:**

Admit that PRA did not have an arbitration agreement signed by Plaintiff on April 7, 2024.

**Response:**

**OBJECTION:** PRA objects to the term "signed" as calling for a legal conclusion and as argumentative. PRA objects to the phrase "arbitration agreement signed by Plaintiff" as vague, ambiguous, as calling for a legal conclusion, and as argumentative. PRA objects to this Request

as calling for a legal conclusion and as argumentative, generally, to the extent it assumes Plaintiff's signature was necessary to create a valid and binding arbitration agreement. PRA objects to this Request as overly broad, unduly burdensome, and as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Whether PRA has an arbitration agreement signed by Plaintiff is not relevant to Plaintiff's claims under the FCRA.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "an arbitration agreement signed by Plaintiff," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Contradiction of Affirmative Defenses:** Defendant's claim that it "lacks knowledge" or "information sufficient" to admit or deny the existence of a signed arbitration agreement is a direct and bad-faith contradiction of its own pleadings. In its **Sixth Affirmative Defense**, Defendant affirmatively asserts a right to **arbitrate** based on the "original agreement." Defendant cannot—in good faith—claim a legal right to arbitrate while simultaneously claiming it does not know if it even possesses the agreement that creates that right.

- **Sham "Lack of Knowledge" & Failure of Reasonable Inquiry:** Defendant has produced its entire account file in **PRA_JENKINS_000001–000075**. To satisfy the "reasonable inquiry" requirement of **Rule 36**, Defendant is simply required to look at its own 75-page production. If a signed arbitration agreement is not present in that file, Defendant has a mandatory duty to admit its absence. Claiming a lack of knowledge regarding the contents of its own certified business records is an act of procedural bad faith.

- **Frivolous Relevance Objection:** Defendant's assertion that an arbitration agreement is "not relevant to Plaintiff's claims under the FCRA" is legally meritless. It is the **Defendant** who made this document relevant by raising it as the **Sixth Affirmative Defense**. Defendant is attempting to use the "original agreement" as a shield to avoid litigation while simultaneously using a relevance objection as a sword to avoid producing or admitting to the absence of that same document.

- **Semantic Obstruction of "Signed":** Objecting to the term "signed" as a "legal conclusion" is a frivolous attempt to avoid a binary factual inquiry. Either a document contains a signature, or it does not. Whether a signature is "necessary" for a contract to be "binding" (as Defendant argues) is a separate legal theory that does not excuse the Defendant from admitting the factual absence of a signed instrument.

- **The "Timing" Hammer:** The Request specifically asks if Defendant possessed this document on **April 7, 2024**. If the Defendant did not acquire the account until after that date (as suggested by the redacted Bill of Sale at **PRA_JENKINS_000001**), then it could not have possessed the agreement at the time of the Inquiry.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant did not have an arbitration agreement signed by the Plaintiff in its possession on April 7, 2024.

- **Identify the Document:** If Defendant persists in its denial (thereby claiming it **did** possess a signed agreement), it **must** identify by Bates number where in **PRA_JENKINS_000001–000075** a signed arbitration agreement exists.

- **Reconcile with Affirmative Defenses:** If Defendant admits it does not have a signed agreement, it must state the factual basis for its **Sixth Affirmative Defense** or immediately withdraw said defense.

- **Advisory Note:** Defendant is advised that "standing on objections" while asserting an arbitration defense is an act of bad faith. Failure to provide an unqualified admission based on its current records will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of contradictory denials.**

### Request for Admission No. 34

**Request:**

Admit that PRA did not have an arbitration agreement signed by Plaintiff at the time it filed its Answer.

**Response:**

OBJECTION: PRA objects to the term "signed" as calling for a legal conclusion and as argumentative. PRA objects to the phrase "arbitration agreement signed by Plaintiff" as vague, ambiguous, as calling for a legal conclusion, and as argumentative. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, to the extent it assumes Plaintiff's signature was necessary to create a valid and binding arbitration agreement. PRA objects to this Request as overly broad, unduly burdensome, and as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Whether PRA has an arbitration agreement signed by Plaintiff is not relevant to Plaintiff's claims under the FCRA.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "an arbitration agreement signed by Plaintiff," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Direct Contradiction of Affirmative Defenses (Procedural Sham):** Defendant's claim that it "lacks knowledge" or "information sufficient" to admit or deny this Request is a demonstrably bad-faith evasion. In its **Sixth Affirmative Defense**, Defendant affirmatively asserted a right to **Arbitration** based on the "original agreement." Under **Rule 11**, an attorney certifying a pleading must have a factual basis for the defenses raised. Defendant cannot—in good faith—assert a defense in its Answer and then claim three months later that it "lacks knowledge" as to whether it possessed the document required to support that very defense.

- **Failure of Reasonable Inquiry into Certified Records:** Defendant has produced its entire responsive account file (**PRA_JENKINS_000001–000075**). To satisfy the "reasonable inquiry" requirement of **Rule 36**, Defendant is simply required to look at its own 75-page production. If a signed arbitration agreement is not present in that file, Defendant has a mandatory duty to admit its absence at the time the Answer was filed. Claiming a lack of knowledge regarding the contents of its own certified business records is an act of procedural bad faith.

- **Frivolous Relevance Objection:** Defendant's assertion that an arbitration agreement is "not relevant" is logically and legally bankrupt. Defendant **made** this document relevant by pleading it as an affirmative defense. Defendant is attempting to use the "agreement" as a shield to potentially move for a stay or dismissal while using a "relevance" objection as a sword to avoid admitting the document does not exist.

- **Semantic Obstruction of "Signed":** Objecting to the term "signed" as a "legal conclusion" is a frivolous attempt to avoid a binary factual inquiry. Whether a signature is "necessary" for a contract to be "binding" (as Defendant argues) is a legal theory; whether a document *contains* a signature is a **fact**. Defendant is required to admit or deny the fact, regardless of its legal theory.

- **The "Supplementation" Shield:** As established in RFA 33, a reservation of the right to supplement discovery is not a license to provide a "sham" lack-of-knowledge response regarding documents that would have been in Defendant's possession at the time of its initial pleading.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that Defendant did not have an arbitration agreement signed by the Plaintiff in its possession at the time it filed its Answer.

- **Identify the Document & Basis for Defense:** If Defendant persists in its denial (thereby claiming it **did** possess a signed agreement), it **must**:

  1. Identify by Bates number where in **PRA_JENKINS_000001–000075** a signed arbitration agreement exists; and

  2. State the exact date this document was first reviewed by Defendant or its counsel.

- **Reconcile with Rule 11:** If Defendant admits it did not have the signed agreement when it filed its Answer, it must state the factual basis for its **Sixth Affirmative Defense** or immediately move to withdraw said defense to avoid a Motion for Sanctions for frivolous pleading.

- **Advisory Note:** Defendant is advised that asserting a "lack of knowledge" regarding the evidence for its own affirmative defense is a violation of the duty of candor. Failure to provide an unqualified admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted **and a request for sanctions for the bad-faith use of sham denials.**

### Request for Admission No. 35

### Request:

Admit that PRA cannot identify a document created before April 7, 2024 that allowed PRA to make the Inquiry.

**Response:**

**OBJECTION:** PRA objects to the terms "allowed" and "created" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the terms "document," "Inquiry" and "identify" as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving its foregoing objections, denied. 36. Admit that PRA cannot identify a document that states Plaintiff agreed to the April 7, 2024 Inquiry.

**Deficiency:**

- **The "Ownership Date" Paradox:** By issuing a flat denial, Defendant is swearing under penalty of perjury that it **can** identify a document created *before* April 7, 2024, that authorized its Inquiry. However, as established throughout this discovery process,

the **Bill of Sale (PRA_JENKINS_000001)** contains a **redacted transfer date**. If that date is April 8, 2024, or later, then as a matter of law, no document existed on April 7 that "allowed" Defendant—a then-stranger to the debt—to access the Plaintiff's private credit data.

