**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JARRETT R. JENKINS,<br><br>Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>Defendant. | Case No. 2:25-cv-06081-NCM-ST<br><br>Hon. Natasha C. Merle |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT


**TROUTMAN PEPPER LOCKE LLP**

Stephen J. Steinlight
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Email: stephen.steinlight@troutman.com

Stephen D. Lozier (admitted *pro hac vice*)
225 W. Randolph St., Ste. 2600
Chicago, IL 60606
Telephone: (312) 759-3203
Email: stephen.lozier@troutman.com

*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................1

II. STATEMENT OF FACTS ....................1

A. The Claims in the Complaint ....................1

B. PRA's Business and Account Acquisition Process ....................2

C. PRA Purchases Plaintiff's Account from Synchrony Bank ....................3

D. PRA Receives and Uses TransUnion Information to Collect the Account ....................4

III. LEGAL STANDARD ....................4

IV. ARGUMENT ....................5

A. PRA Had a Permissible Purpose Under 15 U.S.C. § 1681b(a)(3)(A) ....................5

1. The Applicable FCRA Framework ....................5

2. The Undisputed Evidence Establishes PRA Intended to, and Did Use, the TransUnion Information Regarding Plaintiff in Connection with its Collection of the Account and Therefore, had a Permissible Purpose ....................6

B. PRA Owns Mr. Jenkins's Account, But Ownership Is Not Required to Establish a Permissible Purpose ....................10

1. Ownership Is Not a Prerequisite to a Permissible Purpose ....................10

2. PRA Has, in Any Event, Established Ownership of the Account Further Evidencing PRA's Intent and its Reason to Believe it had a Permissible Purpose to Access the TransUnion Information Regarding Plaintiff ....................11

C. PRA Provided a General Certification to TransUnion, and Plaintiff's Anticipated Arguments to the Contrary Are Rank Speculation ....................12

1. Whether PRA Provided a Certification to TransUnion – it did – to Obtain the TransUnion Information Regarding Plaintiff is not an Argument or Claim that was Alleged in Plaintiff's Complaint. ....................12

2. Trikas Forecloses Plaintiff's Anticipated Certification Argument in any Event ....................14

D. Plaintiff Cannot Establish That PRA Willfully Violated the FCRA ....................14

1. The Willfulness Standard ....................15

2. PRA Acted in Good Faith and With a Reasonable Belief That It Owned the Account and Had a Permissible Purpose ....................16

3. Plaintiff Offers Only Conclusory Allegations of Willfulness ....................17

V. CONCLUSION ....................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Cent. Credit Servs.*,
No. DKC 12-2711, 2013 WL 4543364 (D. Md. Aug. 26, 2013)........8, 10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........4, 5

*Arnold v. Northland Grp., Inc.*,
No. 18 CIV. 205 (ER), 2019 WL 2419470 (S.D.N.Y. June 10, 2019)........8, 10, 13

*Bentley v. Tri-State of Branford, LLC*,
No. 3:14-cv-1157, 2016 WL 2626805 (D. Conn. May 6, 2016)........6

*Braun v. Client Servs. Inc.*,
14 F. Supp. 3d 391 (S.D.N.Y. 2014)........16

*Braun v. United Recovery Sys., LP*,
14 F. Supp. 3d 159 (S.D.N.Y. 2014)........16, 17

*Buckley v. Afni, Inc.*,
133 F. Supp. 3d 1140 (S.D. Ind. 2016)........11

*Campbell v. Portfolio Recovery Assocs., LLC*,
No. 16-cv-00072, 2017 WL 5067475 (E.D.N.Y. Sept. 8, 2017)........6, 8, 9

*Casella v. Equifax Credit Info. Servs.*,
56 F.3d 469 (2d Cir. 1995)........15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........4

*Edge v. Pro. Claims Bureau, Inc.*,
64 F. Supp. 2d 115 (E.D.N.Y. 1999)........5, 6

*Farmer v. Brennan*,
511 U.S. 825 (1994)........15

*Frazier v. RJM Acquisitions, LLC*,
No. WDQ-14-0047, 2015 WL 795078 (D. Md. Feb. 24, 2015)........8, 10, 16

*Geiling v. Wirt Fin. Servs.*,
No. 14-11027, 2014 WL 8473822 (E.D. Mich. Dec. 31, 2014)........6

*Huertas v. U.S. Dep't of Educ.*,
No. 08-CV-3959, 2009 WL 3165442 (D.N.J. Sept. 28, 2009) ............................................16

*Jenkins v. Microbilt Corp.*,
No. 25-cv-03055, 2026 WL 1602016 (E.D.N.Y. June 4, 2026) ....................................5, 7, 8

*McChriston v. Diversified Consultants, Inc.*,
No. 18-CV-185, 2019 WL 4418580 (S.D.N.Y. June 7, 2019) ..............................................6

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985) ..................................................................................................17

*Miller v. Wolpoff & Abramson, LLP*,
309 F. App'x 40 (7th Cir. 2009) ..........................................................................................10

