# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------X
JARRETT R. JENKINS, :
Plaintiff, :
v.: :Civil Action No.
PORTFOLIO RECOVERY ASSOCIATES, :2:25-cv-6081
LLC, :
Defendant. :
---------------------------------X

Deposition of JARRETT R. JENKINS
Conducted Virtually
Wednesday, June 17, 2026
10:00 a.m.

Job No.: 638209
Pages 1 - 50
Reported by: Helen B. Yarbrough, RPR, CCR



Deposition of JARRETT R. JENKINS, conducted virtually.

Pursuant to agreement, before Helen B. Yarbrough, RPR, CCR, Notary Public in and for the Commonwealth of Virginia.



A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:
JARRETT R. JENKINS, PRO SE

ON BEHALF OF THE DEFENDANT:
STEPHEN LOZIER, ESQUIRE
TROUTMAN PEPPER LOCKE LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
312-759-3213



I N D E X

| | PAGE |
|---|---|
| EXAMINATION OF JARRETT R. JENKINS | |
| By Mr. Lozier | 5 |

E X H I B I T S

| | | PAGE |
|---|---|---|
| Exhibit 1 | Complaint | 12 |
| Exhibit 2 | Letter to Jarrett Jenkins from Synchrony Bank, Beginning with Bates No. PRA_JENKINS_000067 | 15 |
| Exhibit 3 | Synchrony Bank Affirmation Beginning with Bates No. PRA_JENKINS_000081 | 21 |
| Exhibit 4 | Plaintiff's Responses to Defendant's Interrogatories | 31 |

PROCEEDINGS

Whereupon,

JARRETT R. JENKINS,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. LOZIER:

Q Mr. Jenkins, as you know, my name's Steve Lozier, and I'm the attorney for Portfolio Recovery Associates in the case that you filed against PRA in this case. I'll refer to Portfolio as "PRA," just so we shorten things.
Where are you sitting for this deposition today? Are you at home?
**A I'm at home.**
Q Okay. I assume you're on some type of computer, right?
**A Yeah.**
Q Is that a laptop or --
**A Laptop.**
Q Laptop. Is anyone else in the room with you?
**A No.**
Q Okay. Do you have a cell phone on your person?



**A No.**
Q Do you have one on the desk? Do you have a cell phone in the room with you?
**A Yes.**
Q Okay. Is it anywhere you can reach it or access it?
**A Yes.**
Q Okay. I'd ask that you don't use your cell phone during the deposition. Is that all right?
**A That's fine.**
Q Okay. I'd also ask that you refrain from using any, like, chat feature on your computer, anything to communicate with another person. I just want to be talking with you. Is that understood?
**A Yes.**
Q Are you taking any medications today that would impair your ability to understand or to answer my questions?
**A No.**
Q Have you consumed any alcohol that would impair your ability to understand the questions?



**A No.**
Q Any prescription drugs or recreational drugs that would impair your ability to understand and answer my questions today?
**A No.**
Q Okay. Have you ever sat for a deposition before?
**A Yes.**
Q Okay. So you understand how they work?
**A Maybe just refresh my memory a little bit, but --**
Q Sure. Absolutely. So the deposition, as you probably know, is -- like in discovery, I'm going to ask you some questions about your claim, your complaints, your damages. That's why we're here. That's what we are doing.
Helen, our court reporter, is taking down, transcribing our testimony. So when we're talking, you know, speak clearly. I'd ask that you respond with verbal answers, no nodding your head or "uh-huhs" or "uh-uhs," just because it's hard to pick up on the transcript. So "yes," "nos," full sentences would be appreciated.
For that same reason and since we're not in the same room, you know, there can be some



crosstalk on Zoom, I would ask that you wait for my questions and then respond. I won't interrupt you. I'd ask that you not interrupt me.
If you need a break, just let me know, I'm happy to take a break whenever.
If you don't understand my question, I'm happy to repeat it. So just let me know.
And that's it. Those are basically the ground rules here today. Does that sound all right?
**A Yes.**
Q Okay. Could you please state your full name for the record.
**A Jarrett Robert Jenkins.**
Q Have you gone by any other names previously?
**A No.**
Q Your date of birth?
**A [redacted] 1973.**
Q And your current address, please?
**A 334 Locust Street, Apartment 1, West Hempstead, New York 11552.**
Q How long have you lived at that address?
**A Approximately 14 years, thereabouts.**

9

Q Okay. So 2012-ish?
**A Yes.**
Q Okay. Are you currently employed?
**A No.**
Q Okay. What was the last job you had?
**A Let me invoke an objection to this kind of questions that are not relevant to the claims or defenses.**
**That being said, New York City Transit Authority.**
Q And when did you leave that job?
**A Approximately October 2024.**
Q Did you do anything to prepare for today's deposition?
**A Can you elaborate on "prepare"?**
Q Did you review any documents in preparation for today's deposition?
**A Somewhat.**
Q Okay. Which documents did you review?
**A The complaint, summons, complaint; the documents that I served upon you regarding the 2023 from the CFPB, which is Portfolio; the 2015 stipulation and order, and that stipulation and order, as well; and PRA's disclosure, the 1 through 75; and PRA's response to my first set of**