- **Willful Concealment of "Authorization" Instruments:** If such a document exists, it is not found in the 75-page production (**PRA_JENKINS_000001–000075**). The Bill of Sale references a **Master Account Sale Agreement (MASA)** and an **Account Sale Addendum**, yet Defendant has withheld these documents. Defendant cannot deny that it "cannot identify" a document while simultaneously refusing to produce the very documents that would substantiate its denial.

- **Semantic Obstruction of Statutory Authority:** Objecting to the word "allowed" as a "legal conclusion" is a frivolous attempt to avoid the core factual issue of the case: **Permissible Purpose**. Under the FCRA, an entity is either "allowed" (permitted) to pull credit or it is not. By objecting to this term, Defendant is attempting to block discovery into its own internal determination—or lack thereof—of its legal authority on April 7, 2024.

- **Contradiction of the Seventh Affirmative Defense (Truth):** Defendant asserts its actions were "true." If Defendant pulled credit before the legal transfer of the account was finalized, it had no truthful basis for its claim of "permissible purpose." Maintaining a denial while hiding the evidence of the transfer date is an act of procedural bad faith.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "legal conclusion" objections.

- **Provide an Unqualified Admission** if Defendant cannot produce a document, dated **on or before April 7, 2024**, that explicitly grants PRA the legal right to access the Plaintiff's consumer report.

- **Identify the Specific Document:** If Defendant persists in its denial, it **must** identify the document by Bates number and provide the **unredacted creation date**.

- **Un-redact the Bill of Sale:** To maintain this denial in good faith, Defendant **must** provide the unredacted date on **PRA_JENKINS_000001** to prove the transfer preceded the Inquiry.

- **Advisory Note:** Defendant is advised that "playing word games" with the timing of its debt acquisition is a violation of the duty of candor. If discovery reveals the "authorization" document was created or became effective *after* the Inquiry, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of false denials.**

**Request for Admission No. 36**

**Request:**

Admit that PRA cannot identify a document that states Plaintiff agreed to the April 7, 2024 Inquiry.

**Response:**

**OBJECTION:** PRA objects to the term "agreed" as vague and ambiguous because said term is undefined and as calling for a legal conclusion and as argumentative. PRA objects to Plaintiff's definition of the terms "document," "Inquiry" and "identify" as calling for legal conclusions and as argumentative.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the term "agreed," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Business Records:** Defendant's claim that it "lacks knowledge or information sufficient" to admit or deny this Request is a procedural sham. Defendant has produced its entire account file in **PRA_JENKINS_000001–000075**. A "reasonable inquiry" under **Rule 36** requires Defendant to look at its own 75-page production to see if a document exists where the Plaintiff "agreed" to a credit pull. If such a document is not in the file, Defendant has a mandatory duty to admit its absence. Claiming a lack of knowledge about its own certified records is an act of bad faith.

- **Semantic Obstruction of "Agreed":** Objecting to the term "agreed" as "vague" and "undefined" is a frivolous attempt to ignore the core of the **Fair Credit Reporting Act (FCRA)**. Consent and agreement are foundational factual concepts. Under **15 U.S.C. § 1681b(a)(2)**, a credit report may be furnished "in accordance with the written instructions of the consumer to whom it relates." By objecting to the word "agreed," Defendant is attempting to block discovery into the fact that it never obtained the Plaintiff's consent before the Inquiry.

- **The "Strangers to the Debt" Conflict:** As established in RFAs 22–30, Defendant is a third-party debt buyer. As a matter of corporate reality, Defendant does not have "agreements" with consumers; it has "purchase agreements" with sellers. For Defendant to deny this Request while its own production contains no application, no signed contract, and no consent form is a demonstrably false statement of fact.

- **Contradiction of Affirmative Defenses:** In its **Sixth Affirmative Defense**, Defendant asserts a right to **arbitrate** based on an "original agreement." Defendant cannot claim an agreement is specific enough to force arbitration but "vague and ambiguous" when asked if that agreement allowed for a credit inquiry.

**Cure Required:**

- **Immediately withdraw** the "vague," "legal conclusion," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that, based on information **presently known or readily obtainable**, Defendant cannot identify a document where the Plaintiff agreed to the April 7, 2024 Inquiry.

- **Identify the Document of Consent:** If Defendant persists in its denial (thereby claiming the Plaintiff **did** agree), it **must** identify by Bates number where in **PRA_JENKINS_000001–000075** a document exists that contains the Plaintiff's express or implied consent for PRA to access their credit report.

- **Reconcile with Business Model:** If the "agreement" Defendant relies upon is actually a clause in a contract with a **third-party creditor** (e.g., Synchrony or Citibank), Defendant must state whether it actually reviewed that specific clause **before** making the Inquiry.

- **Advisory Note:** Defendant is advised that "standing on objections" to avoid admitting the absence of consumer consent is an act of bad faith. Failure to provide an unqualified admission based on its current records will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted and a request for sanctions.

## Request for Admission No. 37

**Request:**

Admit that you have a Policy regarding the procurement of consumer credit reports.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "policy" and "consumer reports" as calling for legal conclusions and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policy or process by which PRA allegedly accesses consumer credit reports are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving the foregoing objections, PRA admits it has a policy or procedure regarding the receipt of consumer credit information. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **The "Receipt" vs. "Procurement" Shell Game:** Defendant's response is a transparent attempt to move the goalposts. Plaintiff asked about the **procurement** (the active act of obtaining) of credit reports. Defendant "admitted" to a policy regarding the **receipt** (a passive act of getting) of "information." This subtle linguistic pivot is designed to avoid admitting that PRA has an active, intentional process for pulling consumer reports. Under the FCRA, liability is often based on how an entity *obtains* or *procures* a report, not just how they "receive" data.

- **The "Relevance" Fallacy (Willfulness and Negligence):** Defendant's objection that its policies are "not relevant" is legally bankrupt. In any FCRA action, the Defendant's internal policies and procedures are the **primary evidence** used to determine whether a violation was "willful" (15 U.S.C. § 1681n) or "negligent" (15 U.S.C. § 1681o). If Defendant's policy allows for "blind batch pulls" without verifying the chain of title first, that policy is the "smoking gun" for a willful violation. Defendant cannot unilaterally decide that the evidence of its own state of mind is "irrelevant."

- **Frivolous Semantic Objections:** Objecting to the terms "policy" and "consumer reports" as "legal conclusions" is an act of procedural bad faith. "Policy" is a standard business fact, and "consumer report" is the specific statutory term at the heart of this litigation. Defendant—a sophisticated multi-billion dollar debt buyer—cannot claim these terms are too "vague" or "argumentative" to address directly.

- **Failure of the "Reasonable Procedures" Defense:** If Defendant intends to argue it has "reasonable procedures" to avoid FCRA violations, it cannot simultaneously object to the discovery of those very procedures as "irrelevant."

**Cure Required:**

- **Immediately withdraw** the "relevance," "legal conclusion," and "proportionality" objections.

- **Provide an Unqualified Admission** that PRA has a written policy or procedure regarding the **procurement** of consumer credit reports (as defined by the FCRA).

- **Identify the Document by Name:** If Defendant persists in its "Receipt" vs. "Procurement" distinction, it must state whether a separate policy exists for the **active inquiry** of credit reports versus the **passive data intake** of account files.

- **Reconcile with the Duty of Candor:** Defendant must explain how its internal compliance manual—which governs its "permissible purpose" determinations—could possibly be "irrelevant" to a lawsuit centered entirely on a "permissible purpose" violation.

- **Advisory Note:** Defendant is advised that shielding its compliance policies from discovery while claiming to act in good faith is a violation of the duty of candor. Failure to provide a straightforward admission will result in a **Rule 36(a)(6)** motion to have the matter deemed admitted and a request for the production of the unredacted policy in full.