*Munroe v. Specialized Loan Serv. LLC*,
No. 23-CV-3083, 2025 WL 974259 (E.D.N.Y. Mar. 31, 2025) ...............................5, 6, 10, 17

*Norman v. Northland Grp.*,
495 F. App'x 425 (5th Cir. 2012) ........................................................................................10

*Persinger v. Southwest Credit Systems, L.P.*,
20 F.4th 1184 (7th Cir. 2021) ...............................................................................................11

*Podell v. Citicorp Diners Club, Inc.*,
112 F.3d 98 (2d Cir. 1997) ..............................................................................................4, 17

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ..........................................................................................................15, 16

*Shimon v. Equifax Info. Servs. LLC*,
994 F.3d 88 (2d Cir. 2021) ...................................................................................................15

*Stonehart v. Rosenthal*,
No. 01 CIV. 651 (SAS), 2001 WL 910771 (S.D.N.Y. Aug. 13, 2001) ...................................8

*Suluki v. Credit One Bank, NA*,
138 F.4th 709 (2d Cir. 2025) ................................................................................................15

*Suluki v. Credit One Bank, NA*,
666 F. Supp. 3d 403 (S.D.N.Y. 2023), *aff'd*, 138 F.4th 709 (2d Cir. 2025) ..........................15

*Trikas v. Universal Card Servs. Corp.*,
351 F. Supp. 2d 37 (E.D.N.Y. 2005) ...........................................................................6, 7, 14, 17

**Statutes**

15 U.S.C. § 1681b(a)(3)(A) ....................................................1, 2, 4, 5, 6, 7, 9, 13, 14, 15, 16, 17

FCRA ........................................................................................1, 5, 6, 7, 10, 14, 15, 16, 17

**Other Authorities**

Fed. R. Civ. P. 56(a) ..............................................................................................................4

# I. PRELIMINARY STATEMENT

This is a straightforward Fair Credit Reporting Act ("FCRA") case with a straightforward answer. Defendant Portfolio Recovery Associates, LLC ("PRA") purchased Plaintiff Jarrett R. Jenkins's ("Plaintiff") defaulted Synchrony Bank account ending in -7880. Following that purchase, PRA received limited consumer information about Mr. Jenkins from TransUnion, LLC ("TransUnion") and used that information in connection with its attempts to collect the outstanding balance on the Account. Mr. Jenkins does not dispute the essential facts. He admits that he opened the Account. He admits that he defaulted on it. He admits that he lived at, and received mail at, the very address to which Synchrony Bank sent notice that the Account had been sold to PRA.

Collection of an account of the consumer is a permissible purpose expressly enumerated in the FCRA. 15 U.S.C. § 1681b(a)(3)(A). Courts in this District consistently hold that obtaining consumer information to collect a debt the consumer owes is a complete defense to a lack-of-permissible-purpose claim under § 1681b. PRA's evidence – the Bill of Sale, the Load Data drawn from the Sale File, Synchrony's sale notification letter, Synchrony's Affidavit of Sale, and the sworn, account-specific declaration of PRA's corporate representative – establishes that permissible purpose conclusively.

# II. STATEMENT OF FACTS

## A. The Claims in the Complaint

On October 6, 2025, Plaintiff, proceeding *pro se*, filed this action in Nassau County District Court. *See* Compl., Dkt. No. 1-1. The action was subsequently timely removed to this Court. Dkt. No. 1.

The Complaint alleges a single cause of action under 15 U.S.C. § 1681b, claiming that on April 7, 2024, PRA obtained Plaintiff's TransUnion consumer credit report without a permissible purpose. Compl. ¶¶ 8, 17. Plaintiff alleges that the permissible purposes under § 1681b generally

include applications for credit, employment, and insurance underwriting, as well as bona fide offers of credit or insurance. *Id.* at ¶ 15. However, as Plaintiff alleges, he "never had any business relationship, dealings or any accounts with" PRA, never applied for credit, employment, or insurance from PRA, and never received a bona fide offer of credit from PRA. *Id.* at ¶ 16.

Plaintiff therefore concludes that PRA obtained his TransUnion consumer report on April 7, 2024 "with no permissible purpose" and "without his consent." Compl. ¶¶ 17-18. He further alleges willful conduct and seeks statutory damages, punitive damages, and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. *Id.* at ¶¶ 19-27.

Notably, the Complaint does not allege that PRA failed to provide the requisite certification of permissible purpose to TransUnion pursuant to 15 U.S.C. § 1681b(f)(2) or 15 U.S.C. § 1681e. The sole allegation is that PRA accessed Plaintiff's consumer report without a permissible purpose.

**B. PRA's Business and Account Acquisition Process**

PRA is in the business of purchasing nonperforming loans and attempting to recover those loans from debtors. *See* PRA's Statement of Undisputed Material Facts ("SUMF"), ¶ 1. When PRA purchases customer accounts, it receives certain Original Account-Level Documentation ("OALD") and information from the original creditor, including sale notification letters, account transaction history, terms and conditions, activity or charge-off billing statements, final billing statements, and other documentation. SUMF, ¶¶ 2-3. PRA incorporates the OALD into its own business records and uses them in attempting to recover the nonperforming loans. *Id.* at ¶ 4.