10

**discovery.**
Q Besides the complaint and then the stuff that PRA produced in the case, was there anything that you reviewed that you haven't produced as a part of discovery?
**A No.**
Q Did you meet with anyone and talk about the case prior to the deposition today?
**A No.**
Q Have you ever been a plaintiff in a lawsuit before?
**A Objection. Other parties and nonparties are not subject to this current litigation.**
**That being said, yes.**
Q Could you just give me a general description of the claims in these other lawsuits? Were they other consumer law lawsuits?
**A Can you be specific as to time?**
Q I'm asking generally about these prior lawsuits where you have been a plaintiff. So, any lawsuits that you've been a plaintiff, we'll say. Have you sued under the Fair Credit Reporting Act before besides in this lawsuit?
**A I object as not specific to time.**

11

**But that being said, yes.**
Q And were these impermissible inquiry claims?
**A Once again, I object to the question as it's broad and not specific to PRA.**
**That being said, yes.**
Q Have you ever filed a lawsuit against PRA before?
**A Yes.**
Q Okay. Do you recall when that occurred?
**A I can't remember exactly as to when. It probably would have been -- I don't know exactly when.**
Q How about like a general -- you know, was it five years ago? Ten years ago?
**A I would say probably within -- within ten years.**
Q Okay. And do you remember what the claims were in those lawsuits or lawsuit?
**A The last -- first off, objection. This specific claim is only about impermissible pulls relative to 2024. Any other claims or whatever are not part of this lawsuit and shouldn't be used.**

12

**That being said, the last claims that I can think about from my memory is TCPA violations.**
Q Do you remember what the resolution of that lawsuit or the lawsuits were, how they ended?
**A No, I'm not quite sure. I lost track and never really kept up with them. So how they were disposed of, I'm not sure about it.**
Q Okay. I'm going to attempt to show you a document here. Okay, Mr. Jenkins. Can you see the screen I'm showing you?
**A Yes.**
Q Okay. Do you recognize this document? Let me first scroll through, and then I'll ask you that question.
Okay. Do you recognize this document?
**A Yes.**
Q Okay. What is this document?
**A It is the original complaint this lawsuit is about.**
MR. LOZIER: I'm going to mark this as Exhibit 1.
(Deposition Exhibit 1 was marked for identification and is attached.)
Q Can you just tell me generally, what are the claims in your complaint? What are you

alleging here?
**A Basically, the defendant obtained my consumer credit report without my permission, in violation of 15 USC 1681b.**
Q What's the basis for your allegation that PRA lacked the permissible purpose to access your credit report?
**A Well, I never applied for credit. I don't have any accounts with -- I don't have any kind of accounts with PRA. I didn't apply for employment. PRA didn't offer me employment. I don't do any business with PRA.**
**They have no reason to be looking into my credit file. They have no -- you know, to my knowledge, there's no court order that they were acting upon. I didn't apply for some kind of license that would use PRA.**
**I didn't ask for insurance. They didn't offer me insurance. I didn't go looking to do business with PRA.**
**I'm sure there are other things that I can't remember as of right now, but those are some of the facts.**
Q Would it be fair to say the basis for your claim is that you don't have a relationship



with PRA; you don't have any connections with PRA, so there's no reason they should be looking into your credit report? Is that a fair summation of your claim?
**A Yes.**
Q Okay. Did you ever have an account with Synchrony Bank that had an account number ending in 7880?
**A Yes.**
Q Okay. And you opened that account with Synchrony Bank?
**A Yes.**
Q Okay. Did there come a time when Synchrony Bank informed you that the account had been sold to PRA?
**A I actually couldn't tell you yes or no.**
Q Okay. I'm going to stop sharing this one, and I'm going to bring up another document.
Okay, Mr. Jenkins. Can you see the screen I'm sharing with you?
**A Yes.**
Q Okay. I'm going to scroll through this document, and I'll represent to you that this is a document that you already produced in discovery. It's got the Bates label PRA JENKINS 67 and 68,



but the second page here is blank. Do you recognize this document?
**A Can you be more specific as to do I recognize the document?**
Q Do you know what this document is?
**A Well, aside from that you produced it in discovery, no.**
Q Okay. So prior to this lawsuit and this document being produced in discovery, you -- you have no recollection of seeing this document?
**A I object to the form of the question because you're presuming that somehow I did see it, and I just don't remember, so I don't know how to respond to your question.**
Q Well, that's what I'm trying to get at. What I'm trying to get at is, you know -- let me ask a different question.
MR. LOZIER: So first of all, I'm going to mark this as Exhibit 2.
(Deposition Exhibit 2 was marked for identification and is attached.)
Q Would you agree that this appears to be a letter?
**A Can you be more specific? Appears to be a letter?**



Q This document appears to be a letter?
**A Yes, it looks like a letter.**
Q And that's your name there, Jarrett Jenkins?
**A Yes.**
Q Okay. And your address here is 334 Locust Street, West Hempstead, New York. I believe there's a 1 there at the top. That's your address?
**A As it is displayed, no, it doesn't have "Apartment" or "APT," but I do see a 1 there, and I do see my 334 Locust Street, so that I can confirm that I do see 1, and I do see 334 Locust Street, West Hempstead, New York.**
Q And this letter appears to pertain to your Synchrony MasterCard account ending in 7880. Can we agree on that?
**A Yes.**
Q Okay. Do you recall receiving this letter at any point prior to this letter being produced in this lawsuit?
**A Again, I don't have sufficient information to tell you whether or not I recall seeing this, because it presumes that I did.**
Q I'm not asking you to presume anything.