## Request for Admission No. 38

### Request:

Admit that you have Procedures in place to ensure compliance with your Policy.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the terms "policy" and "procedures" as calling for legal conclusions and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policy or procedures by which PRA allegedly accesses consumer credit reports are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** PRA admits it has a policy or procedure regarding the receipt of consumer credit information. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Bad-Faith Semantic Redefinition:** This response is a mirror of the evasion in RFA No. 37. Plaintiff requested an admission regarding procedures to ensure **compliance** with a policy. Defendant responded by admitting only to a policy regarding the **receipt** of information. "Receipt" is a passive administrative function; "Compliance" is a mandatory legal obligation under the FCRA. By refusing to admit it has procedures to ensure compliance, Defendant is essentially suggesting it operates without oversight, which is a hallmark of a **willful violation** under 15 U.S.C. §1681n.

- **The "Willfulness" Relevance Fallacy:** Defendant's objection that its procedures are "not relevant" is a gross misstatement of FCRA law. Internal compliance procedures are the **primary evidence** used to determine whether a violation was "willful" or "negligent." If Defendant's procedures failed to prevent an unauthorized credit pull on

April 7, 2024, the nature of those procedures (or the lack thereof) determines the level of statutory and punitive damages. Defendant cannot unilaterally declare its own state of mind and corporate conduct "irrelevant."

- **The "Reasonable Procedures" Paradox:** Under the FCRA, entities often attempt to shield themselves from liability by claiming they maintain "reasonable procedures" to avoid errors. Defendant cannot—in good faith—object to the discovery of its procedures as "irrelevant" while potentially intending to use those same procedures as a legal shield later in this litigation.

- **Frivolous "Legal Conclusion" Objection:** Objecting to the word "procedures" as a "legal conclusion" is a transparent stalling tactic. A "procedure" is a factual business record (a manual, a flowchart, or a software protocol). It is a binary fact: either a written procedure exists, or it does not.

**Cure Required:**

- **Immediately withdraw** the "relevance," "legal conclusion," and "argumentative" objections.

- **Provide an Unqualified Admission** that PRA maintains written **Procedures** specifically designed to ensure **compliance** with the Fair Credit Reporting Act (FCRA) and its own internal Procurement Policies.

- **Distinguish "Receipt" from "Compliance":** Defendant must clarify whether its "procedures" actually govern the **legality** of pulling a credit report or if they are merely limited to the technical act of "receiving" data from a bureau.

- **Reconcile with the Duty of Candor:** Defendant must state whether these "procedures" were followed or bypassed during the automated or manual process that led to the April 7, 2024 Inquiry.

- **Advisory Note:** Defendant is advised that "standing on objections" to shield its compliance framework is an act of procedural bad faith. If Defendant refuses to admit it has compliance procedures, Plaintiff will move for **Rule 36(a)(6)** to have the matter deemed admitted, establishing for the Court that Defendant operates with no regard for FCRA compliance.

## Request for Admission No. 39

**Request:**

Admit that your Procedures are designed to ensure compliance with the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to Plaintiff's definition of the term "procedures" as calling for a legal conclusion and as argumentative. PRA objects to the phrase "compliance with the Fair Credit Reporting Act" as vague, ambiguous, calling for a legal conclusion, and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policies or procedures of PRA are not relevant to this action nor proportional to the needs of this case.

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "compliance with the Fair Credit Reporting Act," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Statutory Compliance:** Defendant's claim that it "lacks knowledge or information sufficient" to admit whether its own procedures are designed to comply with the Fair Credit Reporting Act (FCRA) is a procedural sham. Defendant is a sophisticated, multi-billion dollar debt buyer and a "nationwide debt collector" that is legally required to operate under the FCRA. Claiming that the phrase "compliance with the Fair Credit Reporting Act" is "vague and ambiguous" is a bad-faith attempt to avoid admitting a foundational corporate fact.

- **The "Willfulness" Relevance Fallacy:** Defendant repeatedly asserts that its procedures are "not relevant." This is a gross misstatement of the law. Under **15 U.S.C. §1681n**, the court must determine if a violation was **willful** (reckless disregard for the law). An entity's internal procedures—or the lack thereof—are the primary evidence of its state of mind. If Defendant's procedures are not designed to ensure FCRA compliance, it is *per se* reckless. By shielding these procedures, Defendant is attempting to block the Plaintiff from proving the "Willfulness" element of the claim.

- **Semantic Obstruction of Industry Standards:** Objecting to the term "compliance" as a "legal conclusion" is frivolous. For a regulated financial entity, "compliance" is a factual department, a factual budget line, and a factual set of manuals. It is not a "vague" concept; it is the mandatory standard by which Defendant is allowed to access the private credit data of American consumers.

- **Contradiction of Corporate Governance:** Defendant's denial implies that its procedures might *not* be designed for FCRA compliance. This creates a "Rule 11" conflict for Defendant's counsel; if the procedures are not designed for compliance,

any defense asserting "reasonable procedures" or "good faith" is a knowing misrepresentation to the Court.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "relevance" objections regarding the phrase "compliance with the Fair Credit Reporting Act."

- **Provide an Unqualified Admission** that Defendant's internal procedures are, in fact, designed to ensure compliance with the FCRA.

- **Explain the Evasion:** If Defendant persists in its "lack of knowledge" response, it must state under oath whether it operates its debt acquisition and credit inquiry business **without** any regard for the requirements of the FCRA.

- **Reconcile with Business Identity:** Defendant must explain how it can claim to be a "lawful" debt buyer while simultaneously objecting to the concept of "FCRA compliance" as being "vague" and "not relevant."

- **Advisory Note:** Defendant is advised that "playing dumb" about its own compliance department is an act of bad faith. If Defendant continues to maintain that it "lacks knowledge" of whether it tries to follow the law, Plaintiff will move for **Rule 36(a)(6) sanctions** and will present this response to the Court as evidence of **willful and reckless corporate conduct.**

<u>**Request for Admission No. 40**</u>

<u>**Request:**</u>

<u>Admit that when you procured Plaintiff's consumer report on April 7, 2024, you followed your established procedures.</u>

**Response:**

**OBJECTION:** PRA objects to phrase "followed your established procedures" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." The policies or procedures by which PRA allegedly accessed Plaintiff's consumer credit report are not relevant to this action nor proportional to the needs of this case. PRA objects to this Request as calling for a legal conclusion and as argumentative, generally, because it assumes PRA "procured" Plaintiff's "consumer report."

**RESPONSE:** Reserving and not waiving the foregoing objections, based on the vague and ambiguous nature of the phrase "followed your established procedures," PRA is without knowledge or information sufficient to admit or deny this request and for that reason, denies this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" of Internal Conduct:** Defendant's claim that it "lacks knowledge or information sufficient" to admit or deny whether it followed its own procedures on April 7, 2024, is a procedural sham. As a "nationwide debt collector" and a sophisticated financial entity, Defendant maintains electronic audit trails and "event logs" for every credit inquiry it initiates. To satisfy the "reasonable inquiry" requirement of **Rule 36**, Defendant is required to check its own internal logs. Claiming it "does not know" if it followed its own rules during the act that triggered this lawsuit is an act of bad faith.

- **The "Procured" Evasion (Bad Faith):** Defendant objects to the Request because it "assumes PRA 'procured' Plaintiff's consumer report." This is an act of procedural bad faith. Defendant has already produced the account file (**PRA_JENKINS_000001– 000075**) which contains the very data that would be obtained *only* through such a procurement. To object to the word "procured"—the specific statutory term used in the FCRA—is a transparent attempt to block discovery into the central event of the litigation.

- **Direct Contradiction of RFAs 37–39:** In the preceding responses, Defendant admitted it has "policies or procedures regarding the receipt of consumer credit information." It is logically and legally bankrupt for Defendant to admit it has procedures, but then claim the phrase "followed your established procedures" is "vague and ambiguous." Either the procedures were followed, or they were bypassed; there is no "vague" third option.