PRA also receives a "Notification File," also called a "Sale File", which is an electronic file that identifies the accounts PRA is purchasing on the purchase date. SUMF ¶ 5. PRA extracts information from the Sale File into account-specific "Load Data" documents that contain information such as the outstanding debt amount, personal identifying information, and contact information for the debtor. *Id.* at ¶ 6.

### C. PRA Purchases Plaintiff's Account from Synchrony Bank

On or about March 12, 2024, PRA purchased a portfolio of accounts from Synchrony Bank ("Synchrony") that included the Account.[1] SUMF, ¶¶ 7-14. The Bill of Sale governing the sale of the portfolio that included Plaintiff's Account identifies Synchrony Bank, RFS Holding, LLC, Synchrony Card Funding, LLC, and Retail Finance Credit Services, LLC as the "Seller" of the portfolio of accounts and provides that the Seller sold to PRA, "to the extent of its ownership, the Accounts as set forth in the Notification Files . . . delivered by Seller to Buyer on or about the 12th of March 2024." SUMF, ¶ 9. The Bill of Sale was executed on March 27, 2024 by Lynne Fisher on behalf of all four Seller entities. *See* Declaration of Ricky Vaughan ("Vaughan Decl."), July 30, 2026, Ex. A.

The Sale File reference number included on the face of the Bill of Sale for the portfolio of accounts transferred to PRA as outlined in the Bill of Sale bears the reference number: IC_SFFLPRFS_DMPLA_DebtManager-20240313051335125153000-381650-PLCMNT-EXPORT.xml.gzip. SUMF, ¶ 10. The Load Data for the Account lists the same Sale File reference and specifically identifies Mr. Jenkins's Account ending in -7880. *Id.* at ¶ 11.

PRA also received a sale notification letter from Synchrony dated March 30, 2024, addressed to Mr. Jenkins at 334 Locust Street, West Hempstead, NY 11552, informing him that the account ending in 7880 was sold to PRA on March 12, 2024, with a balance at the time of sale of $13,830.94. SUMF, ¶ 12; Vaughan Decl. ¶ 19, Ex. C. Plaintiff admits that he resided at that address and that he received mail at that address during March and April 2024. *Id.* at ¶ 13.

---

[1] Plaintiff admits that he opened and defaulted on the Account. *See* SUMF, ¶ 8.

Finally, Synchrony employee Sally Nestor executed an "Affirmation of Facts and Sale of Account by Original Creditor" (the "Affidavit of Sale") on March 6, 2026, that confirms that Synchrony sold the Account to PRA. SUMF, ¶ 14.

### D. PRA Receives and Uses TransUnion Information to Collect the Account

PRA regularly receives information about consumers from TransUnion through automatic data transmissions (the "TransUnion Information"). SUMF, ¶ 15. Before it began receiving consumer information, PRA provided TransUnion a general certification of permissible purpose pursuant to 15 U.S.C. § 1681b(f)(2) and 15 U.S.C. § 1681e. *Id.* at ¶ 17. PRA uses the TransUnion Information in connection with its attempts to collect or otherwise recover the financial obligations owed to it by consumers. *Id.* at ¶ 18.

As to Mr. Jenkins specifically, PRA received Mr. Jenkins's TransUnion Information from TransUnion following PRA's purchase of the Account from Synchrony Bank. SUMF, ¶ 19. PRA used that information in connection with its attempts to collect or otherwise recover the financial obligation Mr. Jenkins owes PRA arising from the Account. *Id.* at ¶ 20.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Once the movant carries its initial burden, the nonmoving party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*,

112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 247-48.

Whether a consumer report was obtained for a permissible purpose is a question of law that is properly resolved on summary judgment. *Edge v. Pro. Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999); *Munroe v. Specialized Loan Serv. LLC*, No. 23-CV-3083, 2025 WL 974259, at *4 n.2 (E.D.N.Y. Mar. 31, 2025).

## IV. ARGUMENT

### A. PRA Had a Permissible Purpose Under 15 U.S.C. § 1681b(a)(3)(A)

#### 1. The Applicable FCRA Framework

"The FCRA imposes civil liability on anyone 'who obtains a consumer report from a consumer reporting agency' without a 'permissible purpose.'" *Jenkins v. Microbilt Corp.*, No. 25-cv-03055, 2026 WL 1602016, at *1 (E.D.N.Y. June 4, 2026) (citing 15 U.S.C. § 1681n(b)); *see also* 15 U.S.C. § 1681b(f). Section 1681b(a) enumerates the circumstances in which a consumer reporting agency may furnish a consumer report. Among them, a consumer reporting agency may furnish a report to a person it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