- **The "Willfulness" Relevance Fallacy:** Defendant repeatedly asserts that its procedures are "not relevant." As stated in RFAs 37–39, an entity's adherence to (or departure from) its internal compliance protocols is the **primary evidence** used to determine **Willfulness** under **15 U.S.C. §1681n**. If Defendant bypassed its own "Chain of Title" verification procedures on April 7, the violation is *per se* willful. By shielding this fact, Defendant is attempting to unlawfully limit the Plaintiff's statutory damages.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "relevance" objections.

- **Provide an Unqualified Admission** if Defendant's internal audit logs show that the April 7, 2024 Inquiry was processed according to its standard, automated, or manual protocols.

- **Identify the Audit Trail:** If Defendant persists in its "lack of knowledge" response, it **must** state:

  1. Whether it has reviewed its internal **Log Files**, **Access Records**, or **Data Intake Audits** for the date of April 7, 2024; and

  2. Whether those records show any "Exceptions" or "Overrides" occurred during the procurement of the Plaintiff's report.

- **Reconcile with the "Current Knowledge" Standard:** Defendant must explain how it can claim to be "without knowledge" of its own actions on the specific date it allegedly acquired the Plaintiff's private data, especially when it has already certified its production of the resulting account file.

- **Advisory Note:** Defendant is advised that "playing dumb" regarding its own electronic audit trails is a violation of the duty of candor. If discovery (via a Rule 30(b)(6) deposition or computer forensics) reveals that Defendant bypassed its procedures or that an audit trail exists which Defendant failed to "reasonably inquire" into, Plaintiff will move for **sanctions for the bad-faith use of sham denials.**

## Request for Admission No. 41

**Request:**

Admit that you are subject to the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to the term "subject" as vague and ambiguous because said terms is undefined and as calling for a legal conclusion and as argumentative. PRA objects to this Request as overly broad and unduly burdensome because it is unlimited in time.

**RESPONSE:** Reserving and not waiving its foregoing objections, PRA admits that in certain instances and circumstances, its actions or conduct is subject to the Fair Credit Reporting Act. PRA denies the remainder of this Request.

**Deficiency:**

- **Bad-Faith Hedge on Statutory Authority:** Defendant's response is a transparent attempt to evade the court's jurisdiction and the mandatory nature of the **Fair Credit Reporting Act (FCRA)**. By admitting it is subject to the Act only in "certain instances and circumstances," Defendant is attempting to unilaterally define when the law applies to its conduct. As a "nationwide debt collector" and a "user" of consumer

reports, Defendant is **subject to the FCRA as a matter of law** whenever it procures or uses consumer data.

- **Frivolous "Unlimited in Time" Objection:** Defendant's objection that being subject to the law is "unlimited in time" is nonsensical. The FCRA is a standing federal statute. One does not "limit the time" during which they are required to follow federal law. This is a bad-faith stalling tactic designed to avoid a straightforward admission of its legal obligations.

- **Semantic Obstruction of "Subject":** Objecting to the word "subject" as "vague" and "undefined" is frivolous. This is a standard legal and English term. For a multi-billion dollar entity that maintains a massive "Compliance" department, claiming it does not understand if it is "subject" to the very law it is being sued under is an act of procedural bad faith.

- **The "Denial of Remainder" Paradox:** By "denying the remainder" of the Request, Defendant is essentially swearing that there are "instances and circumstances" where it can pull consumer credit reports while **not** being subject to the FCRA. This is a legally impossible position. Under **15 U.S.C. § 1681**, any entity that procures a consumer report is a "user" and is strictly bound by the Act's requirements.

**Cure Required:**

- **Immediately withdraw** the "vague," "ambiguous," and "unlimited in time" objections.

- **Provide an Unqualified Admission** that PRA is a "person" (as defined by 15 U.S.C. § 1681a(b)) and a "user" of consumer reports subject to the requirements and liabilities of the Fair Credit Reporting Act.

- **Define the "Instances":** If Defendant persists in its qualified denial, it **must** specifically identify the "instances and circumstances" where it believes it is *not* subject to the FCRA when procuring a consumer report.

- **Reconcile with Business Model:** Defendant must state whether it considers the April 7, 2024 Inquiry to be one of the "certain instances" where it was subject to the Act.

- **Advisory Note:** Defendant is advised that "standing on objections" regarding the applicability of federal law is a violation of the duty of candor. If Defendant continues to maintain that it is only "sometimes" bound by the FCRA, Plaintiff will move for **Rule 36(a)(6)** to have the matter deemed admitted and will seek a judicial finding that Defendant's evasion constitutes evidence of a **willful and reckless disregard for the law.**

## Request for Admission No. 42

**Request:**

Admit that on April 7, 2024, you had a contract or service agreement with Equifax to procure consumer reports.

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "procured" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with Equifax to procure consumer reports" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Vendor Relationships:** Defendant's claim that it "lacks knowledge or information sufficient" to admit whether it had a contract with Equifax on April 7, 2024, is a procedural absurdity. PRA is a multi-billion dollar corporation whose business model relies entirely on accessing consumer data from major credit bureaus. The existence of a service agreement with Equifax is a binary fact easily verified by a five-minute search of Defendant's legal, procurement, or IT departments. Claiming a "lack of knowledge" here is an act of extreme bad faith.

- **The "Relevance" Fallacy (Certification of Purpose):** Defendant's objection that its contract with Equifax is "not relevant" is legally bankrupt. Under **15 U.S.C. § 1681e(a)**, every person who procures a consumer report must certify the **purposes** for which the information is sought. The contract or service agreement contains the mandatory "Permissible Purpose Certification" that Defendant provided to Equifax. This document is the primary evidence of what Defendant *represented* its purpose was at the time of the Inquiry.

- **The "Confidentiality" Shield:** A "duty of confidentiality" to a third party (Equifax) does not shield a document from discovery. If such a duty exists, the proper remedy is

a **Protective Order**, not a total refusal to admit the existence of the agreement. Using a private contract to block a federal discovery request is a violation of the duty of candor.

- **Semantic Obstruction of Statutory Terms:** Objecting to the word "procured" is frivolous. "Procured" is the specific statutory term used throughout the FCRA to describe the act of obtaining a report. Defendant—a sophisticated "user" of reports—cannot claim it does not understand the very law it is required to follow daily.

**Cure Required:**

- **Immediately withdraw** the "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that on April 7, 2024, PRA maintained a contract or service agreement with Equifax that allowed for the procurement of consumer reports.

- **Identify the Certification:** If Defendant persists in its denial (thereby claiming it had no contract), it **must** state the legal basis upon which it obtained the Plaintiff's private data from Equifax on April 7, 2024.

- **Reconcile with Business Operations:** Defendant must explain how its "reasonable investigation" failed to uncover a contract with one of the only three major credit bureaus in the United States.

- **Advisory Note:** Defendant is advised that "standing on objections" to hide its vendor certifications is an act of procedural bad faith. If discovery reveals that Defendant pulled the report under a "General Collection" certification while lacking the specific "Chain of Title" for this account, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

### Request for Admission No. 43

### Request:

Admit that your contract or service agreement with Equifax requires you to comply with the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "procured" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff

claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with Equifax [that] requires [PRA] to comply with the Fair Credit Reporting Act" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Contractual Obligations:** Defendant's claim that it "lacks knowledge or information sufficient" to admit whether its contract with Equifax requires compliance with the FCRA is a procedural sham. Every standard service agreement provided by a Credit Reporting Agency (CRA) like Equifax contains a mandatory "Compliance with Laws" provision, specifically citing the **Fair Credit Reporting Act**. To suggest that a multi-billion dollar entity does not know the fundamental compliance requirements of its own vendor contracts is an act of extreme bad faith.

- **The "Willfulness" Relevance Fallacy:** Defendant objects that its contractual duties to Equifax are "not relevant." This is a gross misstatement of the law. **Under 15 U.S.C. §1681n**, the court must determine if a violation was **willful**. If Defendant's contract with Equifax explicitly warned PRA that it must verify "permissible purpose" before a pull, and PRA ignored that contractual duty on April 7, 2024, that contract becomes a primary piece of evidence proving a **willful and reckless disregard** for the law.