Courts in the Second Circuit consistently hold that obtaining a consumer report to collect a debt is a permissible purpose and a complete defense to a § 1681b claim. *Munroe*, 2025 WL 974259, at *4 n.2 (collecting cases standing for the proposition that "[c]ourts in the Second Circuit have consistently held that 'obtaining a plaintiff's credit report for the purpose of collecting the debt owed' is a permissible purpose under Section 1681b, and therefore, '**<u>constitutes a complete defense</u>**' to a FCRA claim.") (citations omitted) (emphasis added); *see also Edge*, 64 F. Supp. 2d

at 117. And because permissible purpose is a question of law, courts routinely resolve these claims at the summary judgment stage. *Munroe*, 2025 WL 974259, at *4 n.2 (quoting *Campbell v. Portfolio Recovery Assocs., LLC*, No. 16-cv-00072, 2017 WL 5067475, at *2 (E.D.N.Y. Sept. 8, 2017)); *see also Edge*, 64 F. Supp. 2d at 117.

Importantly, the operative inquiry under § 1681b(a)(3)(A) is the *intent* of the user of the consumer report – *i.e.*, whether the user "intends to use the information in connection with . . . collection of an account of[] the consumer." 15 U.S.C. § 1681b(a)(3)(A); *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 42 (E.D.N.Y. 2005) ("[T]he plain language of the statute . . . focuses on the intent of the party obtaining the consumer report.").[2]

**2. The Undisputed Evidence Establishes PRA Intended to, and Did Use, the TransUnion Information Regarding Plaintiff in Connection with its Collection of the Account and Therefore, had a Permissible Purpose**

The undisputed record establishes PRA intended to, and did use, the TransUnion Information regarding Plaintiff in connection with its attempt to recover the outstanding balance on the Account from Plaintiff. Accordingly, PRA had a permissible purpose and Plaintiff's FCRA claim fails as a matter of law.

---

[2] Although not expressly adopted by courts in this District, or the Second Circuit, some courts also apply the "reason to believe" standard for consumer reporting agencies to properly furnish a consumer report to users of consumer reports. In other words, if the user of the consumer report had a reason to believe it had a permissible purpose, that is all that is required. *See McChriston v. Diversified Consultants, Inc.*, No. 18-CV-185, 2019 WL 4418580, at *5 (S.D.N.Y. June 7, 2019) (noting that "'[s]everal courts have found that section 1681b(f) applies the 'reason to believe' aspect of section 1681b(a)(3)(A) to users" and recommending the defendant's motion for summary judgment be granted because it had established that the plaintiff's account was placed with it for collection which "not only gave it a permissible purpose to seek his credit report; it also gave Diversified 'reason to believe' that it had a permissible purpose.") (citations omitted); *see also Bentley v. Tri-State of Branford, LLC*, No. 3:14-cv-1157, 2016 WL 2626805, at *2 (D. Conn. May 6, 2016) (citing *Geiling v. Wirt Fin. Servs.*, No. 14-11027, 2014 WL 8473822, at *18 (E.D. Mich. Dec. 31, 2014) for the proposition that "courts have concluded that a user must merely have a 'reason to believe' a permissible purpose exists in order to escape liability.")

PRA purchased the portfolio that included Plaintiff's defaulted Synchrony Bank Account on March 12, 2024. SUMF, ¶ 7. Plaintiff admits that he opened the Account and defaulted on it. *Id.* at ¶ 8. Following its purchase, PRA received Plaintiff's TransUnion Information from TransUnion. *Id.* at ¶ 19. PRA used that information "in connection with its attempts to collect or otherwise recover the financial obligation Mr. Jenkins owes PRA arising from the Account." *Id.* at ¶ 20. This testimony is account-specific. PRA's authorized representative, Ricky Vaughan, does not merely describe PRA's general business practices; he specifically identifies what PRA did with Mr. Jenkins's information and ties PRA's receipt and use of that information directly to PRA's attempt to collect the outstanding balance on the Account. This evidence conclusively establishes that PRA intended to use, and did use, Mr. Jenkins's consumer information for the collection of his Account. That is a permissible purpose under § 1681b(a)(3)(A).

PRA's evidence is substantially similar to evidence courts have found sufficient to establish intent to use a consumer's report for account review or collection purposes as a matter of law. In *Trikas v. Universal Card Services Corp.*, a court in this District looked to the user's stated intent and the surrounding circumstances. Because the defendant bank intended to review an account that was coded as open in its system, the court found that the purpose was permissible – even though the account was actually closed and should have been coded as such. 351 F. Supp. 2d at 42-43. The court emphasized that the statute focuses on the intent of the user, and that the inclusion of the verb "intends" is significant because statutory language should not be construed to render words superfluous. *Id.* at 42.