- **The "Confidentiality" Shield:** As established in RFA 42, a private confidentiality clause with Equifax cannot be used as a shield to block a federal discovery request regarding statutory compliance. Using a third-party contract to hide whether PRA is legally required to follow the FCRA is a violation of the duty of candor.

- **Semantic Obstruction of "Contract":** Objecting to the term "contract" as "vague" is frivolous. A contract is a factual business record. Defendant is either a party to such an agreement, or it is not. Claiming it does not understand the word "contract" to avoid admitting it has a duty to follow the law is a bad-faith tactic.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that its agreement with Equifax requires PRA to comply with the Fair Credit Reporting Act when procuring consumer reports.

- **Identify the Compliance Provision:** If Defendant persists in its "lack of knowledge" response, it **must** state whether it has reviewed the **"Subscriber Agreement"** or **"Service Level Agreement"** that was in effect with Equifax on April 7, 2024.

- **Reconcile with FCRA Certification:** Under **15 U.S.C. § 1681e(a)**, Defendant must certify its purpose to the CRA. Defendant must state whether its contract requires a **general** certification of purpose or a **specific** certification for each individual inquiry.

- **Advisory Note:** Defendant is advised that "playing dumb" regarding its contractual duties is an act of procedural bad faith. If discovery reveals that Defendant's contract with Equifax specifically prohibited the type of inquiry made on April 7 (e.g., a pre-acquisition pull), Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

## Request for Admission No. 44

**Request:**

Admit that on April 7, 2024, you had a contract or service agreement with Experian to procure consumer reports.

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "procured" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with Experian to procure consumer reports" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request..

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Primary Vendors:** Defendant's claim that it "lacks knowledge or information sufficient" to admit whether it had a contract with Experian on April 7, 2024, is a procedural sham. Experian is one of the "Big Three" credit bureaus. For a multi-billion dollar debt buyer like PRA—whose entire revenue stream depends on consumer data—to claim it cannot verify its relationship with a primary data provider is an act of extreme bad faith. This information is a binary business fact residing in Defendant's legal or procurement database and can be verified in minutes.

- **The "Relevance" Fallacy (Certification of Purpose):** Defendant objects that its contract with Experian is "not relevant." This is a gross misstatement of FCRA law. Under **15 U.S.C. §1681e(a)**, every person who procures a consumer report must certify the **purposes** for which the information is sought. The Experian contract contains the mandatory "Permissible Purpose Certification" that Defendant provided to obtain the Plaintiff's data. This document is the primary evidence of what Defendant *represented* its purpose was at the time of the Inquiry.

- **The "Confidentiality" Shield:** A private duty of confidentiality to Experian does not override a federal discovery request regarding statutory compliance. The proper remedy for confidential business terms is a **Protective Order**, not a total refusal to admit the existence of the legal agreement that authorized the credit pull.

- **Semantic Obstruction of "Procured":** Objecting to the word "procured" is frivolous. "Procured" is the specific statutory term used throughout the FCRA to describe the act of obtaining a consumer report. Defendant—a sophisticated "user" of reports—cannot claim it does not understand the very law it is required to follow daily to avoid admitting its conduct.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that on April 7, 2024, PRA maintained a contract or service agreement with Experian that allowed for the procurement of consumer reports.

- **Identify the Certification:** If Defendant persists in its "lack of knowledge" response, it **must** state the legal basis upon which it obtained the Plaintiff's private data from Experian on April 7, 2024.

- **Reconcile with Business Operations:** Defendant must explain how its "reasonable investigation" failed to uncover a contract with one of the only three major credit bureaus in the United States.

- **Advisory Note:** Defendant is advised that "standing on objections" to hide its vendor certifications is an act of procedural bad faith. If discovery reveals that Defendant pulled the report under a "General Collection" certification while lacking the specific "Chain of Title" for this account, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

### Request for Admission No. 45

**Request:**

Admit that your contract or service agreement with Experian requires you to comply with the Fair Credit Reporting Act.

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "comply" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with Experian [that] requires [PRA] to comply with the Fair Credit Reporting Act" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request.

**Deficiency:**

- **Sham "Lack of Knowledge" of Contractual Terms:** Defendant's claim that it "lacks knowledge" as to whether its contract with Experian—one of its primary data vendors—requires compliance with the Fair Credit Reporting Act is a procedural sham. As a "nationwide debt collector," Defendant is a sophisticated entity with a dedicated legal and compliance department. Every standard subscriber agreement with a Credit Reporting Agency (CRA) contains mandatory clauses requiring strict

adherence to the FCRA. Claiming ignorance of these foundational terms is an act of extreme bad faith.

- **The "Willfulness" Relevance Fallacy:** Defendant objects that its contractual duties to Experian are "not relevant." This is a gross misstatement of the law. Under **15 U.S.C. §1681n**, the court must determine if a violation was **willful** (reckless disregard for the law). If Defendant's contract with Experian explicitly warned PRA that it must verify "permissible purpose" before a pull, and PRA ignored that contractual duty on April 7, 2024, that contract becomes primary evidence proving a willful violation.

- **The "Confidentiality" Shield:** As established in previous responses, a private confidentiality clause with a third-party vendor (Experian) cannot be used to block a federal discovery request regarding statutory compliance. Using a third-party contract to hide whether PRA is legally required to follow the FCRA is a violation of the duty of candor.

- **Semantic Obstruction of "Comply":** Objecting to the word "comply" as "vague and ambiguous" is frivolous. "Compliance" is a standard industry term, a functional department within Defendant's own corporation, and a binary factual state regarding a party's adherence to a statute.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that its agreement with Experian requires PRA to comply with the Fair Credit Reporting Act when procuring consumer reports.

- **Identify the Compliance Provision:** If Defendant persists in its "lack of knowledge" response, it **must** state whether it has reviewed the **"Subscriber Agreement"** or **"Service Level Agreement"** that was in effect with Experian on April 7, 2024.

- **Reconcile with the Duty of Candor:** Defendant must explain how it can claim to be a "lawful" debt buyer while simultaneously claiming it does not know if its own vendor contracts require it to follow the law.

- **Advisory Note:** Defendant is advised that "playing dumb" regarding its contractual duties is an act of procedural bad faith. If discovery reveals that Defendant's contract with Experian specifically prohibited the type of inquiry made on April 7, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

## Request for Admission No. 46

**Request:**

<u>Admit that on April 7, 2024, you had a contract or service agreement with Transunion to procure consumer reports.</u>

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "procured" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with TransUnion to procure consumer reports" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request. Discovery is ongoing and PRA reserves the right to supplement and/or amend its Response to this Request..

**Deficiency:**

- **Sham "Lack of Knowledge" Regarding Primary Vendors:** Defendant's claim that it "lacks knowledge or information sufficient" to admit whether it had a contract with TransUnion on April 7, 2024, is a procedural sham. TransUnion is the third of the "Big Three" credit bureaus. For a multi-billion dollar debt buyer whose entire revenue stream depends on consumer data, claiming it cannot verify its relationship with a primary data provider is an act of extreme bad faith. This information is a binary business fact residing in Defendant's legal or procurement database and can be verified in minutes.

- **The "Relevance" Fallacy (Certification of Purpose):** Defendant objects that its contract with TransUnion is "not relevant." This is a gross misstatement of FCRA law. Under **15 U.S.C. §1681e(a)**, every person who procures a consumer report must certify the **purposes** for which the information is sought. The TransUnion contract contains the mandatory "Permissible Purpose Certification" that Defendant provided to obtain the Plaintiff's data. This document is the primary evidence of what Defendant *represented* its purpose was at the time of the Inquiry.

- **The "Confidentiality" Shield:** A private duty of confidentiality to TransUnion does not override a federal discovery request regarding statutory compliance. The proper

remedy for confidential business terms is a **Protective Order**, not a total refusal to admit the existence of the legal agreement that authorized the credit pull.