Another court in this District recently granted summary judgment to a consumer-reporting-agency-defendant in *Jenkins v. Microbilt Corp.*, No. 25-cv-03055, 2026 WL 1602016 (E.D.N.Y. June 4, 2026), where the same Plaintiff brought a nearly identical FCRA claim but against a

consumer reporting agency that disclosed Plaintiff's consumer report to an entity that was trying to collect a debt from Plaintiff. The court held that the consumer reporting agency had a valid "reason to believe" the entity it supplied Plaintiff's report to had a permissible purpose because the entity affirmed that it obtained Plaintiff's report for "review of collections." 2026 WL 1602016, at *4.

In *Arnold v. Northland Grp., Inc.*, No. 18 CIV. 205 (ER), 2019 WL 2419470 (S.D.N.Y. June 10, 2019), the court found the debt collector defendant had a permissible purpose where it confirmed that it pulled the plaintiff's "consumer report in connection with its debt collection efforts." 2019 WL 2419470, at *4; *see also Frazier v. RJM Acquisitions, LLC*, No. WDQ-14-0047, 2015 WL 795078, at *3 n.10 (D. Md. Feb. 24, 2015) (holding that a declaration from the defendant that affirmed that it had purchased Plaintiff's debt and that it believed Plaintiff owed the outstanding debt was sufficient to establish a debt collection permissible purpose). In *Alston v. Cent. Credit Servs.*, as discussed in *Frazier*, an affidavit from the defendant confirming that the account was placed for collection and that the defendant believed the debt was owed was sufficient. *Id.* (citing *Alston v. Cent. Credit Servs.*, No. DKC 12-2711, 2013 WL 4543364, at *3 (D. Md. Aug. 26, 2013)).

Other courts in the Second Circuit, including courts in this District in cases involving PRA, hold that a mere showing of referral to, or purchase, of the debt by the party who accessed the consumer's report was sufficient to establish a permissible purpose. *See, e.g.*, *Campbell*, 2017 WL 5067475, at *2-3; *see also Stonehart v. Rosenthal*, No. 01 CIV. 651 (SAS), 2001 WL 910771, at *4 (S.D.N.Y. Aug. 13, 2001) ("At the time Rosenthal requested that ACA obtain Stonehart's current address, it is undisputed that Rosenthal had been referred a debt for collection . . . . [t]he referral of Stonehart's debt for collection gave Rosenthal a permissible purpose for obtaining her

credit report pursuant to section 1681b.") (citations omitted). *Campbell* was also a permissible purpose case brought by a *pro se* consumer against PRA in which the plaintiff claimed PRA had lacked a permissible purpose to obtain her consumer report because she did not "have an account in default, and [because PRA] . . . never purchased a debt belonging to her." 2017 WL 5067475, at *1. In finding PRA had purchased the plaintiff's debt and therefore, had a permissible purpose under the debt collection exception to § 1681b(a)(3)(A), the Court relied on PRA's Bill of Sale with the underlying creditor, its Load Data, and the original credit application Plaintiff used to open the account. *Id.* at *1-2.[3]

PRA's evidence is at least as robust: a sworn declaration from PRA's authorized representative, who has 22 total years of experience at PRA with specific knowledge of PRA's business procedures, policies and procedures, and record keeping systems, and who reviewed the documents pertaining to Plaintiff's Account and PRA's purchase of the same – including the Bill of Sale, Load Data, sale notification letter, Affidavit of Sale – as well as Plaintiff's own admissions regarding his opening of the Account and subsequent default. There is no dispute that PRA obtained the TransUnion Information about Plaintiff with the intent to use that information in connection with its attempt to collect Plaintiff's debt. PRA had a permissible purpose, which is a

[3] The *Campbell* Court used the application ostensibly to show that the account Plaintiff opened was the same account the underlying creditor transferred to PRA as reflected in the Load Data. 2017 WL 5067475, at *2 ("The plaintiff's personal identifying information that Washington Mutual sent the defendant matches the personal identifying information on the plaintiff's original credit application."). Here, Plaintiff admits he opened the Account. *See* SUMF, ¶ 8. Further, the personal identifying information included in the load data matches the personal identifying information Plaintiff provided during his deposition. *Compare* Excerpts of Deposition Transcript of Jarrett Jenkins, June 17, 2026, 8:14-22, attached as Exhibit 3 (testifying as to his name, date of birth and address) *with* Exhibit B to the Vaughan Declaration (Load Data). Accordingly, the lack of an original account application in this case is not fatal to PRA's claim that it purchased Plaintiff's Account.

complete defense to Plaintiff's FCRA claim and PRA is entitled to judgment in its favor as a matter of law. *See Munroe*, 2025 WL 974259, at *4 n.2.

### B. PRA Owns Mr. Jenkins's Account, But Ownership Is Not Required to Establish a Permissible Purpose

#### 1. Ownership Is Not a Prerequisite to a Permissible Purpose

As a threshold matter, Plaintiff's anticipated attack on PRA's chain of title is beside the point, because the FCRA does not require a debt collector to prove actual ownership of the debt, much less every link in the chain of title.