- **Semantic Obstruction of "Procured":** Objecting to the word "procured" is frivolous. "Procured" is the specific statutory term used throughout the FCRA to describe the act of obtaining a consumer report. Defendant—a sophisticated "user" of reports—cannot claim it does not understand the very law it is required to follow daily to avoid admitting its conduct.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that on April 7, 2024, PRA maintained a contract or service agreement with TransUnion that allowed for the procurement of consumer reports.

- **Identify the Certification:** If Defendant persists in its "lack of knowledge" response, it **must** state the legal basis upon which it obtained the Plaintiff's private data from TransUnion on April 7, 2024.

- **Reconcile with Business Operations:** Defendant must explain how its "reasonable investigation" failed to uncover a contract with one of the only three major credit bureaus in the United States.

- **Advisory Note:** Defendant is advised that "standing on objections" to hide its vendor certifications is an act of procedural bad faith. If discovery reveals that Defendant pulled the report under a "General Collection" certification while lacking the specific "Chain of Title" for this account, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

<u>**Request for Admission No. 47**</u>

<u>**Request:**</u>

<u>Admit that your contract or service agreement with Transunion requires you to comply with the Fair Credit Reporting Act.</u>

**Response:**

**OBJECTION:** PRA objects to terms "contract," "service agreement," and "comply" as vague and ambiguous because said terms are undefined and as calling for legal conclusions and as argumentative. PRA objects to Plaintiff's definition of the phrase "consumer report" as calling for a legal conclusion and as argumentative. PRA objects to this Request as seeking information not relevant to the parties' claims or defenses nor proportional to the needs of this case. Plaintiff

claims PRA violated the FCRA by accessing his credit report without a "permissible purpose." The relevant inquiry in this case is whether PRA had a "permissible purpose." Whether PRA maintained a "contract or service agreement with TransUnion [that] requires [PRA] to comply with the Fair Credit Reporting Act" is not relevant to this action nor proportional to the needs of this case. PRA objects to this Request to the extent it requests information that is subject to a duty of confidentiality that PRA owes to a third party.

**RESPONSE:** Reserving and not waiving the foregoing objections, after a reasonable investigation, PRA is without knowledge or information sufficient to admit or deny this request.

**Deficiency:**

- **Sham "Lack of Knowledge" regarding Contractual Obligations:** Defendant's assertion that it "lacks knowledge" as to whether its contract with TransUnion requires compliance with the Fair Credit Reporting Act is a procedural sham. As a sophisticated "nationwide debt collector" and a frequent litigant in federal court, Defendant is well aware that every service agreement with a Credit Reporting Agency (CRA) contains mandatory clauses requiring strict adherence to the FCRA. Claiming ignorance of these foundational terms in its own active vendor contracts is an act of extreme bad faith.

- **The "Willfulness" Relevance Fallacy:** Defendant objects that its contractual duties to TransUnion are "not relevant." This is a gross misstatement of the law. Under **15 U.S.C. §1681n**, the court must determine if a violation was **willful** (reckless disregard for the law). If Defendant's contract with TransUnion explicitly warned PRA that it must verify "permissible purpose" before a pull, and PRA ignored that contractual duty on April 7, 2024, that contract becomes primary evidence of a willful violation.

- **The "Confidentiality" Shield:** As established in previous responses, a private confidentiality clause with a third-party vendor (TransUnion) cannot be used to block a federal discovery request regarding statutory compliance. Using a third-party contract to hide whether PRA is legally required to follow the FCRA is a violation of the duty of candor.

- **Semantic Obstruction of "Comply":** Objecting to the word "comply" as "vague and ambiguous" is frivolous. "Compliance" is a standard industry term, a functional department within Defendant's own corporation, and a binary factual state regarding a party's adherence to a statute.

**Cure Required:**

- **Immediately withdraw** the "vague," "relevance," "confidentiality," and "lack of knowledge" objections.

- **Provide an Unqualified Admission** that its agreement with TransUnion requires PRA to comply with the Fair Credit Reporting Act when procuring consumer reports.

- **Identify the Compliance Provision:** If Defendant persists in its "lack of knowledge" response, it **must** state whether it has reviewed the **"Subscriber Agreement"** or **"Service Level Agreement"** that was in effect with TransUnion on April 7, 2024.

- **Reconcile with Business Identity:** Defendant must explain how it can claim to be a "lawful" debt buyer while simultaneously claiming it does not know if its own vendor contracts require it to follow the law.

- **Advisory Note:** Defendant is advised that "playing dumb" regarding its contractual duties is an act of procedural bad faith. If discovery reveals that Defendant's contract with TransUnion specifically prohibited the type of inquiry made on April 7, Plaintiff will move for **Rule 36(a)(6) sanctions for the bad-faith use of sham denials.**

## Closing

Defendant's conduct across Interrogatories, Requests for Production, and Requests for Admission — and its failure to properly serve its initial disclosures — reflects a single, coordinated pattern of discovery obstruction.  Defendant's responses assert boilerplate objections ("overly broad," "vague and ambiguous", "irrelevant and immaterial," "proprietary/confidential," and "not limited in time,") and withhold documents without a privilege log as required by FRCP 26(b)(5).  Defendant continues to invoke "confidential" and "proprietary" objections despite the Plaintiff's efforts to finalize a Protective Order since December 19, 2025, and Defendant's subsequent **bad-faith delay** following its unfulfilled promise on January 29, 2026, to provide revisions 'shortly.' Defendant is prohibited from using a self-created blockade as a shield to withhold discovery. These tactics have deprived Plaintiff of meaningful discovery on core issues such as permissible purpose, what documents existed before the credit pull that supports the defendant's claim of permissible purpose and reason given to verify the permissible purpose end-user identity.

Plaintiff respectfully demands that Defendant cure every procedural and substantive deficiency within seven (7) calendar days (on or before February 19, 2026) of this letter by serving full, verified, and specific amended responses to all discovery, producing a complete privilege/confidentiality log, and properly serving its initial disclosures.  Absent full compliance, Plaintiff will move under FRCP 36(a)(6) and FRCP 37 for an order deeming matters admitted, compelling production, compelling supplemental verification under oath, and awarding appropriate sanctions for willful noncompliance.

Plaintiff explicitly reserves the right to move for sanctions under **FRCP 37(c)(1)**, including evidence preclusion, for any information or witnesses that should have been disclosed in Initial Disclosures or these discovery responses but were withheld.  The prejudice caused by this

delay—specifically the inability to prepare a rebuttal to unstated affirmative defenses—is substantial and ongoing

Respectfully,

*/s/*Jarrett R. Jenkins_____
Jarrett R. Jenkins, Plaintiff
334 Locust Street, Apt. 1
West Hempstead, NY 11552
516-688-0078
jrobertjenkins@gmail.com

## CERTIFICATE OF SERVICE

February 12, 2026

Jarrett R. Jenkins
334 Locust Street, Apt. 1
West Hempstead, NY 11552
516-688-0078
jrobertjenkins@gmail.com

I hereby certify under the penalty of perjury that I served a copy of "Plaintiff's Deficiency Demand and Cure Letter containing Sections A, B & C dated February 12, 2026 , in reference to 2:25-cv-06081-NCM-ST on Stephen J. Steinlight of Troutman Pepper Locke, LLP at 875 Third Avenue New York, NY 10022, by USPS First Class Certified Mail (9589 0710 5270 2231 7889 07) & I emailed counsel at stephen.steinlight@troutman.com.