Because the statute asks whether the user *intends* to use the information for collection, a collector that has a reasonable basis to believe a debt is owed has a permissible purpose even if the debt later turns out to be invalid. *See Frazier*, 2015 WL 795078, at *3 ("Further, even if the debt did not exist, the Defendant would still have a permissible purpose in obtaining the information. As long as the Defendant had 'reason to believe' that it held the Plaintiff's outstanding debt, it did not violate the FCRA, even if the belief was mistaken."); *see also id.* at *3 n.10 (citing *Alston v. Cent. Credit Servs., Inc.* for the proposition that the defendant did not need "ironclad proof" of the debt in order to have a permissible purpose); *Arnold*, 2019 WL 2419470, at *4 ("The plain text of the statute evinces no requirement that the recipient of the consumer report actually *own* the account and the underlying debt to be collected. Nor does the plain text of the statute require the recipient to have engaged in past business transactions with the consumer before obtaining his or her consumer report."). Courts across the country agree. *See Norman v. Northland Grp.*, 495 F. App'x 425, 427 (5th Cir. 2012) (rejecting argument that the collector had to own the account or have a direct debtor-creditor relationship with the consumer); *Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 43 (7th Cir. 2009) (collection agency engaged by the debt owner had a legitimate purpose; bills of sale established ownership).

Here, PRA had – at the very least – a reasonable belief that it owned and held Plaintiff's debt. Not only does PRA have records evidencing its actual purchase of Plaintiff's specific account from Synchrony, *see* SUMF at ¶¶ 7-11, 14, but it is also in possession of the sale notification from Synchrony to Plaintiff in which Synchrony informed Plaintiff that PRA had purchased his debt. *Id.* at ¶ 12.[4]

**2. PRA Has, in Any Event, Established Ownership of the Account Further Evidencing PRA's Intent and its Reason to Believe it had a Permissible Purpose to Access the TransUnion Information Regarding Plaintiff**

Although ownership is not required, PRA has proven it purchased and owns Plaintiff's debt through a consistent, mutually reinforcing documentary record:

- **The Bill of Sale**, executed by all four Synchrony entities identified as the "Seller," conveying to PRA the Accounts delivered to PRA on or about March 12, 2024 and as set forth in the Notification Files. SUMF, ¶¶ 7, 9.
- **The Notification File/Sale File reference number included on the Bill of Sale**, which identifies the applicable Sale File listing the portfolio of accounts included in the sale. SUMF, ¶¶ 5-6.
- **The Load Data**, which is an extract of the applicable Sale File, contains a Sale File reference number that matches the reference number on the Bill of Sale and which specifically identifies Plaintiff's Account ending in -7880; SUMF, ¶¶ 10-11.
- **Synchrony's sale notification letter** to Plaintiff, at an address he admits he received mail at, informing him that the Account was sold to PRA on March 12, 2024 with a balance of $13,830.94. SUMF, ¶ 12.

---

4 Moreover, this case does not present a factual scenario similar to cases where a defendant expressed an intent to use a consumer report for collection of a debt but where the court later found that intent to be untenable or unsupported. For example, courts have found that a debt collector cannot claim that it intended to use a consumer's report for collection purposes when the subject debt the collector was trying to recover was discharged in bankruptcy. *See, e.g.*, *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1196-97 (7th Cir. 2021); *Buckley v. Afni, Inc.*, 133 F. Supp. 3d 1140, 1147-48 (S.D. Ind. 2016) (holding debt collector did not have valid "reason to believe" it had a permissible purpose to access the consumer's report for collection purposes where the court found the debt collector had enough information to connect the plaintiff's account with her bankruptcy).

- **The Affidavit of Sale** from Synchrony employee Sally Nestor, confirming that Synchrony assigned all of its interest in the Account to PRA. SUMF ¶ 14.
- **Mr. Jenkins's own admissions** that he opened and defaulted on the Synchrony Account. SUMF, ¶ 8.

Plaintiff's anticipated counterargument that because the Bill of Sale defines four entities collectively as "Seller," it fails to identify which entity owned which accounts is not persuasive and cannot serve to call PRA's ownership of the Account into question. By defining Synchrony Bank, RFS Holding, LLC, Synchrony Card Funding, LLC, and Retail Finance Credit Services, LLC collectively as "Seller," the Bill of Sale reflects that *all four* entities affirmatively conveyed the accounts in the portfolio, including Plaintiff's Account, to PRA. Additionally, all four entities signed the Bill of Sale. Whatever interest any Synchrony-affiliated entity may have held in the Account, every one of them transferred that interest to PRA. PRA need not trace internal transfers among affiliated entities when all of them jointly sold the portfolio.

Plaintiff's anticipated counterargument that the phrase "to the extent of its ownership" merely limits the transfer rather than proving ownership is also unpersuasive. That phrase is standard commercial conveyancing language, which transfers whatever interest the Seller possesses. It does not suggest that the Seller lacked ownership, and Plaintiff can offer no evidence that any entity other than the Synchrony Seller entities ever held an interest in the Account. The Affidavit of Sale removes any conceivable doubt: Synchrony confirmed that it assigned *all* of its interest in the Account to PRA. SUMF, ¶ 14.