/s/Jarrett R. Jenkins
Jarrett R. Jenkins (Plaintiff)

# EXHIBIT - 7

Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022

troutman.com



**Stephen J. Steinlight**
212.704.6008
stephen.steinlight@troutman.com

February 19, 2026

**Via Electronic Mail**
Jarrett R. Jenkins
334 Locust Street, Apt. 1
West Hempstead, New York 11552
jrobertjenkins@gmail.com

Re:     *Jenkins v. Portfolio Recovery Associates, LLC*, No. 2:25-cv-6081
         Response to Plaintiff's February 9, 2026 Discovery Deficiency Letter

Mr. Jenkins:

We are in receipt of your 136-page discovery deficiency letter for the above-referenced action dated February 9, 2026. We note that your letter challenges Portfolio Recovery Associates, LLC's ("PRA") responses to every single discovery request propounded in Plaintiff's first set of discovery requests. The request to meet and confer regarding every single one of PRA's responses – or to have PRA supplement every single one of its responses, including after Plaintiff served a second set of discovery requests that consisted of approximately one hundred and eighty seven additional requests for admission and thirty additional requests for production – within one week is vexatious, unduly burdensome, and not proportional to the needs of this case, which alleges a single violation of the Fair Credit Reporting Act.

PRA has produced documents that prove it purchased a debt you originally incurred to Synchrony Bank, including a letter addressed to you directly from Synchrony Bank that informs you that your account was sold to PRA on March 12, 2024. *See* PRA_JENKINS_000067. PRA had a permissible purpose under 15 U.S.C. § 1681(a)(3)(A). Nonetheless, as noted in PRA's responses to your discovery requests, PRA is willing to produce further confidential documents upon the entry of an appropriate protective order.

With respect to the protective order issue, PRA provided you with proposed revisions to the protective order you circulated on February 16, 2026. You have failed to either accept those revisions or otherwise respond. PRA has not waived its right a protective order, nor has it "sabotaged" or "stalled" the process. Your failure to respond productively is the impediment right now, and PRA will unilaterally move for the entry of a protective order if you refuse to accept the current protective order or provide your revisions by close of business on February 23, 2026.



Once a protective order is entered, with your cooperation or otherwise, PRA will supplement its document production and, if necessary, its discovery responses. In the meantime, PRA is willing to meet and confer with you by telephone regarding confidential documents you contend are actually relevant to this matter. However, PRA will not produce any confidential documents until a protective order is on file in this case.

Please provide your availability for a telephonic meet and confer conference for the week of February 23, 2026.

Kind regards,

*/s/ Stephen J. Steinlight*
Stephen J. Steinlight
*Counsel for Defendant*

2

# EXHIBIT - 8



Jarrett Jenkins <jrobertjenkins@gmail.com>

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                                   Fri, Feb 20, 2026 at 7:57 AM
To: "Lozier, Stephen D." <Stephen.Lozier@troutman.com>, "Khattab, Ahmed H." <Ahmed.Khattab@troutman.com>,
stephen.steinlight@troutmansanders.com, LitigationDocketRequests@troutman.com
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>

Mr. Steinlight,

I am in receipt of your email dated February 19, 2026, and the accompanying **attempted service Initial Disclosures**.

**1. Improper Service, Procedural Inconsistencies and Tactical Delays** Plaintiff notes that your response was sent at **8:06 PM** on the final day of the cure period—well after the close of the business day. Furthermore, the **Certificate of Service** (COS) for the Initial Disclosures explicitly states that they were served only "via electronic mail". Plaintiff has not provided written consent for electronic service under **FRCP 5(b)(2)(E)**; therefore, the email sent last night is procedurally ineffective and does not constitute proper service. Defendant is directed to serve these disclosures via physical mail immediately.

Defendant's internal tracking of service is also demonstrably unreliable.

- While the Certificates of Service for your responses to the Second Set of Discovery (dated February 16, 2026) claim that those documents were served by U.S. Mail, Plaintiff has not received any such physical copies as of the date of this email.

- Consequently, those responses remain "pending" and have not been properly served.

- This discrepancy—claiming to have mailed the Second Set while explicitly admitting to bypassing mail for the mandatory Initial Disclosures—reveals a tactical and inconsistent application of the Federal Rules.

**2. Deficient Verification of Interrogatory Responses** Plaintiff further notes that the responses to the **Second Set of Interrogatories** provided via email on February 16th are procedurally defective as they lack the mandatory verification from an officer or duly authorized agent required by **FRCP 33(b)(1)(B)** and **33(b)(3)**. Interrogatory responses are not "complete and correct" until they are provided under oath by the party.

**3. Acceptance of Protective Order Revisions** To eliminate any further pretext for delay, **Plaintiff hereby accepts the redlined revisions** to the Stipulated Protective Order provided by Defendant on February 16, 2026.  However, because the document provided contains active redline corrections, it is not in a form that can be executed. **Defendant is directed to provide a clean, finalized version of the Stipulated Protective Order by the close of business today.** I will sign and return it immediately upon receipt.

It is noted for the record that while Defendant's associate promised these revisions "shortly" on **January 29, 2026**, it took 18 days for your office to deliver minor administrative changes, such as extending a transcript designation period from 10 to 14 days. This 55-day delay in finalizing a standard order rests solely with the Defendant and is the primary cause of the current discovery blockage.

3/5/26, 10:38 AM Gmail - Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (1:25-cv-00608-NCM-ST) Notice of Discovery Deficiencies and Dem…

Case 2:25-cv-00608-NCM-ST Document 11 Filed 03/06/26 Page 166 of 177 PageID #: 220

**4. Continued Default on Initial Disclosures** Even setting aside the improper service, these disclosures are **48 days late**, having been due on January 2, 2026. They remain substantively incomplete as they continue to withhold non-confidential items, such as the **Master Account Sale Agreement (MASA)** and **General Ledger** accounting, which do not require a Protective Order to identify.

**5. The "Chain of Title" Conflict** Regarding your assertions concerning "permissible purpose" and the April 7, 2024, credit pull, the **Bill of Sale** (PRA_JENKINS_000001) confirms a significant evidentiary conflict: every signature on the instrument is dated **March 27, 2024** - 15 days after the alleged "Transfer Date" . Legal transfer of rights is generally effective upon execution, not labeling. Without the **MASA** and **Notification Files**, Defendant has produced only unverified "data," not proof of legal ownership or standing to access Plaintiff's credit data on April 7, 2024.

**Broken Chain of Title:** The Bill of Sale identifies **four separate legal entities** in the "Seller" group but provides zero evidence of the assignments between them.

**6. Rebuttal of "Vexatious" Characterization and "Proportionally" Claims** Plaintiff rejects the claim that the 136-page Notice of Deficiency is "vexatious". This length is a direct result of Defendant providing boilerplate, evasive, and non-responsive answers to **78 individual requests**. Plaintiff is simply enforcing the mandatory "complete and correct" requirements of **Rule 26**. Also, Defendant received the email regarding their deficient response on February 12, 2026, did not object or asked for time to respond but instead responded after the close of business day on the date the deficiencies were due is grossly disingenuous.

Defendant's own behavior proves this claim is meritless: Defendant already completed, verified, and emailed the responses to the Second Set on February 16, 2026.

A party cannot claim a request is a "burden" on the 19th when they already performed the work and hit "send" on the answers three days prior.

**The Second Set of Discovery:** The 187 Requests for Admission (RFAs) and 30 Requests for Production (RFPs) are proportional and necessary because Defendant's first set of responses failed to identify basic facts regarding the **Chain of Title** and **Permissible Purpose**. Under the Federal Rules, Plaintiff is entitled to use discovery to narrow the issues for trial. If Defendant finds the volume "burdensome," it is a burden created by its own initial lack of transparency.

**7. Meet and Confer Availability** Pursuant to Judge Tiscione's rules, and in light of your refusal to cure the 78 itemized deficiencies, I am available for a **telephonic meet-and-confer** on **February 24, 2026, at 10:00 AM**. Please confirm if this time works for your office and provide the exact phone number you can be reached at. If the 24th does not work you, please provide your availability the week of February 23rd. I will make myself available any day next week except Wednesday, February 25, 2026.