### C. PRA Provided a General Certification to TransUnion, and Plaintiff's Anticipated Arguments to the Contrary Are Rank Speculation

#### 1. Whether PRA Provided a Certification to TransUnion – it did – to Obtain the TransUnion Information Regarding Plaintiff is

**not an Argument or Claim that was Alleged in Plaintiff's Complaint.**

Plaintiff's Complaint alleges one thing: that PRA obtained his consumer information on April 7, 2024 without a permissible purpose in violation of § 1681b. Compl. ¶¶ 8, 17. The dispositive question is therefore whether PRA had a *permissible purpose* – not whether PRA's certification to TransUnion satisfied Plaintiff's preferred level of documentation. Plaintiff's likely argument regarding PRA's evidence of its certification to TransUnion is an effort to deflect from the fact that he cannot contest PRA's collection purpose.

As noted above, Plaintiff did not allege anywhere in the Complaint that PRA violated the certification requirement of § 1681b(f). A court "need not address claims raised for the first time in opposition to a motion for summary judgment" even where the plaintiff is proceeding *pro se*. *See Arnold*, 2019 WL 2419470, at *4 (citations omitted). In *Arnold*, the plaintiff made a substantially similar argument that there existed a genuine dispute of material fact concerning whether the defendant had complied with the certification requirement of § 1681b(f)(2). The Court refused to consider the argument because this argument and claim were not raised in Plaintiff's Complaint. *Id.*[5] This Court should conclude similarly here and disregard any argument Plaintiff makes regarding PRA's certification of a permissible purpose to TransUnion.

[5] *Arnold* further concluded that even if the plaintiff had properly brought a § 1681b(f) claim, it was "unclear whether subject matter jurisdiction would exist to entertain his claim, given (1) the Court's conclusion that there existed a permissible purpose to pull Arnold's consumer report and (2) the apparent lack of injury-in-fact (and lack of the risk thereof) resulting from Northland's alleged failure to certify its purpose." 2019 WL 2419470, at *4 n.3. The same is true in this case. PRA had a permissible purpose to access Plaintiff's information and Plaintiff has not identified any injury-in-fact arising out of any alleged failure by PRA to certify its purpose to TransUnion.

### 2. *Trikas* Forecloses Plaintiff's Anticipated Certification Argument in any Event

*Trikas v. Universal Card Services Corp.* is directly on point. There, the court addressed both the permissible-purpose and certification requirements. The *Trikas* Court concluded that where a permissible purpose has been proven, and where the Plaintiff did not "allege that there was an absence of certification, . . . or provide any evidence that certification did not occur," it would "not allow Plaintiff to survive summary judgement with conclusory statements" that the defendant violated § 1681b(f) by failing to submit certification of its permissible purpose in accordance with § 1681e of the FCRA. 351 F.Supp.2d at 43.

The same result follows here. As in *Trikas*, PRA has established a permissible purpose: collection of Mr. Jenkins's Account. And, as in *Trikas*, Plaintiff has offered no evidence that PRA failed to provide a certification to TransUnion. PRA's position is in fact *stronger* than the bank's in *Trikas*: PRA has affirmatively established through sworn testimony that it provided a general certification to obtain the TransUnion information regarding Plaintiff. SUMF, ¶ 17. Plaintiff cannot offer a shred of evidence that the certification was not provided. Speculation that PRA *might* not have properly certified its purpose is precisely the kind of "conclusory statement[]" that *Trikas* held cannot defeat summary judgment. 351 F. Supp. 2d at 43.

### D. Plaintiff Cannot Establish That PRA Willfully Violated the FCRA

Even if Plaintiff could create a triable issue as to permissible purpose – he cannot – PRA would still be entitled to summary judgment on Plaintiff's claim for statutory and punitive damages under 15 U.S.C. § 1681n because no reasonable jury could find that PRA acted willfully. Plaintiff alleges that PRA "knew or was reckless in not knowing that it lacked any permissible purpose" and that PRA's "failure to confirm any permissible purpose" was "at minimum, reckless disregard of its obligations under the FCRA." Compl. ¶¶ 19-20. The undisputed record forecloses that theory.

**1. The Willfulness Standard**

A defendant "willfully" violates the FCRA under § 1681n only if it knowingly violates the statute or acts in reckless disregard of its statutory duties. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Recklessness is measured objectively: it requires "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). A company "does not act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Thus, conduct that is at most negligent – or even mistaken – is not willful. *See id.* at 69-70.