Regards,

Jarrett R. Jenkins

[Quoted text hidden]

# EXHIBIT - 9

Case 2:25-cv-06081-NCM-ST Document 11 Filed 03/06/26 Page 168 of 177 PageID #: 222

 **Gmail**

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Lozier, Stephen D.** <Stephen.Lozier@troutman.com>                     Fri, Feb 20, 2026 at 4:15 PM
To: Jarrett Jenkins <jrobertjenkins@gmail.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>

Mr. Jenkins,

Per your request, please find attached the finalized version of the Stipulated Protective Order for your signature.

Regarding the meet and confer conference between the parties, do you have availability on February 26, 2026 at any time between 12:00 p.m. and 4:30 p.m./EST?

Thank you,

**Stephen D. Lozier**
**Associate**
**troutman pepper locke**
Direct: 312.759.3203
stephen.lozier@troutman.com

---

**From:** Jarrett Jenkins <jrobertjenkins@gmail.com>
**Sent:** Friday, February 20, 2026 7:58 AM
**To:** Lozier, Stephen D. <Stephen.Lozier@troutman.com>; Khattab, Ahmed H. <Ahmed.Khattab@troutman.com>; Steinlight, Stephen J. <Stephen.Steinlight@troutman.com>; Litigation Docket Requests <LitigationDocketRequests@troutman.com>
**Cc:** Steinlight, Stephen J. <Stephen.Steinlight@troutman.com>
**Subject:** Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

[Quoted text hidden]

---

📄 **Jenkins v. PRA LLC - Stipulated Protective Order (Track Changes Accepted).docx**
42K

# EXHIBIT - 10

Case 2:25-cv-06081-NCM-ST Document 11 Filed 03/06/26 Page 170 of 177 PageID #: 224

 **Gmail**

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

Jarrett Jenkins <jrobertjenkins@gmail.com>
To: "Lozier, Stephen D." <Stephen.Lozier@troutman.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>

Fri, Feb 20, 2026 at 4:51 PM

Mr. Steinlight,

Pursuant to your correspondence sent at 4:15 PM today, please find the signed **Stipulated Protective Order** attached. As a party to this action, I have signed the Order on **Page 5**.

**1. Meet and Confer Confirmation (Thursday, Feb 26)** I acknowledge your request for a telephonic meet-and-confer on **Thursday, February 26, 2026**. I am available and suggest we begin at **1:00 PM EST**. Please provide the direct dial or conference line for this call.

**2. Deadline for Document Production** To ensure our conference is productive and meaningful, **all responsive documents and supplemental responses must be produced no later than Tuesday, February 24, 2026, by 5:00 PM EST.** Plaintiff cannot evaluate the sufficiency of a production during the call itself. If the production—including the **MASA**, **General Ledger**, and verified responses—is not received by this deadline, the Thursday call will be limited to a discussion of Defendant's ongoing failure to produce.

**3. Procedural Prerequisites** Prior to Tuesday's production deadline, I expect:

- **Initial Disclosures** to be properly served via physical mail, as the late-night email on February 19th is procedurally ineffective.
- **Second Set of Interrogatories** to be supplemented with a mandatory verification signed under oath, as required by **Rule 33(b)**.

Plaintiff is committed to resolving these issues but will not allow the meet-and-confer process to be used as a vehicle for further tactical delays.

Regards,

Jarrett R. Jenkins

[Quoted text hidden]

---

📄 **S_pg_Stipulated_PO_by_Jenkins_4_PRA_case_20Feb26.pdf**
84K

# EXHIBIT - 11

3/5/26, 10:30 AM — Gmail - Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Dem…

Case 2:25-cv-06081-NCM-ST Document 11 Filed 03/06/26 Page 172 of 177 PageID #: 226

 Gmail

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                                                    Thu, Feb 26, 2026 at 11:25 AM
To: "Khattab, Ahmed H." <Ahmed.Khattab@troutman.com>, stephen.steinlight@troutmansanders.com,
LitigationDocketRequests@troutman.com, "Lozier, Stephen D." <Stephen.Lozier@troutman.com>, "Steinlight, Stephen J."
<stephen.steinlight@troutman.com>

Mr. Steinlight,

Plaintiff is ready for the telephonic meet-and-confer scheduled for **today at 1:00 PM EST**, as proposed in my correspondence of February 20th and acknowledged by your office.

As of 11:20 AM today:

- **No Phone Number Provided:** You have not yet provided the direct dial or conference line for this call.

- **Missing Mail Service:** I have still not received the physical mail service of the Second Set of Discovery or the Initial Disclosures, despite your Certificates of Service dated February 16, 2026, claiming they were sent via U.S. Mail .

- **Missed Production Deadline:** You have failed to meet the Tuesday, February 24th deadline to produce the **MASA**, **General Ledger**, and **verified responses** .

**Please provide the contact number for today's 1:00 PM call immediately.** If I do not hear from you, I will document your failure to appear and proceed with a Motion to Compel based on your refusal to confer and ongoing discovery defaults.

Regards,

Jarrett R. Jenkins

[Quoted text hidden]

# EXHIBIT - 12

 Gmail

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Lozier, Stephen D.** <Stephen.Lozier@troutman.com>                    Thu, Feb 26, 2026 at 1:29 PM
To: Jarrett Jenkins <jrobertjenkins@gmail.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>, "Pointdujour, Rachelle"
<Rachelle.Pointdujour@troutman.com>

Mr. Jenkins,

Thank you for your time today. Per our conversation, if you will agree to abide by the terms of the protective order while PRA's motion for entry of the protective order it is pending with the Court, PRA will agree to provide a supplemental production of confidential documents.

Kind regards,

**Stephen D. Lozier**
**Associate**
**troutman pepper locke**
Direct: 312.759.3203
stephen.lozier@troutman.com

[Quoted text hidden]

# EXHIBIT - 13

 Gmail

**Jarrett Jenkins <jrobertjenkins@gmail.com>**

---

## Re: Jenkins v. Portfolio Recovery Associates, L.L.C. (2:25-cv-06081-NCM-ST) – Notice of Discovery Deficiencies and Demand to Cure

**Jarrett Jenkins** <jrobertjenkins@gmail.com>                              Thu, Feb 26, 2026 at 1:42 PM
To: "Lozier, Stephen D." <Stephen.Lozier@troutman.com>
Cc: "Steinlight, Stephen J." <Stephen.Steinlight@troutman.com>, "Pointdujour, Rachelle" <Rachelle.Pointdujour@troutman.com>

Mr. Lozier,

Thank you for the call this afternoon. To clarify and memorialize our "gentleman's agreement":

1. **Agreement to Abide**: Plaintiff agrees to abide by the terms of the **Stipulated Protective Order** (signed and returned on February 20, 2026) effective immediately, pending its formal entry by the Court.

2. **Scope of Supplemental Production**: Per our discussion regarding the **78 itemized deficiencies**, Defendant will provide the supplemental production of documents. While I highlighted the **MASA**, **Unbroken Chain of Title**, and **TU/PRA communications** on the call, for the avoidance of doubt, this production must also include the **General Ledger/Accounting records** and all other items specifically identified in my **Notice of Deficiency**.

3. **Deadline**: I expect this production to be delivered electronically by  March 2, 2026, by Close of Business (5:00 PM EST)  , with physical service to follow via **FedEx** to ensure reliable tracking.

4. **Verification and Service**: I acknowledge that the electronic copy of the Second Set included a verification by Ricky Vaughn. However, as the physical mail has still not arrived (despite the February 16th COS), please ensure this supplemental production is served via **FedEx** or a trackable method to ensure proper service is finally perfected..

I look forward to reviewing these materials by Monday to determine if this matter can be resolved without further Court intervention.

Regards,

Jarrett R. Jenkins

[Quoted text hidden]

# EXHIBIT - 14

**[FILED UNDER SEAL / SUBJECT TO CONFIDENTIALITY]**

This exhibit consists of five (5) pages of internal database screenshots (Bates PRA_JENKINS_000076–000080) designated as **"Confidential"** by Defendant Portfolio Recovery Associates, LLC.  Plaintiff has omitted these pages from the public filing to maintain confidentiality but is prepared to provide them to the Court for in-camera inspection via email or as otherwise directed.