The Second Circuit applies this standard as a purely objective inquiry. *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 94 (2d Cir. 2021) (rejecting argument that "a defendant must show it actually and contemporaneously adopted a particular interpretation to avail itself of the *Safeco* defense, because *Safeco* made willfulness "an objective inquiry"). And courts in this Circuit require "conscious disregard or deliberate and purposeful actions" to make out a claim for willful noncompliance. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995); *see also Suluki v. Credit One Bank, NA*, 138 F.4th 709, 723-24 (2d Cir. 2025) (affirming summary judgment where plaintiff presented no evidence from which a reasonable jury could find that the defendant acted in willful or reckless violation of the FCRA). Where, "beyond Plaintiff's conclusory statements, [he] furnishes no evidence that [the] Defendant[] either intentionally misled [him] or acted in reckless disregard," summary judgment on willfulness is appropriate. *Suluki v. Credit One Bank, NA*, 666 F. Supp. 3d 403, 415 (S.D.N.Y. 2023) (citation omitted), *aff'd*, 138 F.4th 709 (2d Cir. 2025).

In the permissible-purpose context specifically, a plaintiff must show that the defendant "knew [it] had no permissible purpose or recklessly disregarded [its] obligation to have a permissible purpose under the law." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 171-72 (S.D.N.Y. 2014) (quotation omitted); *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 398-99 (S.D.N.Y. 2014). In other words, Plaintiff must show that PRA "should have known either that it did not intend to use the credit report in connection with a credit transaction involving the plaintiff or involving the collection of an account of the plaintiff." *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d at 167-68 (quoting *Huertas v. U.S. Dep't of Educ.*, No. 08-CV-3959, 2009 WL 3165442, at *9 (D.N.J. Sept. 28, 2009)).

### 2. PRA Acted in Good Faith and With a Reasonable Belief That It Owned the Account and Had a Permissible Purpose

The record establishes the opposite of knowing or reckless conduct. Before it received any information about Plaintiff from TransUnion, PRA purchased a portfolio of accounts from Synchrony that included Plaintiff's Account and had provided TransUnion a general certification of permissible purpose. SUMF, ¶¶ 7-12, 17. PRA then received Plaintiff's TransUnion Information and used that information in connection with its attempts to collect that Account. SUMF ¶¶ 19-20.

Even if Plaintiff could manufacture some doubt as to PRA's ownership of the debt – he cannot – a collector that reasonably believes it holds the consumer's debt has a permissible purpose "even if the belief was mistaken," absent evidence of bad faith. *Frazier*, 2015 WL 795078, at *3 & n.10. Accordingly, such a collector cannot have acted knowingly or with reckless disregard of the FCRA. Accessing limited consumer information to collect an account that PRA had purchased does not entail any "unjustifiably high risk" of violating the statute, let alone one "so obvious that it should be known." *Safeco*, 551 U.S. at 68-69. Moreover, the language of § 1681b(a)(3)(A)

expressly identifies "collection of an account" as a permissible purpose, and courts in this Circuit uniformly agree. *See Munroe*, 2025 WL 974259, at *4 n.2.

### 3. Plaintiff Offers Only Conclusory Allegations of Willfulness

Against this record, Plaintiff offers nothing but labels. His allegation that PRA is "a sophisticated entity regularly engaged in the business of accessing consumer data" that "knew or was reckless in not knowing" it lacked a permissible purpose, Compl. ¶ 19, is precisely the sort of conclusory assertion courts routinely reject. *See Braun*, 14 F. Supp. 3d at 171-72 (allegations that defendant "willfully, intentionally, [and/or] recklessly" obtained report without a permissible purpose were "nothing more than a formulaic recitation of the elements"). Indeed, the premise of that allegation – that Plaintiff had no account PRA could collect, Compl. ¶¶ 16, 23 – is refuted by Plaintiff's own admissions. SUMF, ¶ 8. At summary judgment, Plaintiff "may not rest upon mere conclusory allegations or denials," *Podell*, 112 F.3d at 101, and "the mere incantation of intent or state of mind" cannot "operate as a talisman to defeat an otherwise valid motion," *Trikas*, 351 F. Supp. 2d at 44 (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (internal quotation marks omitted)). Because no reasonable jury could find that PRA knowingly or recklessly violated the FCRA, PRA is entitled to summary judgment on Plaintiff's willfulness claim, and on his claims for statutory and punitive damages under § 1681n, in any event.

## V. CONCLUSION

PRA has established every element necessary for a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A). It owns Mr. Jenkins's defaulted Synchrony Bank Account; it intended to use, and did use, the TransUnion Information in connection with its efforts to collect that Account; and it provided a general certification of permissible purpose to TransUnion. Plaintiff's conclusory allegations and speculative arguments cannot create a genuine dispute of material fact. For the

foregoing reasons, PRA respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: October 5, 2026
New York, New York

*/s/ Stephen D. Lozier*

Stephen D. Lozier (admitted *pro hac vice*)
**Troutman Pepper Locke LLP**
225 W. Randolph St., Ste. 2600
Chicago, IL 60606
Telephone: (312) 759-3203
Email: stephen.lozier@troutman.com
*Counsel for Defendant Portfolio Recovery Associates, LLC*

Stephen J. Steinlight
**Troutman Pepper Locke LLP**
875 Third Avenue
New York, New York 10022
T: 212.704.6000
F: 212.704.6288
E: Stephen.Steinlight@troutman.com